ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                        :
FOOTBRIDGE LIMITED TRUST and OHP                        :
OPPORTUNITY LIMITED TRUST,                              :
                                                        :
                              Plaintiffs,               :          10 Civ. 367 (PKC)
                                                        :
                    v.                                  :          **STIPULATION AND**
                                                        :          **PROPOSED ORDER**
COUNTRYWIDE FINANCIAL CORP.,                            :
COUNTRYWIDE SECURITIES CORP.,                           :
COUNTRYWIDE HOME LOANS, INC.,                           :     ┌──────────────────────────────┐
CWABS, INC., STANFORD L. KURLAND,                       :     │ USDS SDNY                    │
ERIC P. SIERACKI, DAVID A. SPECTOR,                     :     │ DOCUMENT                     │
BANK OF AMERICA CORP., and                              :     │ ELECTRONICALLY FILED         │
BAC HOME LOANS SERVICING, LP,                           :     │ DOC #: _____        │
                                                        :     │ DATE FILED: 5-13-11          │
                              Defendants.               :     └──────────────────────────────┘
                                                        ::
------------------------------------------------------------X

        The parties to this action, by and through their undersigned counsel, hereby

stipulate that the documents described below, which constitute written communications from

counsel to the Court in this proceeding, true copies of which are attached hereto, will form and

be docketed as part of the Court's record in this action:

- Letter from Cleary Gottlieb Steen & Hamilton ("CGSH") to the Court dated October 5, 2010, attached hereto as Exhibit A;

- Letter from Quinn Emanuel to the Court dated October 8, 2010, attached hereto as Exhibit B;

- Letter from Quinn Emanuel to the Court dated October 21, 2010, attached hereto as Exhibit C;

- Letter from CGSH to the Court dated October 26, 2010, attached hereto as Exhibit D;

- Letter from CGSH to the Court dated November 8, 2010, attached hereto as Exhibit E;

- Letter from Quinn Emanuel to the Court dated November 9, 2010, attached hereto as Exhibit F;

- Letter from CGSH to the Court dated November 12, 2010, attached hereto as Exhibit G;

- Letter from CGSH to the Court dated December 16, 2010, attached hereto as Exhibit H;

- Letter from Quinn Emanuel to the Court dated December 17, 2010, attached hereto as Exhibit I;

- Letter from CGSH to the Court dated January 31, 2011, attached hereto as Exhibit J;

- Letter from Quinn Emanuel to the Court dated February 1, 2011, attached hereto as Exhibit K;

- Letter from CGSH to the Court dated February 7, 2011, attached hereto as Exhibit L;

- Letter from Quinn Emanuel to the Court dated March 3, 2011, attached hereto as Exhibit M;

- Letter from CGSH dated March 7, 2011, attached hereto as Exhibit N.

Dated: May 11, 2011

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _Dan Brockett_

    Daniel L. Brockett
    David D. Burnett
    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Tel: (212) 849-7000
    Fax: (212) 849-7100

    Scott R. Commerson
    865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017
    Tel: (213) 443-3000
    Fax: (213) 443-3100

*Attorneys for Plaintiffs Footbridge Limited
Trust and OHP Opportunity Limited Trust*

CLEARY GOTTLIEB STEEN & HAMILTON
LLP

By: _Mitchell Lowenthal_

    Mitchell A. Lowenthal
    Meredith Kotler
    One Liberty Plaza
    New York, NY 10006
    Tel:  (212) 225-2000
    Fax:  (212) 225-3999

*Attorneys for Defendants Countrywide Financial
Corp., Countrywide Securities Corp.,
Countrywide Home Loans, Inc., and CWABS,
Inc.*

2

O'MELVENY & MYERS LLP

By: _Jonathan Rosenberg / pr_

Jonathan Rosenberg
William J. Sushon
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for Defendants Bank of America Corporation and BAC Home Loans Servicing, LP*

DLA PIPER LLP

By: _Keara Gordon / pr_

Keara M. Gordon
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendant Eric P. Sieracki*

BINGHAM MCCUTCHEN LLP

By: _Leiv Blad DC_

Leiv Blad Jr.
Boyd Cloern (*pro hac vice*)
2020 K Street, N.W.
Washington, DC 20006
Tel: (202) 373-6265
Fax: (202) 373-6001

*Attorneys for Defendant David A. Spector*

CALDWELL, LESLIE & PROCTOR PC

By: _Christopher Caldwell / pr_

Christopher G. Caldwell (*pro hac vice*)
David C. Codell
Eric S. Pettit (*pro hac vice*)
1000 Wilshire Boulevard
Suite 600
Los Angeles, CA 90017
Tel: (213) 629-9040
Fax: (213) 629-9022

BRUNE & RICHARD LLP

By: _Theresa Trzaskoma / pr_

Theresa M. Trzaskoma
One Battery Park Plaza
New York, NY 10004
Tel: (212) 668-1900
Fax: (212) 668-0315

*Attorneys for Defendant Stanford L. Kurland*

3

03922 61552/4092459.2

**IT IS SO ORDERED**

DATED $5 - 13 - 11$

_____

THE HONORABLE P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

4

# Exhibit A

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: (212) 225-2760
E-Mail: mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
RESIDENT COUNSEL

October 5, 2010

**BY HAND**

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re: Footbridge Limited Trust v. Countrywide Financial Corp.,
>     10 CIV 367 (PKC)

Dear Judge Castel:

This firm is counsel to the Countrywide Defendants in the above-referenced matter. We write to direct the Court's attention to a decision issued last week, Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series AR1, No. C09-00037MJP (W.D. Wash. Sept. 28, 2010) ("WaMu MBS"), that bears directly on Defendants' pending joint motion for summary judgment on the statutes of limitations and repose. See Notice of Joint Motion for Summary Judgment (filed Jul. 12, 2010).

First, relying on caselaw cited by the Defendants in this action, see Def. Rep. Br. at 9-10, WaMu MBS held that the filing of a class action does not toll the statute of limitations with respect to an MBS offering unless a named plaintiff has standing to challenge that particular offering. See Slip Op. at 15-16 ("the statute of limitations does not toll for putative class actions whose named plaintiff lacks standing to advance claims in the first place"); see also Def. Br. at 18-19. As a result, the WaMu MBS court dismissed claims with respect to certain offerings "[b]ecause there are no allegations" the named plaintiffs in the earlier class action had standing to assert claims with respect to those offerings. See Slip Op. at 16. Significantly, WaMu MBS dismissed these claims as time-barred even though the underlying standing issues were only

Hon. P. Kevin Castel, p. 2

decided earlier in the opinion. See Slip Op. at 5-7 (addressing standing issues). Thus, WaMu MBS demonstrates Plaintiffs' argument that "the claims of putative class members would have been tolled until at least such time as the standing issues were decided" is wrong. Pl. Opp. Br. at 17.

Second, WaMu MBS also demonstrates that the federal relation back doctrine—even assuming it is relevant to claims filed and amended in state court—does not apply to amendments that include additional MBS offerings on behalf of new plaintiffs. See Def. Rep. Br. at 6 n.14. In WaMu MBS, as in the class actions referenced by Plaintiffs here, certain MBS offerings were first challenged in a later-filed class action, and then added through amendment to a consolidated complaint in a prior class action. See Slip Op. at 2, 14-15. Under these facts, WaMu MBS held that relation back was inappropriate, and dismissed claims to the extent they involved the later-challenged offerings. See id. at 14-15. Therefore, WaMu MBS rejects Plaintiffs' reliance on the relation back doctrine, without even addressing their more tenuous argument that the separate doctrines of relation back and class action tolling can be combined to satisfy a statute of limitations. See Def. Rep. Br. at 5-7.

A copy of the WaMu MBS decision is attached for the Court's convenience.

Respectfully submitted,

Mitchell A. Lowenthal

Mitchell A. Lowenthal

Enclosure

cc:  Daniel L. Brockett, Esq.
     Jonathan Rosenberg, Esq.
     Christopher Caldwell, Esq.
     Theresa Trzaskoma, Esq.
     Leiv Blad, Esq.
     Keara Gordon, Esq.

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOILERMAKERS NATIONAL ANNUITY
TRUST FUND, on behalf of itself and all others
similarly situated,

                    Plaintiff,

          v.

WAMU MORTGAGE PASS TRHOUGH
CERTIFICATES, SERIES AR1, et al.,

                    Defendants.

Case No. C09-00037MJP

**ORDER ON DEFENDANTS'
MOTIONS TO DISMISS**

          This matter is before the Court on Defendants' motions to dismiss Plaintiffs' second

amended consolidated complaint.  (Dkt. Nos. 168, 170.)  In addition filing responses to the

motions (Dkt. Nos. 177, 178), Plaintiffs have filed a motion to amend the complaint (Dkt. No.

179).  Defendants have filed replies in support of their motions (Dkt. Nos. 184, 187), the Rating

Agency Defendants have filed a response to Plaintiffs' motion to amend (Dkt. No. 186), and

Plaintiffs have filed a reply in support of their motion to amend (Dkt. No. 190).  For the reasons

set forth below, the Court GRANTS IN PART the WaMu Defendants' motion to dismiss,

GRANTS the Rating Agencies' motion to dismiss, and DENIES Plaintiffs' motion to amend.

**Background**

1

I.      Procedural History

2          A total of six complaints have been filed in this matter.  On August 4, 2008, an action

3  was filed in King County Superior Court.  (C09-0134; Dkt. No. 1 (Notice of Removal).)  On

4  January 20, 2009, Plaintiff Boilermakers filed their complaint.  (C09-0037; Dkt. No. 1.)  The

5  Doral Bank complaint was filed on October 2009.  (C09-1557: Dkt. No. 1.)  Plaintiffs filed their

6  first consolidated complaint on November 23, 2009.  On December 31, 2009, Plaintiffs filed an

7  amended consolidated complaint.  Finally, the Second Amended Complaint ("SAC") was filed

8  on April 1, 2010.  (Dkt. No. 164.[1])  The proceedings were delayed by a statutorily-mandated stay

9  for claims against Washington Mutual Bank, Plaintiffs' error in providing adequate PSLRA

10 notices, and Plaintiffs' request for leave to amend their complaint in light of this Court's rulings

11 in the In re Washington Mutual Securities, ERISA, and Derivative Litigation, 08-md-1919 MJP.

12

II.     Allegations in Second Amended Complaint[2]

13         Lead Plaintiffs Doral Bank of Puerto Rico ("Doral Bank") and Policemen's Annuity and

14 Benefit Fund of the City of Chicago ("Chicago PABF") and Plaintiff Boilermakers National

15 Annuity Trust ("Boilermakers") bring this action on their own behalf and on behalf of a putative

16 class of individuals and entities who purchased interests in certain Washington Mutual Mortgage

17 Pass-Through Trusts ("Issuing Trusts").  (¶ 1.)  Plaintiffs purchased mortgage-backed securities

18 created by Washington Mutual Bank subsidiaries from 75,608 "mainly sub-prime first-lien

19 hybrid adjustable rate" mortgage loans.  (¶¶ 5-6.)  The securities entitled purchasers to the

20 proceeds of payments made on the underlying mortgages: "[a]s the original borrowers on each of

21 the underlying mortgage loans paid their mortgages, distributions were made to investors

22 through the Issuing Trusts in accordance with the terms of the Offering Documents governing

23 the issuance of the Certificates."  (¶ 7.)

24 _____

25    [1] Unless otherwise noted, all references to the Complaint and all "¶" citations refer to the Second
Amended Complaint

26    [2] The Court's summary of the Plaintiffs' allegations shall not be construed as an indication that any
facts alleged have been established in fact.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 2          CASE NO. C09-00037MJP

1    Washington Mutual Bank ("WMB"), which is no longer a named Defendant in this

2    matter, either originated or acquired the mortgage loans underlying the Certificates.  (¶ 23.)

3    Defendant Washington Mutual Asset Acceptance Corporation ("WMAAC"), a wholly-owned

4    subsidiary of Washington Mutual, Inc., purchased the mortgage loans from WMB and assigned

5    the mortgage loans to the trustee.  (¶ 24.)  WMAAC filed two Registration Statements pertinent

6    to the securities in this Complaint: (1) a December 2005 Form S-3, subsequently amended by a

7    January 2006 Form S-3/A (together "the 2006 Registration Statement") and (2) a March 2007

8    Form S-3, as subsequently amended by an April 2007 Form S-3/A (together "the 2007

9    Registration Statement").  (¶ 25.)  Defendant WaMu Capital Corporation ("WCC"), another

10   wholly-owned subsidiary of Washington Mutual, Inc., underwrote the offerings and "assisted in

11   drafting and disseminating the Offering Documents for the Offerings of Certificates" issued

12   pursuant to the Registration Statements.  (¶¶ 37-39.)  Plaintiffs refer to WMB, WMAAC, and

13   WCC collectively as "WaMu."  (¶ 5.)

14       Defendants David Beck, Diane Novak, Thomas Green, Rolland Jurgens, Richard

15   Careaga, Thoams, Lehmann, Stephen Fortunato, and Donald Wilhelm are officers of WMAAC

16   who signed the Registration Statements.  (¶¶ 4, 27-36.)  Plaintiffs name Moody's Investors

17   Services, Inc. ("Moody's") and McGraw Hill Companies, Inc. ("McGraw-Hill") (together

18   "Rating Agencies") as Defendants for their role in providing credit ratings to the certificates

19   which were published in the Prospectus Supplements.  (¶¶ 4, 11, 42-43.)

20       Unlike dividends issued to holders of common stock, the cash flow from mortgage-

21   backed securities ("MBS") is distributed "in order of priority, based on the specific tranche held

22   by the MBS investor."  (¶ 45.)  Thus, "[t]he highest tranche . . . is first to receive its share of the

23   mortgage proceeds and is also the last to absorb any losses should mortgage borrowers become

24   delinquent or default on their mortgages."  (Id.)  Plaintiffs allege Defendants made a number of

25   misrepresentations with respect to certificates issued in 36 public offerings between January 26,

26   2006 and June 26, 2007.  (¶ 2.)  Defendants amended the Registration Statements with

Certificate-specific Prospectus Supplements, which describe the mortgage pool underlying each trust.  (¶¶ 61-62.)

**Discussion**

I.    Legal Standards

On a Rule 12(b)(6) motion to dismiss, the Court must assess the viability of the Complaint.  Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has recently clarified that "[a] claim has facial plausibility when the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal, 129 S. Ct. at 1949).  The Court must accept Plaintiffs' factual allegations as true, but need not accord the same deference to legal conclusions.  Id. at 1949-150 (citing Twombly, 550 U.S. at 555).  To the extent documents referenced in a complaint contradict a plaintiff's conclusory allegations, the Court is not required to accept those allegations as true. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

Under a facial challenge to jurisdiction under Rule 12(b)(1), the Court's analysis mirrors its Rule 12(b)(6) inquiry.  See James Wm. Moore, et al., Moore's Federal Practice § 12.30[4]; see also Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2204) (distinguishing between facial and factual challenges).

II.    Request for Judicial Notice

When deciding a motion to dismiss, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).  A court may

1    consider "a writing referenced in the complaint but not explicitly incorporated therein" if a claim

2    necessarily relies on the document and there is no dispute as to authenticity.  Id.  A court may

3    take judicial notice of public documents filed with the SEC.  Dreiling v. American Express Co.,

4    458 F.2d 942, 946 n.2 (9th Cir. 2006).

5         The WaMu Defendants seek judicial notice of (1) certain SEC filings (Dkt. No. 171

6    ("RJN"), Exs. 1-6, 21-22, 25), (2) the Mortgage Loan Purchase and Sale Agreement (id., Ex. 23),

7    (3) summaries and supporting data related to the delinquency rates of the loans (id., Exs. 7, 8),

8    and (4) a number of press releases, newspaper articles, and reports (id., Exs. 9-19).  Plaintiffs do

9    not distinguish among the exhibits and object the Court taking judicial notice of any document.

10   (Dkt. No. 177 at 14 n.5.)  The Court GRANTS the request as to the SEC filings, which are

11   referenced in the complaint, but DENIES the request as to the remainder of the documents,

12   which do not bear on the Court's analysis.

13   III.    Sections 11 and 12(a)(2)

14        a.    Standing under Section 11

15        The WaMu Defendants challenge Plaintiffs' standing to bring § 11 and § 12(a)(2) claims

16   with respect to a number of the certificates.  Because the standard for standing differs under each

17   statute, the Court analyzes standing as to these claims separately.  To establish standing under

18   § 11, a plaintiff must allege "they purchased shares either (1) directly in the public offering for

19   which the misleading registration statement was filed or (2) traceable to that public offering."

20   Guenther v. Cooper Life Sciences, Inc., 759 F. Supp. 1437, 1439 (N.D. Cal. 1990); see also 15

21   U.S.C. § 77k(a).  This Court has previously observed that named plaintiffs who purchased

22   certain types of notes lacked standing to pursue § 11 claims for other related notes which they

23   did not purchase.  See In re Washingon Mutual Securities Litig., 694 F. Supp. 2d 1192, 1220

24   (W.D. Wash. 2009); In re Wells Fargo Mortgage-Backed Certificates Litig., ___ F. Supp. 2d.

25   ___, 2010 WL 1661534, at *4 (N.D. Cal. April 22, 2010) (same); accord, Casey v. Lewis, 4 F.3d

26   1516, 1519 (9th Cir. 1993) ("At least one named plaintiff must satisfy the actual injury

component of standing in order to seek relief on behalf of himself or the class.") (emphasis in original).

Doral Bank alleges it purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR17, 2006-AR18, 2007-OA4, and 2007-OA5 and WMALT Series 2007-OA5. (¶ 20.) Chicago PABF purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR5, 2006-AR12, 2006-AR16, 2007-HY1, and 2006-HY1. (¶ 21.) Boilermakers purchased WaMu Mortgage-Pass Through Certificates, Series 2006-AR7. (¶ 22.) Plaintiffs do not allege they purchased any of the following certificates identified in the complaint: 2006-AR1, 2006-AR2, 2006-AR3, 2006-AR4, 2006-AR6, 2006-AR8, 2006-AR9, 2006-AR10, 2006-AR11, 2006-AR13, 2006-AR14, 2006-AR15, 2006-AR19, 2006-HY2, 2006-HY3, 2006-HY4, 2006-HY5, 2006-HY6, 2006-HY7, 2006-OA6, WMALT 2007-OC1, WMALT 2007-OC2, WMALT 2007-1, WMALT 2007-2, and WMALT 2007-3. (See ¶¶ 38-39; Dkt. No. 170, Appx. B.)

Plaintiffs, relying primarily on In re Countrywide Financial Corp. Sec. Litig., 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008), argue they have standing to sue on behalf of the class because all the certificates were issued pursuant to either the 2006 or 2007 Registration Statements. (Dkt. No. 177 at 17; see also Dkt. No. 191 (notice of supplemental authority).) The Court is not persuaded to adopt Plaintiffs' expansive view of standing. Unlike the scenario in Countrywide, Plaintiffs here allege that certain statements in the supplemental prospectuses are materially misleading. (See ¶ 61.) In instances where the misstatements extend beyond the shelf registration materials, it is difficult to adopt the rationale that the common misstatements suffice for standing. Plaintiffs lack standing to sue for losses related to the 25 certificates for which they have failed to identify a purchaser.

Plaintiffs also urge the Court to defer ruling on the issue of standing because the issue is "premature to raise on a motion to dismiss." (Dkt. No. 177 at 15.) Plaintiffs' argument and selective quotation of authority invites this Court to commit error. The courts in Global Crossing Ltd. Sec. Litig., 313 F. Supp. 2d 189, 204-05 (S.D.N.Y 2003), and Hevesi v. Citigroup, Inc., 366

F.3d 70, 82 (2d Cir. 2004), were contrasting the standing of the lead plaintiffs with that of the named plaintiffs.  Thus, those courts contemplated revisiting the issue of standing in the context of a Rule 23 typicality and adequacy of representation analysis.  <u>See</u> <u>Global Crossing</u>, 313 F. Supp. 2d at 205 ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims.")  In this case, Plaintiffs have not identified any named plaintiff who purchased 25 of the Certificates cited in the Complaint.  Without any purchaser who suffered a loss, plaintiffs cannot identify an injury in fact traceable to the offering as required for Article III standing.  <u>See</u> <u>In re Lehman Brothers Sec. and ERISA Litig.</u>, 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010).   Because Plaintiffs have not alleged an injury in fact for the purposes of those certificates, the issue is properly addressed on a motion to dismiss.

       b.     <u>Standing under Section 12(a)(2)</u>

Standing under Section 12(a)(2) is more restrictive than under Section 11.  Section 12 "permits suit against a seller of a security by prospectus only by 'the person purchasing such security from him,' thus specifying that a plaintiff must have purchased the security directly from the issuer of the prospectus."  <u>Hertzberg v. Dignity Partners, Inc.</u>, 191 F.3d 1076, 1081 (9th Cir. 1999).  This Court has previously held that simply alleging a purchase was "traceable to" a particular offering is insufficient to confer standing under Section 12.  <u>WaMu II</u>, 694 F. Supp. 2d at 1226; <u>see also</u> <u>In re Scottish Re Group Sec. Litig.</u>, 524 F. Supp. 2d 370, 399 (S.D.N.Y. 2007) (Plaintiffs' allegations that (1) underwriters sold securities as part of an offering and (2) "plaintiffs acquired securities in the Offerings" were sufficient).

Plaintiffs allege they purchased certificates "pursuant to" the offending Registration Statements and subsequent Prospectus Supplements.  (¶¶ 20-22.)  In their response brief, Plaintiffs submit: "[t]he Complaint alleges that WCC sold the Certificates as part of the Offerings, and that Plaintiffs acquired the Certificates sold as part of those Offerings."  (Dkt. No.

177 at 19.)  However, an allegation that a plaintiff acquired certificates that had been—at some point in time—sold in an Offering is different from an allegation a plaintiff purchased certificates as part of an Offering.  As the Court in <u>Nomura</u> recognized, "[i]f plaintiffs did in fact purchase the Certificates directly from the defendants, they should have said so."  <u>Plumbers' Union Local No. 12 Pension v. Nomura Asset Acceptance Corp.</u>, 658 F. Supp. 2d 299, 305 (D. Mass. 2009).  Plaintiffs' § 12 claims are dismissed for lack of standing.

        c.      <u>Misrepresentation</u>

Section 11 creates a private right of action for purchasers of a security when an issuer's coordinate registration statement includes "an untrue statement of a material fact or omit[s] to state a material fact required to be stated . . . to make the statements therein not misleading."  15 U.S.C. § 77k(a).  To prevail on a § 11 claim, "a plaintiff must prove '(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have mislead a reasonable investor about the nature of his or her investment.'"  <u>Rubke v. Capitol Bancorp, Ltd.</u>, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006, 1027 (9th Cir. 2005)).  Similarly, § 12(a)(2) imposes liability "on parties who sell securities with a false or misleading prospectus."  <u>In re Worlds of Wonder Sec. Litig.</u>, 35 F.3d 1407, 1423 (9th Cir. 1994).  The standard for § 12 materiality is the same as under § 11.  <u>Id.</u> at 1424.

"[W]hether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact."  <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1081 (9th Cir. 1995).  Thus, the court may only determine the issue of materiality as a matter of law where "the statement is so obvious that reasonable minds could not differ."  <u>Id.</u> (internal quotations omitted).

Following a familiar refrain, Plaintiffs allege the offering documents were materially misleading because (1) they misinformed investors about the nature of the mortgage loans' underwriting guidelines (¶¶136-149); (2) they failed to disclose the risks associated with the

mortgage loan appraisals and misstated the loan-to-value ratios of the mortgages (¶¶ 150-159; 165-167), and (3) the prospectus supplements misstated the certificates' true credit ratings (¶¶168-171). The Court analyzes each in turn.

> 1. Underwriting Guidelines

In Wells Fargo, the court denied dismissal of a complaint alleging improper deviations from underwriting guidelines where "plaintiffs allege[d] that the Offering Documents were misleading as to the extent to which Wells Fargo and the third-party originators deviated from their guidelines." 2010 WL 1661534, at *11; see also Tsereteli, 692 F. Supp. 2d at 392-93 (declining to dismiss complaint where plaintiffs alleged (1) abandonment of underwriting guidelines and (2) a dramatic rise in defaulting loans). In contrast, the court in Nomura dismissed a complaint based on deviations from underwriting standards in the issuance of MBS certificates when a "fusillade of cautionary statements" muted plaintiffs' claim they were not on notice of soft underwriting standards. 658 F. Supp. 2d at 307.

The Registration Statements provide:

> The mortgage loan seller's underwriting standards are intended to evaluate a prospective mortgagor's credit standing and repayment ability, and the value and adequacy of the proposed mortgage property as collateral. In the loan application process, prospective mortgagors generally will be required to provide information regarding such factors as their assets, liabilities, income, credit history, employment history and other related items….

(¶ 138.) Plaintiffs allege such statements are misleading because WaMu pressured appraisers into overstating the value of the properties, made no attempt to confirm underwriting standards for third party issuers, and did not investigate the validity of appraisal values of a sufficient number of loans prior to securitization. (¶ 139.) The Prospectus Supplements stated:

> The sponsor's underwriting guidelines [and Washington Mutual Bank's underwriting guidelines] generally are intended to evaluate the prospective borrower's credit standing and repayment ability and the value and adequacy of the mortgaged property as collateral.

(¶ 143.)  Plaintiffs allege these statements are misleading because WaMu failed to verify the information contained in borrowers' mortgage loan applications, and ignored adverse information about the borrowers.  (¶144.)  Defendants urge dismissal because the Prospectus Supplements included warnings about a number of other documentation programs used to evaluate mortgage loan applications.  (Dkt. No. 170 at 16; RJN, Ex. 3 at S-28.)  Even under these alternative documentation programs, the Supplements indicated "exceptions to the sponsor's loan program parameters may be made on a case-by-case basis if competing factors are present." (RJN, Ex. 3 at S-30.)  The Prospectus Supplements identify the number of "full documentation" and "reduced documentation" loans in each Certificate pool.  (RJN, Ex. 4 at S-111.)

Plaintiffs' underwriting allegations survive dismissal because the statements may be misleading if they mask the extent to which the sponsor's underwriting guidelines were disregarded.   In essence, Plaintiffs allege the underwriting guidelines ceased to exist.  If proven true, the absence of underwriting standards could make the identified statements misleading. The Court denies Defendants' motion to dismiss the underwriting guidelines.

### 2.    Appraisal/LTV ratio Allegations

In Tsereteli, the court dismissed allegations based on faulty appraisal practices reasoning that "neither an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact."  692 F. Supp. 2d at 393 (Plaintiffs failed to allege the speaker did not have the opinion at the time he made the statement appraisals were conducted "in accordance with the Uniform Standards of Practice.").  In contrast, the Wells Fargo court denied dismissal of appraisal and LTV allegations where Plaintiffs supported their claims with numerous statements from confidential witnesses that included estimates about the degree to which LTV ratios were inaccurate for the Wells Fargo.  2010 WL 1661534, at *11-12.

Plaintiffs have not alleged actionable misrepresentations based on appraisals or loan-to-value ratios.  Plaintiffs allege the statement that appraisals were completed in accordance with the Uniform Standards of Professional Appraisal Practice was misleading because LTV ratios

1  were manipulated to meet certain targets.  (¶¶ 60-61.)  Plaintiffs' allegations on this issue are

2  simply too conclusory.  For instance, the near wholesale reliance on the New York Attorney

3  General's complaint against eAppraiseIT offers no nexus to the Certificates at issue here.  (¶¶

4  61-84.)  The Court is left to assume there is an identity between these loans and the ones at issue

5  in the eAppraiseIT complaint, even though the NYAG complaint focuses on events that post-date

6  the vast majority of these offerings.  (Dkt. No. 170 at 23.)  Though Plaintiffs offer some

7  appraisal values from reviews completed, they do not allege that the differences in valuation

8  have any connection with any loan underlying the securities here.  Thus, unlike the complaint in

9  Wells Fargo, Plaintiffs have not substantiated their conclusory allegations with facts suggesting a

10  viable claim.  The appraisal and coordinate LTV ratio allegations must be dismissed.

                    3.    Credit Ratings

12          Plaintiffs' credit ratings allegations are similarly insufficient.  Plaintiffs allege the

13  offering documents were misleading because the ratings were based on outdated models.  (¶¶ 15-

14  16, 105-113.)  However, Plaintiffs fail to allege facts that would make this a material omission.

15  Other courts have held that there is no duty to disclose the methods used by agencies in

16  developing a rating.  Tsereteli, 2010 WL 816623, at *5.  The mere fact that the ratings would

17  have been different under a different methodology is insufficient to state a claim.

18          Further, Plaintiffs allege that WaMu failed to disclose the Ratings Agencies' conflicts of

19  interests.  (¶¶ 91-97.)  However, "the risk that the rating agencies operated under a conflict of

20  interest because they were paid by the issuers had been known publicly for years."  In re Lehman

21  Bros. Sec. and ERISA Litig., 684 F. Supp. 2d 485, 492 (S.D.N.Y. 2010).  Thus, because

22  reasonable investors knew that the rating agencies were paid by the issuers, the alleged

23  misstatement is immaterial.  Id.

24          The Court dismisses the credit ratings allegations.

25                    4.    Purchase and Sale Agreements

26

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 11                    CASE NO. C09-00037MJP

1    Defendants claim the Purchase and Sale agreements shield them from liability because it

2  provided that purchasers' sole remedy is the obligation to repurchase the certificates or substitute

3  the mortgage loans in the trust.  (Dkt. No. 170 at 33; RJN, Ex. 25.)  In <u>Lone Star Fund V</u>

4  <u>(U.S.) L.P. v. Barclays Bank PLC</u>, the Fifth Circuit held plaintiffs could not advance

5  misrepresentation claims based on statement "that there were no delinquent loans in the BR2 and

6  BR3 trusts" when the prospectuses provided the defendant would substitute performing

7  mortgages in the trusts.  594 F.3d 383, 388-90 (5th Cir. 2010).  The <u>Lone Star</u> Court reasoned the

8  "repurchase or substitute clauses change[d] the nature of [defendant's] representation."  <u>Id.</u> at

9  390.

10    Unlike the scenario in <u>Lone Star</u>, Plaintiffs allegations are not simply based on a

11 representation about the absence of delinquent loans.  As set forth above, Plaintiffs allege

12 misstatements and omissions regarding underwriting guidelines.  The purchase and sale

13 agreements thus cannot shield Defendants from liability at the pleadings stage.

14    5.    <u>Economic Loss</u>

15    Defendants urge dismissal because Plaintiffs do not allege they have failed to receive an

16 income stream from the Certificates and, as such, have failed to allege an economic loss.  (Dkt.

17 No. 170 at 35.)  The Court declines to dismiss the Complaint on this basis.

18    Plaintiffs allege the "delinquency, foreclosure, repossession, and bankruptcy rates for all the

19 collateral underlying the Certificates—arising from defective collateral and faulty origination

20 practices—triggered unprecedented downgrades of the Certificates' credit ratings by the Rating

21 Agencies and attendant declines in the value of the Certificates."  (¶¶ 191, 211.)  Section 11

22 allows damages for "the difference between the amount paid for the security . . . and  . . .  the

23 value thereof as of the time such suit was brought."  Here, Plaintiffs allegations of loss give rise

24 to the inference that the value of the security is much less than the purchase price.  The mere fact

25 that Plaintiffs may have difficulty substantiating the exact nature of their loss in an illiquid

26 market does not necessitate dismissal.

6.   Risk Disclosures

Defendants argue all claims must be dismissed because the prospectus documents contained numerous risk disclosures.  The two cases on which Defendants rely, In re Convergent Techs. Sec. Litig., 948 F.2d 507 (9thCir. 1991), and Worlds of Wonder, 35 F.3d at 1420-21, affirmed rulings granting summary judgment based on the sufficiency of risk disclosures.  The Court declines to analyze the sufficiency of the disclosures at the pleadings stage.   As the Ninth Circuit cautioned in Fecht: "whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact."  70 F.3d at 1081.

d.   Control Persons—Section 15 Claims

The Court grants Defendants' motion to dismiss the Section 15 claims as to the Individual Defendants.  Section 15 of the Securities Act provides that "[e]very person who … controls any person liable under [Sections 11 or 12 of the Securities Act] shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 77o.  To state a claim for control person liability, a plaintiff must allege: (1) a primary violation of securities law; and (2) that the defendant exercised control over the primary violator.  See In re Washington Mutual Sec. Litig., 259 F.R.D. 490, 508-09 (W.D. Wash. 2009) (citing Howard v. Everex, Sys., 228 F.3d 1057, 1065 (9th Cir. 2000)).  Control means "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405; see also Howard, 228 F.3d at 1065 n.9.

Plaintiffs simply allege the Individual Defendants were either officers or directors of WMAAC and that they signed the Registration Statements.  (¶¶ 27-34.)  Based on nothing more, Plaintiffs claim each of the Individual Defendants are control persons "by virtue of his or her control, ownership, offices, [or] directorship."  (¶ 205.)  Such allegations, alone, are insufficient to state a claim.  First, making blanket allegations about the Individual Defendants makes no

sense when the Defendants apparently held different positions.  In other words, Plaintiffs should have substantiated their allegations about the Individual Defendants with individualized facts. Second, the allegations are entirely circular and couched as conclusions of law.  Plaintiffs allege the Individual Defendants are control persons "by virtue of his or her control."  This offers no factual content that would establish a plausible claim.

The Court also dismisses the Section 15 claims as to WCC.  In opposition to Defendants' motion on the issue, Plaintiffs cite paragraphs 55-60 and 82-84 from the Complaint.  (Dkt. No. 177 at 35.)  Tellingly, none of those paragraphs reference WCC.  Instead, they refer to WMB or WaMu (as a way of referencing WMB, WMAAC, and WCC).  (See ¶ 5.)  But Plaintiffs cannot plead control person liability simply through the use of shorthand.  Plaintiffs have not alleged facts giving rise to WCC's status as a control person.  The Section 15 claims must be dismissed.

> e.   Inquiry Notice—Doral Bank Claims

Defendants claim Doral Bank's claims are barred by the statute of limitations because Plaintiffs were on notice as of the August 20, 2008 complaint in In re WaMu.  (Dkt. No. 170 at 40.)   Under 15 U.S.C. § 77m, the statute of limitations for Securities Act claims is "one year after the discovery of the untrue statement or the omissions, or after such discovery should have been by the exercise of reasonable diligence."  An amendment adding a plaintiff "relates back to the date of the original pleading only when: 1) the original complaint gave defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff."  In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir. 1996) (no relation back where new plaintiffs bought securities at different values and after different disclosures); see also In re Morgan Stanley Mortgage Pass-Through Certificates Litig., No. 09-civ-2137, 2010 U.S. Dist. LEXIS 84146, at *22 (S.D.N.Y Aug. 17, 2010) ("Inquiry notice exists where sufficient facts would suggest to a plaintiff of normal intelligence that wrongdoing is probable, not merely possible.").

The original complaint in this action was filed on August 1, 2008.  Doral Bank filed its complaint on October 30, 2009.  (C09-1557; Dkt. No. 1.)  Plaintiffs argue that the two cases involved different securities and, thus, Doral could not have been on inquiry notice.  (Dkt. No. 177 at 38.)  Plaintiffs cannot, however, ignore their own allegations.  Plaintiffs' allegations are based on substantially identical statements in the Offering Documents and focus almost exclusively on the shelf Registration documents.  If these allegations are sufficient to state a claim as to the earlier Certificates, they must also be sufficient to put other holders of WaMu certificates on notice of underwriting and appraisal issues.  (See Dkt. No. 187 at 22.)  The Court therefore dismisses claims to the extent they include the following Certificates: WaMu 2007-OA4, WaMu 2007-OA5, and WMALT-OA5.

  f. <u>Time Barred Appraisal Claims</u>

The Court dismisses Plaintiffs appraisal allegations as to a number of the Certificates because they are time barred.  Plaintiffs' appraisal allegations are predicated upon the NY Attorney General's complaint against First American and eAppraiseIT, which was filed on November 1, 2007.  (See ¶¶ 64-84.)  A number of plaintiffs filed their appraisal allegations more than a year after the NYAG's complaint.  (See Dkt. No. 170 at 42 (Chicago PABF on March 16, 2009, Doral Bank on October 30, 2009, and Boilermakers on January 12, 2009).)

These claims were not equitably tolled by the filing of the New Orleans Action.  In <u>American Pipe & Const. Co. v. Utah</u>, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. 538, 554 (1974).  Courts since <u>American Pipe</u> have found that the statute of limitations does not toll for putative class actions whose named plaintiff lacks standing to advance claims in the first place.  See <u>Walters v. Edgar</u>, 163 F.3d 430, 432 (7th Cir. 1998); <u>Palmer v. Stassinos</u>, 236 F.R.D. 46, 465-66 and n.6 (N.D. Cal. 2006) ("It is one thing to toll a period of limitations because of the discretionary act of one judge seeking to manage his or her docket in an efficient manner, but it

1    would be beyond the constitutional power of a federal court to toll a period of limitations based

2    on a claim that failed because the claimant had no power to bring it.")  Because there are no

3    allegations the New Orleans plaintiffs had standing to assert the appraisal claims on behalf of

4    Chicago PABF, Doral Bank, or Boilermakers, the only surviving certificates with coordinate

5    appraisal allegations are 2006-AR2, AR14, AR 16, AR18, 2007-HY2, HY4.  (See New Orleans

6    Complaint  ¶¶ 16, 17.)

7    IV.    Rating Agencies' Motion

8            The Rating Agencies move for dismissal of the § 15 claims against them because (1)

9    Plaintiffs' failed to identify a primary violation by the Issuing Trusts, (2) Plaintiffs failed to set

10   forth sufficient allegations of "control" against the Agencies, and (3) Plaintiffs' claims are time-

11   barred.  (Dkt. No. 168.)  In response, Plaintiffs concede that WMAAC—and not the Issuing

12   Trusts—should have been identified as the entity allegedly under the Rating Agencies' control.

13   (Dkt. No. 178 at 7.) Plaintiffs seek leave to amend their complaint "for the sole purpose of

14   correcting their misidentification of the 'issuer' that was the controlled entity" and maintain

15   amendment is appropriate because "the core supporting factual allegations" about the Rating

16   Agencies' control remain unchanged. (Dkt. No. 190 at 2.)   Because amendment would be futile,

17   the Court DENIES the motion to amend and GRANTS the Rating Agency's motion to dismiss.

18           As set forth above, to sustain a Section 15 claim, a plaintiff must allege: (1) a primary

19   violation of securities law; and (2) that the defendant exercised control over the primary violator.

20   Whether an individual is a "control person" is "an intensely factual question, involving scrutiny

21   of the defendant's participation in the day-to-day affairs the corporation and the defendant's

22   power to control corporate actions."  Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994); see

23   also Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162 (9th Cir. 1996)

24   ("As the definition suggests, our inquiry must revolve around the "management and policies" of

25   the corporation, not around discrete transactions.").  The Lehman Bros. court dismissed § 15

26   claims against rating agencies where plaintiffs alleged they "largely determined which loans

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 16          CASE NO. C09-00037MJP

1    were to be included in the securitization, the amount and form of credit enhancement for each

2    Certificate and the Certificate structure before they were actually engaged by Lehman. . . ."  In

3    re Lehman Bros. Sec. and ERISA Litig., 681 F. Supp. 2d 495, 500 (S.D.N.Y. 2010).  That court

4    reasoned plaintiffs allegations fell "considerably short of anything that could justify a reasonable

5    trier of fact in concluding that the decision making power lay entirely with the Rating Agencies."

6    Id. at 501.

7         Plaintiffs allege the Rating Agencies "determined the structure and credit support for

8    each of the Issuing Trusts [or WMAAC] which purportedly justified the ratings." (¶¶ 11, 42,

9    43.)  Plaintiffs further cite to a 2009 report from a Congressional oversight panel that suggests

10   certain agencies enabled and validated the decision-making behind the flawed mortgage-backed

11   securities market.  (¶ 97.)  Plaintiffs describe the methods the Rating Agencies used to rate the

12   Certificates.  (¶¶ 124-129.)  Even if the Court were to allow Plaintiffs to substitute WMAAC for

13   the Issuing Trusts, Plaintiffs' allegations are insufficient for the purposes of control person

14   liability.  Plaintiffs' allegations simply do not implicate WMAAC's management or policies, nor

15   do they suggest the ability to be involved in any day-to-day activities.

16        Indeed, Plaintiffs' allegations regarding the Rating Agencies' "ratings shopping" plainly

17   contradict any claim that the Rating Agencies controlled WMAAC.   The complaint suggests it

18   was the arrangers who "pressured" the Rating Agencies to reduce credit enhancement levels.

19   (¶ 94.)  WaMu purportedly "leveraged" the Rating Agencies of one another in order "to obtain

20   the most profitable structure—to WaMu—on the Offerings."  (¶¶ 114- 120.)  Read as a whole,

21   Plaintiffs' allegations regarding the Rating Agencies' control person liability simply fail to state

22   a claim.  Because Plaintiffs have failed to present a viable alternative Third Amended Complaint,

23   the Court's dismissal as to the Rating Agencies should be with prejudice.  In light of the

24   insufficiency of the allegations, the Court need not reach the question of whether the claims are

25   time-barred.

26   \\

1

**Conclusion**

2   First, Plaintiffs lack standing to sue for losses related to the 25 certificates for which they

3 have failed to identify a purchaser.  The Court GRANTS the motions to dismiss these claims.

4 Second, the Court GRANTS the motions to dismiss Plaintiffs' § 12 claims for lack of standing.

5 Third, the Court rules on Plaintiffs' § 11 claims as follows: (1) Plaintiffs' underwriting

6 allegations survive dismissal and the Court DENIES the motions on this issue; (2) the Court

7 GRANTS the motions to dismiss Plaintiffs' § 11 misrepresentations claims based on appraisals

8 or loan-to-value ratios; and (3) the Court GRANTS the motions to dismiss Plaintiffs' § 11 credit

9 ratings allegations.  Fourth, the Court DENIES the motions to dismiss as to the arguments that

10 the purchase and sale agreements shield Defendants from liability, that economic loss is not

11 sufficiently alleged, and that the prospectuses contained numerous risk disclosures.  Fifth, the

12 Court GRANTS Defendants' motion to dismiss the Section 15 claims against the Individual

13 Defendants and WCC.  Sixth, the Court GRANTS Defendants' motions to dismiss Doral Banks'

14 claims to the extent they include the following Certificates: WaMu 2007-OA4, WaMu 2007-

15 OA5, and WMALT-OA5.  Seventh, the Court GRANTS the motions to dismiss on statute of

16 limitation grounds as to Plaintiffs' appraisal allegations, except as to certain certificates.  Eighth,

17 because amendment would be futile, the Court DENIES Plaintiffs' motion to amend, and

18 GRANTS the Rating Agencies' motion to dismiss the Section 15 claims against them.

19   The Clerk is directed to send copies of this order to all counsel of record.

20   Dated this 28th day of September, 2010.

21

22

23           Marsha J. Pechman

24           United States District Judge

25

26

ORDER ON DEFENDANTS' MOTIONS TO DISMISS - 18     CASE NO. C09-00037MJP

# Exhibit B

**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | LONDON | TOKYO | MANNHEIM

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

October 8, 2010

**VIA FACSIMILE**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
        the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

        We write on behalf of Plaintiffs Footbridge Limited Trust ("Footbridge") and OHP
Opportunity Limited Trust ("Opportunity") in response to the Countrywide Defendants' letter to
the Court dated October 5, 2010, regarding the recent decision of a federal judge in Seattle in
*Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series
AR1*, No. C09-00037MJP (W.D. Wash. Sept. 28, 2010) ("*WaMu*"). Defendants cite *WaMu* for
two statute-of-limitations propositions, both of which allegedly bear on Defendants' pending
joint motion for summary judgment.

        *First*, Defendants cite *WaMu* for the notion that the filing of a class action does not toll
the statute of limitations with respect to a mortgage-backed securities offering unless the named
plaintiff has standing to challenge that particular offering. But on this point, *WaMu* is an outlier
decision that is contrary to case law in the Second Circuit and the weight of authority elsewhere.
In construing the *American Pipe* tolling doctrine, the Second Circuit has held that "[i]t would not
undermine the purposes of statutes of limitations to give the benefit of tolling to all those who
are *asserted to be members of the class* for as long as the class action *purports to assert their
claims.*" *In re WorldCom Secs. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (emphasis added).
Defendants do not and cannot dispute that the Plaintiff funds in this case were part of the defined

**quinn emanuel urquhart & sullivan, llp**

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712
Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100

Hon. P. Kevin Castel
October 8, 2010

class in the *Luther* case and that this class action "*purport[ed] to assert*" their claims from the
time they were added to the complaint until they filed this action in January 2010. It also merits
mention that to date there has been no ruling in the *Maine State* class action on the issue of the
plaintiffs' standing. Thus, it has not yet been determined whether the plaintiffs in *Maine State*
have standing to challenge the Countrywide offerings in which the plaintiffs invested.
Defendants' standing arguments are not ripe, even apart from their lack of merit.

     More basically, as the *WorldCom* court noted, the purpose of *American Pipe* is "to
protect class members from being *forced* to file individual suits in order to preserve their
claims." *Id.* at 256 (emphasis in original). Yet the standing analysis adopted by the *WaMu* court
would do exactly the opposite—force class members to file "placeholder" lawsuits to protect
themselves in the event the named plaintiff was eventually determined not to have standing to
assert their claims. It is for this reason that the majority of courts to address the issue have held
that subsequent decisions on standing do not strip purported class members of their entitlement
to class action tolling.[1] The logic of *American Pipe* mandates tolling for any claims regardless of
whether the named plaintiffs had standing or even whether the court hearing the class action had
jurisdiction over the action. *See Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir.
1998) (action dismissed for lack of subject matter jurisdiction tolled statute of limitations);
*Valenzuela v. Kraft Inc.*, 801 F.2d 1170, 1174-75 (9th Cir. 1986). Nothing in *American Pipe*
requires a court to pretend that a case dismissed on standing or jurisdictional grounds never
existed.

     A contrary rule would be manifestly unfair—through no fault of their own, absent class
members (like the plaintiff funds in this case) would suddenly find themselves with millions and
potentially billions of dollars of losses that would be unrecoverable even if they could prove
defendants acted illegally. Such a rule would do nothing to advance the purposes of the statute
of limitations because the Countrywide Defendants have been aware of the claims against them
since the filing of the *Luther* case in November 2007.

---

[1]   *See, e.g., In re Initial Pub. Offering Secs. Litig.*, 2004 WL 3015304, at *5 (S.D.N.Y.
Dec. 27, 2004) (to hold otherwise "would punish class members for relying on the very thing
Rule 23 is intended to provide: an efficient method for resolving claims common to a class of
individuals without the need for wasteful and duplicative litigation"); *see also Griffin v.
Singletary*, 17 F.3d 356, 360-61 (11th Cir. 1994) (tolling principles apply even where named
plaintiffs lack standing); *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d 429,
456-457 (S.D.N.Y. 2005) (same); *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D.
424, 430 (D. Md. 2005) (same); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 2002 WL
33934282, at *29-30 (D.N.J. June 26, 2002) (same).

Hon. P. Kevin Castel
October 8, 2010

Citing Article III of the US Constitution, *WaMu* also based its standing analysis on the assertion that "it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it." (Op. at 15-16) (*citing Palmer v. Stassinos*, 236 F.R.D. 460, 465-66 and n. 6 (N.D. Cal. 2006). Whatever the validity of that reasoning in other cases, it has no validity here. As Defendants themselves have repeatedly pointed out, the original *Luther* class action was filed not in federal court, but in California *state court*. State court jurisdiction is not defined by Article III or federal court standing doctrines.

*Second*, Defendants argue that the *WaMu* court rejected application of the relation-back doctrine on the facts of that case. It is not at all clear from the face of the opinion that the court relied on relation-back as opposed to the separate doctrine of inquiry notice to find certain claims time-barred. (See Op. at 14-15). But even assuming the *WaMu* court did apply relation-back, its holding is contrary to the better-reasoned decisions from this District that have allowed relation back of later-filed class action claims on facts that are identical to those at issue in this case. *See, e.g., New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, --- F. Supp. 2d ----, 2010 WL 1172694, at *8 (S.D.N.Y. Mar. 26, 2010); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 2148919, at *10 (S.D.N.Y. Sept. 6, 2005).[2]

Respectfully submitted,

*Daniel L. Brockett* [signature]

Daniel L. Brockett

cc:   Defendants' counsel (via e-mail)

---

[2] Defendants also take a swipe at the notion that the relation-back doctrine can be applied in conjunction with *American Pipe*. But courts in this District have combined them repeatedly, (*see* Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion for Summary Judgment on the Statute of Limitations and Repose, at 14 n.43), and the only case cited by Defendants, *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977), was expressly limited to its facts and has never been interpreted as establishing a general prohibition against applying relation back in conjunction with class action tolling principles. *See id.* at 782 ("Relation back, *at least on the facts of this case*, would not accord with one of the rationales of American Pipe . . . .") (emphasis added).

# Exhibit C

**quinn emanuel** trial lawyers

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | LONDON | TOKYO | MANNHEIM

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

October 21, 2010

**VIA HAND DELIVERY**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

On behalf of Plaintiffs Footbridge Limited Trust and OHP Opportunity Limited Trust, we
respectfully submit a recent decision of relevance to Defendants' pending motion for summary
judgment on the statute of limitations.  The decision, *Sawyer v. Atlas Heating & Sheet Metal
Works, Inc.*, No. 10-C-0331, 2010 WL 3212040 (E.D. Wis. Aug. 11, 2010), attached as Exhibit
A, was issued after Plaintiffs filed their opposition to Defendants' summary judgment motion.

*Sawyer* rejects one of the principal arguments advanced by Defendants in support of
summary judgment—namely, that the federal tolling rule of *American Pipe* is inapplicable to
Plaintiffs' 1933 Act claims because the *Luther* class action was brought as a class action in
California state court rather than in federal court under Rule 23.  The Court stated that although
*American Pipe* and *Crown, Cork & Seal* involved class actions under Rule 23, defendant "offers
no reason why the rationale of these cases would not apply to class actions filed in state court
asserting federal claims." According to the Court, "[t]he relevant statute of limitations is
provided by federal law, and thus federal tolling rules apply." *Id.* at *2.  The Court thus allowed
tolling based on the prior class action, even though the action had been filed in state court and
even though the named plaintiff had voluntarily dismissed the suit. *Id.*  The court held that
denying tolling would undermine the *American Pipe* and *Crown, Cork & Seal* doctrine, which

**quinn emanuel urquhart & sullivan, llp**

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
Akasaka Twin Tower Main Bldg., 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

Hon. P. Kevin Castel
October 21, 2010

"enables class members to rely on the class action to protect their rights and make[s] it
unnecessary for them to clutter the courts with duplicative protective suits." *Id.* at *1.


Respectfully submitted,

*Daniel Brockett*

Daniel L. Brockett


cc:     Defendants' counsel (via e-mail)

Westlaw.

--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)
**(Cite as: 2010 WL 3212040 (E.D.Wis.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Wisconsin.
Isaac SAWYER d/b/a A-1 Security Locksmiths,
Plaintiff,
v.
ATLAS HEATING & SHEET METAL WORKS,
INC., Defendant.
No. 10-C-0331.

Aug. 11, 2010.

**Background:** Plaintiff brought putative class action in state court alleging that defendant violated the Telephone Consumer Protection Act (TCPA) by faxing it an unsolicited advertisement. Following removal, defendant moved to dismiss.

**Holding:** The District Court, Lynn Adelman, J., held that statute of limitations was tolled during pendency of prior class action.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure 170A ⚖══1048**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(L) Judgment on the Pleadings
            170AVII(L)1 In General
                170Ak1045 Want of Fact Issue
                    170Ak1048 k. Affirmative Defense or Avoidance, Effect Of. Most Cited Cases

**Federal Civil Procedure 170A ⚖══2554**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determina-tion
                    170Ak2554 k. Matters Considered.
Most Cited Cases
The proper procedural vehicle for raising an affirmative defense is a motion for judgment on the pleadings or a motion for summary judgment. Fed.Rules Civ.Proc.Rules 12(c), 56, 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⚖══1752.1**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1752 Affirmative Defenses, Raising by Motion to Dismiss
                    170Ak1752.1 k. In General. Most Cited Cases
Courts may take the short-cut of resolving an affirmative defense pursuant to a motion to dismiss for failure to state a claim where the plaintiff pleads itself into the defense and either the facts relating to the defense are not disputed or the plaintiff does not contend that further discovery or a trial is needed to resolve the matter. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⚖══1832**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1832 k. Matters Considered in General. Most Cited Cases

**Federal Civil Procedure 170A ⚖══2533.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2533 Motion
                    170Ak2533.1 k. In General. Most

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)
**(Cite as: 2010 WL 3212040 (E.D.Wis.))**

Cited Cases
In considering a motion to dismiss for failure to state a claim, the court may take judicial notice of matters of public record without converting the motion into one for summary judgment. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Limitation of Actions 241 ⬤➞126.5**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(H) Commencement of Proceeding; Relation Back
            241k126.5 k. Class Actions, Matters Peculiar To. Most Cited Cases
Four-year statute of limitations for plaintiff to bring putative class action alleging that defendant violated the Telephone Consumer Protection Act (TCPA) by faxing it an unsolicited advertisement was tolled during pendency of separate putative class action in state court against defendant based on the same advertisement, even though that action was voluntarily dismissed; present class action was not an attempt to re-litigate the prior class action, but rather plaintiff filed suit after the named plaintiff in the prior action decided it no longer wanted to represent the class, and plaintiff's request to be substituted as named plaintiff was denied by the state court. 28 U.S.C.A. § 1658; Telephone Consumer Protection Act of 1991, § 3, 47 U.S.C.A. § 227.

**[5] Limitation of Actions 241 ⬤➞126.5**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(H) Commencement of Proceeding; Relation Back
            241k126.5 k. Class Actions, Matters Peculiar To. Most Cited Cases
The bringing of a putative class action tolls the statute of limitations as to all members of the putative class; this rule enables class members to rely on the class action to protect their rights and make it unnecessary for them to clutter the courts with duplicative protective suits.

**[6] Limitation of Actions 241 ⬤➞126.5**

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(H) Commencement of Proceeding; Relation Back
            241k126.5 k. Class Actions, Matters Peculiar To. Most Cited Cases
Although the filing of a putative class action tolls the statute of limitations as to all members of the putative class, once class certification is denied the statute of limitations resumes running.

Brian J. Wanca, Deborah S. Bussert, Anderson & Wanca, Rolling Meadows, IL, Charles H. Barr, Croen & Barr LLP, Milwaukee, WI, Phillip A. Bock, Bock & Hatch LLC, Chicago, IL, for Plaintiff.

Henry E. Koltz, Schmidt Darling & Erwin, Milwaukee, WI, for Defendant.

### *DECISION AND ORDER*

LYNN ADELMAN, District Judge.

**\*1** [1][2] Plaintiff Isaac Sawyer ("Sawyer"), doing business as A-1 Security Locksmiths, brought this putative class action against defendant Atlas Heating & Sheet Metal Works, Inc. ("Atlas") in state court, alleging that Atlas violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by faxing it an unsolicited advertisement. Atlas removed the case to this court. Before me now is Atlas's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that plaintiff's suit is untimely.[FN1]

The relevant allegations are as follows: On December 9, 2005, Atlas faxed unsolicited advertisements to plaintiff and others. On March 18, 2009, one of the recipients of the advertisement, Park Bank, commenced a putative class action against Atlas in state court, alleging a violation of the TCPA. Park Bank brought the action of behalf of

--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)
**(Cite as: 2010 WL 3212040 (E.D.Wis.))**

[a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, and (4) with whom Defendant does not have an established business relationship.

(Barr Aff., Ex. 1, ¶ 16.) On March 16, 2010, pursuant to Park Bank's request, the court dismissed the action. On March 19, 2010, plaintiff filed the present suit, which is based on the same December 9, 2005 advertisement as Park Bank's suit. Plaintiff brought the suit on behalf of

[a]ll persons who (1) on or after May 18, 2005, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendant, (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for sending of such faxes, and (4) with whom Defendant does not have an established business relationship.

(Compl.¶ 16.)

[3] A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. I accept all factual allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff. In considering a Rule 12(b)(6) motion, I may take judicial notice of matters of public record without converting the motion into one for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir.1994). In the present case, I take judicial notice of Park Bank's complaint against Atlas, which was filed in Milwaukee County Circuit Court Case No.2009-CV-7339, and the fact that it was voluntarily dismissed on March 16, 2010.

[4][5] The parties agree that 28 U.S.C. § 1658 governs and that it provides a limitations period of four years. Plaintiff's claim accrued on December 9,

2005, and plaintiff commenced the present action on March 19, 2010, more than four years later. However, plaintiff argues that under the doctrine established in *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 351-54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the effect of Park Bank's suit against Atlas was to toll (suspend) the statute of limitations during the time that Park Bank's suit proceeded as a class action, namely from March 18, 2009 until March 16, 2010 and, as a result, to make the present action timely. *American Pipe* and *Crown, Cork & Seal* stand for the proposition that the bringing of a putative class action tolls the statute of limitations as to all members of the putative class. The rule enables class members to rely on the class action to protect their rights and make it unnecessary for them to clutter the courts with duplicative protective suits.

*2 Atlas makes a number of arguments as to why the *American Pipe* and *Crown, Cork & Seal* doctrine should not apply in the present case. First, plaintiff argues that I should decline to apply the tolling rule because Park Bank voluntarily dismissed its suit. However, doing so would totally undermine the *American Pipe* doctrine because unnamed class members have no control over whether the named plaintiff decides to abandon the suit. If Atlas's argument were accepted, then unnamed class members would be encouraged to file their own lawsuits to ensure that their claims are not deemed untimely in the event that the named plaintiff elects to voluntarily dismiss the class's claims. Yet, the whole point of *American Pipe* is to allow unnamed class members to rely on the pending class action in lieu of filing their own protective lawsuits. Thus, the tolling rule applies even though Park Bank voluntarily dismissed the prior class action.

[6] In a related argument, Atlas argues that *American Pipe* and *Crown, Cork & Seal* apply only if the prior class action terminated in the denial of a mo-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)
**(Cite as: 2010 WL 3212040 (E.D.Wis.))**

tion for class certification. Atlas cites language in *Crown, Cork & Seal* stating that the commencement of a putative class action tolls the statute of limitations and that the statute of limitations remains tolled until class certification is denied. 462 U.S. at 353-54. Atlas reads this language to mean that the statute of limitations will not be tolled at all unless the prior class action reaches the class-certification stage. However, such language means only what it says-namely, that the filing of a putative class action tolls the statute of limitations, and that once class certification is denied the statute of limitations resumes running. In the present case, Park Bank's putative class action tolled the statute of limitations, and the fact that the case never reached the class-certification stage did not erase the fact that the statute of limitations was tolled while the class's claims were pending. Again, adopting Atlas's argument would defeat the rationale of *American Pipe,* since it would encourage class members to file protective suits in case the class action is dismissed before the class-certification stage.

Atlas next argues that the federal tolling rule is inapplicable because the Park Bank case was brought as a class action under state class-action rules rather than Federal Rule of Civil Procedure 23. Although it is true that *American Pipe* and *Crown, Cork & Seal* involved class actions under Rule 23, Atlas offers no reason why the rationale of these cases would not apply to class actions filed in state court asserting federal claims. The relevant statute of limitations is provided by federal law, and thus federal tolling rules apply. *See Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 265 (7th Cir.1998). American Pipe holds that, as a matter of federal law, the statute of limitations should be tolled while a putative class action is pending so that courts are not burdened with duplicative protective lawsuits. Why should it matter whether the class action was filed in state rather than federal court? The fact that the class action is pending in state court would not make duplicative protective lawsuits any less burdensome. Thus, the tolling rule applies even though

the Park Bank class action was filed in state court.

**\*3** Finally, Atlas argues that even if the tolling rule applied, it would only allow plaintiff to file an individual action, not a new putative class action. Atlas relies on cases from other circuits holding that *American Pipe* does not toll the limitations period for bringing new class actions, as it does for individual suits. *See, e.g., Griffin v. Singletary,* 17 F.3d 356, 359 (11th Cir.1994); *Korwek v. Hunt,* 827 F.2d 874 (2d Cir.1987). However, the Ninth Circuit has held that when the new class action is not simply an attempt to re-litigate the correctness of an earlier decision to deny class certification or an attempt to correct a procedural deficiency in an earlier would-be class, the new class action may benefit from the *American Pipe* tolling rule. *See Catholic Social Servs., Inc. v. INS,* 232 F.3d 1139, 1147-49 (9th Cir.2000). Further, the Third Circuit has applied *American Pipe* to subsequent class actions even when the subsequent action seeks to cure a procedural deficiency in the earlier class. *See Yang v. Odom,* 392 F.3d 97, 111 (3d Cir.2004). In *Yang,* the procedural deficiency was that the named plaintiff was not an adequate class representative, and the subsequent class action attempted to cure this deficiency by choosing a different class representative. The court held that the new class action could take advantage of the *American Pipe* tolling rule, reasoning as follows:

> Drawing the line arbitrarily to allow tolling to apply to individual claims but not to class claims would deny many class plaintiffs with small, potentially meritorious claims the opportunity for redress simply because they were unlucky enough to rely upon an inappropriate lead plaintiff. For many, this would be the end result, while others would file duplicative protective actions in order to preserve their rights lest the class representative be found deficient under Rule 23. Either of these outcomes would run counter to the policy behind Rule 23 and, indeed, to the reasoning employed by the Supreme Court in *American Pipe* and *Crown, Cork & Seal.*

--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)
**(Cite as: 2010 WL 3212040 (E.D.Wis.))**

392 F.3d 97, 111 (3d Cir.2004).

The Seventh Circuit has yet to address whether *American Pipe* tolls the statute of limitations for any kind of subsequent class action. However, I conclude that, under the circumstances of this case, plaintiff may maintain this suit as a class action and benefit from the *American Pipe* tolling rule. The present class action is not an attempt to re-litigate the Park Bank class action. Rather, Park Bank voluntarily dismissed its case after deciding that it no longer wanted to represent the class. After Park Bank decided to abandon the suit, Sawyer asked the state court to substitute him as the named plaintiff so that the suit could continue, but the state court refused Sawyer's request. Sawyer then immediately filed the present action in order to continue the suit on behalf of the class. Sawyer did not delay and is not trying to abuse the *American Pipe* rule. He, along with the rest of the putative class, relied on Park Bank to pursue the class's TCPA claims and thus did not file a duplicative protective suit within the statute of limitations. Under these circumstances, there is no reason to relegate Sawyer and the rest of the putative class to multiple individual actions and deprive them of the efficiencies of the class mechanism.

*4 Therefore, for the reasons stated,

**IT IS ORDERED** that Atlas's motion to dismiss based on the statute of limitations is **DENIED.**

> FN1. Technically, the basis of Atlas's motion is not that plaintiff fails to state a claim but that Atlas has an affirmative defense (statute of limitations) that can be resolved at the pleading stage. *See Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir.2004) (explaining that existence of meritorious affirmative defense does not equate to failure to state a claim upon which relief may be granted). The proper procedural vehicle for raising an affirmative defense is a motion for judgment on the pleadings or a motion for summary judgment. Plaintiff, however, does not object to my considering the merits of Atlas's affirmative defense pursuant to a 12(b)(6) motion. Moreover, courts may take the short-cut of resolving an affirmative defense pursuant to a 12(b)(6) motion where the plaintiff pleads itself into the defense and either the facts relating to the defense are not disputed or the plaintiff does not contend that further discovery or a trial is needed to resolve the matter. *See McCready v. eBay, Inc.,* 453 F.3d 882, 892 n. 2 (7th Cir.2006); *Mosely v. Bd. of Educ. of Chicago,* 434 F.3d 527, 533 (7th Cir.2006) *Xechem,* 372 F.3d at 901. Thus, I will address Atlas's motion under Rule 12(b)(6).

E.D.Wis.,2010.
Sawyer v. Atlas Heating & Sheet Metal Works, Inc.
--- F.Supp.2d ----, 2010 WL 3212040 (E.D.Wis.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit D

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2760
E-Mail mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
RESIDENT COUNSEL

October 26, 2010

**BY HAND**

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  Footbridge Limited Trust v. Countrywide Financial Corp.,
10 CIV 367 (PKC)

Dear Judge Castel:

We write as counsel to the Countrywide Defendants in the above-referenced matter, in response to the October 21, 2010 letter submitted by plaintiffs Footbridge Limited Trust and OHP Opportunity Limited Trust (the "Funds"), which submitted an inapposite opinion issued over the summer.

Sawyer v. Atlas Heating & Sheet Metal Works, Inc., __ F. Supp. 2d __, 2010 WL 3212040 (E.D. Wis. Aug. 11, 2010), involved fundamentally different facts from those present here. In Sawyer, a class plaintiff in state court voluntarily dismissed the class action. A new plaintiff attempted to be substituted as class plaintiff, but the state court refused to permit the substitution. The new plaintiff then filed the same action in federal court, to continue the action on behalf of the same class. Faced with these facts, the federal court noted that the new plaintiff "did not delay and is not trying to abuse the *American Pipe* rule. He, along with the rest of the putative class, relied on [the prior class plaintiff] to pursue the class's . . . claims [brought under the Telephone Consumer Protection Act] and thus did not file a duplicative protective suit within the statute of limitations." Id. *3. Here, in contrast, the Funds opted out of the Luther state court

Hon. P. Kevin Castel, p. 2

action—which was thereafter dismissed (although an appeal remains pending) and there is a parallel class action proceeding in the Central District of California as well—and commenced their own individual action in federal court in New York.  In short, the unlike the class plaintiff in <u>Sawyer</u>, the Funds here are proceeding solely on their own behalf, and unlike the class in <u>Sawyer</u>, the class here does not need, and is not relying on, the Funds to pursue its rights, but is instead pursuing them in California state and federal courts.

In addition, <u>Sawyer</u> provides limited rationale for its decision to permit cross-jurisdictional tolling (<u>i.e.</u>, using a class action filed in one judicial system to extend the limitations period for an action later filed in another judicial system).  The basic fact that federal tolling principles apply in an action under federal law, <u>id.</u> *2, is inapposite.  There is no "federal tolling principle" that permits cross-jurisdictional tolling, and <u>American Pipe</u> nowhere addressed such tolling.  Additionally, <u>American Pipe</u>, which was based on Fed. R. Civ. P. 23, enunciated a principle of efficiency for managing federal cases.  Yet according to the Funds, if a plaintiff files suit in state court under the Securities Act of 1933 (or any other federal statute), the state court would be required to apply a federal procedural rule that is based on Fed. R. Civ. P. 23—even though there is no question that the Federal Rules of Civil Procedure themselves do not apply in state court, <u>see</u> 28 U.S.C. § 2072(a), and regardless of what state law otherwise provides regarding class action tolling and/or class action tolling based on a class action filed in a different judicial system.  Neither the Funds, nor <u>Sawyer</u>, cite any precedent requiring such a result.[1]

<u>Sawyer's</u> only other justification for cross-jurisdictional tolling is its observation that "the fact that the class action is pending in state court would not make duplicative protective lawsuits any less burdensome."  2010 WL 3212040, *3.  Other courts disagree.  <u>See</u> Def. Mov. Br.19-20 & n.45.  Moreover, cross-jurisdictional tolling actually <u>increases</u> the burden on all systems, by permitting additional lawsuits that would otherwise be time-barred.  That fact is amply demonstrated here:  the Funds, whose claims are otherwise time barred, opted out of a California state court class action and filed a duplicative suit in federal court in New York.

Respectfully submitted,

*Mitchell A. Lowenthal*

Mitchell A. Lowenthal

Enclosure

cc:  Daniel L. Brockett, Esq.
     Jonathan Rosenberg, Esq.
     Christopher Caldwell, Esq.
     Theresa Trzaskoma, Esq.
     Boyd Cloern, Esq.
     Keara Gordon, Esq.

---

[1]     <u>Sawyer</u> cites only <u>Hemenway v. Peabody Coal Co.</u>, 159 F.3d 255 (7th Cir. 1998), which addressed state law claims heard in federal court under diversity jurisdiction.

# Exhibit E

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: (212) 225-2760
E-Mail mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRÉS DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
    RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR.
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
    RESIDENT COUNSEL

November 8, 2010

**BY HAND**

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

>     Re:  Footbridge Limited Trust v. Countrywide Financial Corp.,
>           10 CIV 367 (PKC)

Dear Judge Castel:

　　　　We represent the Countrywide Defendants in the above-referenced matter and
write to inform the Court of a recent development in Maine State Retirement System v.
Countrywide Financial Corp., Case No. 2:10-cv-00302-MRP-MANx (C.D. Cal.) ("Maine
State"), a putative class action asserting Securities Act claims against Countrywide in connection
with its issuance of 427 offerings of mortgage-backed securities.[1]  Late last week, the Honorable
Mariana Pfaelzer issued an order dismissing the complaint in Maine State without prejudice, and
the court's opinion (a copy of which is enclosed) addressed a number of issues that have been
raised in connection with the pending summary judgment motion before the Court.

　　　　First, in line with "[e]very court to address the issue in a MBS class action,"
Judge Pfaelzer held that "a plaintiff lacks standing under both Article III of the U.S. Constitution

---

[1]　　　The plaintiffs here (the "Funds") assert Securities Act claims based on two of the MBS offerings
challenged in Maine State; and the Funds would have been members of the Maine State putative class had they not
opted out of that action by filing lawsuits in this District.

Hon. P. Kevin Castel, p. 2

and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interest of investors in MBS offerings in which the plaintiffs did not themselves buy." Slip Op. at 5. As a result, Judge Pfaelzer said that any amended complaint in Maine State could only challenge those offerings "in which the named plaintiffs purchased." Id. at 7. Importantly for the purposes of this action, no named plaintiff in Maine State (or the earlier Luther and Washington class actions filed in California state court out of which Maine State arises) alleged a purchase from either of the two offerings challenged by the Funds. See Def. Br. at 19.

Second, Judge Pfaelzer held that class action tolling applies "only as to claims where the named plaintiffs had standing." Slip Op. at 11. Thus, Judge Pfaelzer ruled that absent class members—like the Funds—who invested in offerings not purchased by named plaintiffs could not benefit from class action tolling. Judge Pfaelzer's decision in this respect follows the reasoning of the WaMu MBS opinion Defendants submitted to the Court on October 5, 2010. Under this growing line of authority (Judge Pfaelzer cites "multiple other courts" that have reached this result, see id.), the Funds' Securities Act claims are time-barred. See Def. Br. at 18-19. Although the Funds resisted this reasoning in their October 8, 2010 letter to the Court by arguing it would be "manifestly unfair," Judge Pfaelzer directly rejected this position in Maine State—stating "[a]ny putative class member relying on [the] Luther and/or Washington State [class actions filed in California state court] can fairly be expected to understand that such a lawsuit would require a named plaintiff with standing to protect their claims." Slip Op. at 12.

Third, we note that Judge Pfaelzer concluded (without yet disclosing her analysis) that the Luther and Washington state court actions could provide a toll for Maine State notwithstanding the fact that those actions were filed in a different court system, and that class action tolling applies to the Securities Act's statute of repose. See Slip Op. at 10. As the Court knows, the Defendants disagree with these conclusions. See Def. Br. at 19-20, 24-25 n.51. But because there could be no toll in the first place, since the Funds can identify no named plaintiff in Luther, Washington or Maine State that purchased securities in either of the offerings they challenge, and because even the Funds concede that their claims are time-barred in the absence of a toll, it is not necessary to resolve these separate legal issues in connection with the pending motion.

Respectfully submitted,

Mitchell A. Lowenthal

Enclosure

cc: Daniel L. Brockett, Esq.
    Jonathan Rosenberg, Esq.
    Christopher Caldwell, Esq.
    Theresa Trzaskoma, Esq.
    Boyd Cloern, Esq.
    Keara Gordon, Esq.

LINKS: 145, 146, 149, 152, 156, 158

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

MAINE STATE RETIREMENT
SYSTEM, Individually and On Behalf
of All Others Similarly Situated

                  **Plaintiff,**

    v.

COUNTRYWIDE FINANCIAL
CORPORATION, et al.

           **Defendants.**

Case No. 2:10-cv-00302-MRP-MANx

**ORDER RE: MOTIONS TO DISMISS
AMENDED CLASS ACTION
CONSOLIDATED COMPLAINT**

## I.  INTRODUCTION AND BACKGROUND

From 2005 to 2007, Countrywide was the nation's largest residential mortgage lender.  AC ¶ 4.  During that period, Countrywide originated and purchased residential mortgages and home equity lines of credit ("HELOC") through its subsidiary Countrywide Home Loans ("CHL").  *Id*. at ¶ 28.  Between 2005 and 2007, CHL originated or purchased a total of approximately $1.4 trillion in mortgage loans.  *See* Countrywide Fin. Corp. 2007 SEC Form 10-K (filed Feb. 29, 2008) at 29.[1] Countrywide's core business was to originate and purchase residential mortgage loans, which it then sold into the secondary market, principally to make up pools of mortgage-backed securities ("MBS").

---

[1] The Court takes judicial notice of public documents filed with the Securities Exchange Commission.  *Dreiling v. Am. Express Co.*, 458 F.2d 942, 946 n.2 (9th Cir. 2006).

1    Plaintiffs filed this putative class action individually and "on behalf of a class of

2  all persons or entities who purchased or otherwise acquired beneficial interests in" certain

3  MBS in the form of certificates issued in 427 separate offerings (the "Offerings")

4  between January 25, 2005 and November 29, 2007 "pursuant and/or traceable to the

5  Offering Documents" and were damaged thereby.  AC ¶¶ 1, 186.  The claims are brought

6  against the Countrywide Defendants[2] pursuant to Sections 11, 12 and 15 of the Securities

7  Act of 1933.  Plaintiffs contend the Countrywide Defendants made materially untrue or

8  misleading statements or omissions regarding Countrywide's loan origination practices in

9  public offering documents associated with 427 separate offerings.  Also named as

10  defendants are Bank of America, Countrywide special-purpose issuing trusts, several

11  current or former Countrywide officers and directors, and a number of banks that served

12  as underwriters on one or more of the offerings at issue.

13    On May 14, 2010, the Court appointed Iowa Public Employees' Retirement

14  System ("IPERS") as Lead Plaintiff in this action because it had the greatest financial

15  interest.  Docket No. 120.  On July 13, 2010, IPERS and three other institutions[3], which

16  joined as named plaintiffs (collectively, "Plaintiffs"), filed an Amended Consolidated

17  Class Action Complaint ("AC").  Docket No. 122.  All defendants filed motions to

18  dismiss the AC.  After the motions were fully briefed, the Court heard extensive oral

19  argument on October 18, 2010.  The Court DISMISSES the action without prejudice on

20  the basis of standing and the statute of limitations.  Plaintiffs will have thirty (30) days to

21  amend their pleading.  Although there are many other flaws in the AC, the Court reserves

22  judgment on the remaining issues until after Plaintiffs have cured the chief pleading

23  deficiencies which are potentially dispositive of this action.

24  _____

25  [2] The operative complaint refers to Countrywide Financial Corporation ("CFC"), Countrywide
Securities Corporation ("CSC"), Countrywide Home Loans ("CHL"), Countrywide Capital
26  Markets ("CCM") as the "Countrywide Defendants."  Plaintiffs also purport to include Bank of
America, and NB Holdings Corp. in this category.
27  [3] The additional named plaintiffs are the General Board of Pension and  Health Benefits of the
United Methodist Church, Orange County Employees' Retirement System, and Oregon Public
28  Employees' Retirement System.

-2-

## II.  THE STATE LITIGATION

This action was commenced on January 14, 2010, nearly five years after the
earliest challenged Offering and more than two years after the last challenged Offering.
Docket No. 1.  The plaintiffs and law firms that filed this action in federal court had
previously litigated a separate case, involving the same group of Offerings, in California
Superior Court.  That case, *Luther v. Countrywide Home Loans Servicing LP*, No. BC
380698 (Cal. Super. Ct.) was dismissed with prejudice on January 6, 2010, when the
Superior Court sustained a demurrer to the complaint.  The Superior Court held that the
Securities Litigation Uniform Standards Act of 1998 ("SLUSA") gave the federal courts
exclusive subject matter jurisdiction over class action claims under the Securities Act of
1933.  A week later, the plaintiffs filed this action in federal court and now argue that the
existence of the first state court putative class action lawsuit tolled the statute of
limitations for this action under the *American Pipe*[4] tolling doctrine.

At the time that *Luther* was dismissed, the state court case was a consolidation of
the original *Luther* action, which was filed on November 14, 2007, Countrywide
Defendants' Request for Judicial Notice ("CW RJN") Exh. 25, and a separate suit,
*Washington State Plumbing and Pipefitting Pension Trust v. Countrywide Financial
Corp. et al.*, No. BC 392571 (Cal. Super. Ct.) filed on June 12, 2008, CW RJN Exh. 27.
The *Luther* complaint had been amended on September 9, 2008.  CW RJN Exh. 26.
*Luther* and *Washington State* were consolidated on October 16, 2008 when a
consolidated complaint was filed which encompassed the same 427 Offerings at issue in
this case.  CW RJN Exh. 28.  During the process of amendment and consolidation of
these two cases, parties and claims were dropped and added.  Plaintiffs have offered no
explanation of precisely how the state litigation has preserved their claims before this
Court, nor has it offered any explanation of how the parties named in this case are
individually affected by the amendments in the state case.

---

[4] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

**III. DISCUSSION**

As stated, there are numerous problems caused by the generality of the allegations in the AC, many of which Defendants have pointed out in their comprehensive motions to dismiss.  Defendants have raised many meritorious issues, and the Court will not resolve them all in this Order.  However, there are two threshold issues that the Court will address: standing and the statute of limitations.  Today, the Court GRANTS the motion to dismiss with leave to amend on the grounds of the statute of limitations and standing. The Court will rule on the remaining issues after Plaintiffs have amended their complaint to: (1) eliminate those securities for which the named Plaintiffs do not have standing, (2) eliminate those individual defendants and claims for which the statute of limitations has expired, and (3) allege with specificity which securities have benefitted from tolling by the filing of which complaints during which time period.[5]  In other words, Plaintiffs must trace their claims back to their accrual date and identify the putative class action that they claim has tolled the statute of limitations for each of their claims.

**A. MOTION TO DISMISS STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the Court is not required to accept as true "allegations that are merely

---

[5] Although the Court does not today rule on defendant Eric P. Sieracki's motion to strike (Docket No. 145), the Court notes that the AC could be considerably condensed.  The AC contains superfluous allegations, many of which are derived from complaints in other lawsuits.

conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## B. STANDING

Standing is a threshold question in every federal case because it determines the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish constitutional standing, a plaintiff must demonstrate that it has personally suffered an injury in fact that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In a class action, the lead plaintiffs must show that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502. Undeniably, "[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action." *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 119 (D. Mass. 2006).

Every court to address the issue in a MBS class action has concluded that a plaintiff lacks standing under both Article III of the U.S. Constitution and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interests of investors in MBS offerings in which the plaintiffs did not themselves buy.[6] Under Article III, Plaintiffs lack standing

---

[6] *E.g.*, *In re IndyMac Mortgage-Backed Securities Litig.*, --- F. Supp. 2d ----, 2010 WL 2473243, at *3 (S.D.N.Y. June 21, 2010); *Public Employees' Retirement System of Mississippi v. Merrill Lynch*, --- F. Supp. 2d ----, 2010 WL 2175875, at *3 (S.D.N.Y. June 1, 2010); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *City of Ann Arbor Employees' Retirement System. v. Citigroup Mortgage Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260-61 (E.D.N.Y. 2010); *Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. 2010); *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, --- F. Supp. 2d ----, 2010 WL 1172694, at *7-8 (S.D.N.Y. Mar. 26, 2010); *In re Lehman Bros. Secs. and ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp.

because they have no personal stake in the outcome and have suffered no injury from offerings which they did not purchase.  Similarly, the 1933 Act provides a private right of action for only a narrow group of persons.  A Section 11 claim can be asserted only by "any person acquiring such security."  15 U.S.C. § 77k(a); *In re Wells Fargo Mortgage-Backed Certificates Litigation*, 712 F. Supp. 2d 958, 963 (N.D. Cal. 2010) ("To have standing to bring suit under Section 11, a plaintiff must have purchased a security actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement. The burden of tracing shares to a particular public offering rests with plaintiffs.")  Similarly, a Section 12(a)(2) claim can be asserted only by "the person purchasing such security."  15 U.S.C. § 77*l*(a).  Federal courts have consistently dismissed 1933 Act claims related to offerings in which the plaintiffs did not purchase for lack of statutory standing.[7]

---

2d 299, 303-04 (D. Mass. 2009); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006).

[7] *E.g.*, *Public Employees' Retirement System of Mississippi v. Merrill Lynch*, --- F. Supp. 2d ----, 2010 WL 2175875, at *6 (S.D.N.Y. June 1, 2010) ("As with Section 11, liability under Section 12(a)(2) is strict liability, but once again this is offset by the short statute of limitations and by limiting standing to bring a Section 12(a)(2) claim to persons who have directly purchased the securities from the underwriting defendants in the subject public offering(s), and not in the secondary market."); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 963-66 (N.D. Cal. 2010) ("To have standing to bring suit under Section 11, a plaintiff must have purchased a security actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement. The burden of tracing shares to a particular public offering rests with plaintiffs."); *City of Ann Arbor Employees' Retirement System. v. Citigroup Mortgage Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260 (E.D.N.Y. 2010)  ("In addition to Constitutional standing, a Plaintiff alleging a violation of Sections 11 or 12(s) must satisfy statutory standing requirements. Section 11 requires a plaintiff to show that he was a purchaser of the security at issue.  As to Section 12, a plaintiff must show, as referred to above, that the defendant is a 'statutory seller.'" (internal citations omitted)); *Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. 2010); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 304-05 (D. Mass. 2009) ("A plaintiff has standing to bring a section 12(a)(2) claim only against the person or entity from whom he directly purchased a security, including one who engaged in active solicitation of an offer to buy." (internal quotation marks and citation omitted)); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009).

Relying on this Court's decision in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008), Plaintiffs argue that they have standing to sue over any offering issued pursuant to a common registration statement. Plaintiffs are mistaken. *In re Countrywide Fin. Corp. Sec. Litig.* was a shareholder suit brought on behalf of those who invested in Countrywide's business, and is thus distinguishable. The present suit is brought on behalf of those who invested in MBS. Each MBS is backed by a pool of unique loans, and the representations made in the prospectus supplements accompanying the issuance of those securities are themselves unique, focused on the specific loans underlying each offering and the specific underwriting standards and origination practices in effect at the time those specific loans were originated. Even where there is a common shelf registration statement, that statement contained only an illustrative form of a prospectus supplement. It was the final prospectus supplement filed with the SEC "[a]t the effective date of the offering of the Certificates" that contained "a description of the mortgage pool underlying the Certificates and the underwriting standards by which the mortgages were originated." AC ¶ 161. In this case, Plaintiffs' claims rely on separate disclosures or omissions made for each Offering in the individual prospectus supplements.

For the reasons stated in *In re Wells Fargo Mortgage-Backed Certificates Litigation* and *In re Lehman Bros. Mortgage-Backed Securities Litigation*, Plaintiffs have standing only with respect to the 81 Offerings in which the named plaintiffs purchased. *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *In re Lehman Bros. Secs. and ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010). Consequently, Plaintiffs must replead their causes of action with respect to securities actually purchased by Plaintiffs. If Plaintiffs seek to represent investors in all tranches, they must also specify in which tranches they invested. As another district court aptly explained:

> Given the length of the amended complaint in this matter, and the fact that most of Plaintiffs' claims have been dismissed on the ground that Plaintiffs

lack standing, the court gives Plaintiffs leave to re-plead the causes of action that remain. The amended pleading (which will be the second such pleading) shall plead only the causes of action with respect to securities actually purchased by Plaintiffs. With respect to those Trusts, Plaintiffs shall specify in the pleading the tranches in which they invested. . . . Such pleading will put the court in a better position from which to evaluate the merits of the claims alleged . . . .

*Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. April 6, 2010).

## C. STATUTE OF LIMITATIONS

With respect to Section 11 and 12(a)(2) claims, Section 13 of the 1933 Act instructs:

No action shall be maintained to enforce any liability created under section 77k [Section 11] or 77*l*(a)(2) [Section 12(a)(2)] of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. . . .  In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale.

15 U.S.C. § 77m.

The filing of the *Luther* complaint on November 14, 2007, which contained claims with respect to the CWALT Offerings only, establishes that Plaintiffs discovered the basis of their CWALT claims before November 14, 2007. *See* CW RJN Exh. 25.  The filing of the *Washington State* complaint on June 12, 2008, which contained essentially the same claims with respect to all 427 Offerings at issue in this case, establishes Plaintiffs discovered the basis of all of their claims before June 12, 2008.  *See* CW RJN Exh. 27.  Therefore, the one-year limitations period clearly appears to have expired for all the Offerings identified in *Luther* and *Washington State* because this lawsuit was filed on January 14, 2010.

Because the statute of repose bars suit more than three years after a security was bona fide offered to the public, Plaintiffs are prohibited from bringing Section 11 claims

-8-

on any Offering that occurred before January 2007 and Section 12(a)(2) claims on any Offerings which were sold January 2007. For Section 11 claims based on registered securities, the relevant date is either the date of registration or the date of the prospectus supplement, depending on whether the registration statement was filed before or after December 1, 2005.[8] For Section 12(a)(2) claims, a sale occurs when the parties enter into a binding contract for the sale of a security and become obligated to perform. *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992); *Amoroso v. S.W. Drilling Multi-Rig Partnership No. 1.* 646 F. Supp. 141, 143 (N.D. Cal. 1986). These dates may be determined as a matter of law and the Court requires the Plaintiffs to plead with respect to each security they allege to have purchased, on what date the security was bona fide offered to the public so the Court may determine for which securities the statute of repose bars suit.

### 1. *Tolling*

First, the Court accepts Plaintiffs' general proposition that they are entitled to tolling under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny. In *American Pipe*, a putative class action was filed in district court, but was ultimately not certified because the district court found that the Rule 23 requirement of numerosity had not been met. The Supreme Court held that the statute of limitations was tolled as to litigants who had sought to intervene to pursue claims that were encompassed by the class action. *See generally* 414 U.S. at 550. In *Crown, Cork &*

---

[8] For MBS Offerings pursuant to shelf registration statements filed before December 1, 2005, the relevant "offering" date is the effective date of the registration statement. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992). The Securities Offering Reform, adopted by the SEC effective December 1, 2005, changed the rules regarding the statute of repose trigger date for shelf offerings as they relate to Section 11 liability for issuers and underwriters, but not as they relate to directors and officers. 17 C.F.R. §§ 230.430B(f)(2), 230.430B(f)(4); *see In re Countrywide Fin. Corp. Secs. Litig.*, 2009 WL 943271, at *6-7 (C.D. Cal. Apr. 26, 2009). The new trigger date for MBS offerings pursuant to shelf registration statements filed on or after December 1, 2005 is the date of the prospectus supplement. However, with respect to directors and signing officers, the relevant date remains the effective date of the shelf registration statement.

*Seal*, the Supreme Court extended the tolling ruling to the individual claims of any person who was a member of the purported class, not just to those who had sought to intervene. 462 U.S. 345, 350 (1983).  In both cases, the litigants seeking tolling were individual plaintiffs who sought to bring the same claims as those asserted in the class action lawsuit.  Later, the Ninth Circuit extended the rule to permit an unsuccessful putative class action to toll for a subsequent putative class action where the plaintiffs were not attempting to relitigate a an earlier denial of class certification, dismissal did not result from an adverse decision on the merits, the claims were within the scope of the earlier suit, and plaintiffs at all times vigorously pursued the litigation.  *Catholic Social Services, Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139, 1149 (9th Cir. 2002) (*en banc*).

Defendants urge the Court to hold that because *American Pipe* is rooted in Federal Rule of Civil Procedure 23, the doctrine applies only when the first putative class action lawsuit is filed in federal court, and thus does not apply here where the first action was filed in California state court.  The Ninth Circuit has not addressed this particular issue, and this Court has devoted substantial time to its consideration.  Certainly, the topic deserves lengthy written analysis, which the Court intends to provide at a later date.  For the purposes of this Order, however, the Court merely indicates that it has concluded *American Pipe* tolling applies in this case.

Moreover, the Court rejects Defendants' argument that *American Pipe* tolling does not apply to the statute of repose.  Defendants' reliance on *Lampf* is misplaced because there the Supreme Court addressed the equitable tolling doctrine of fraudulent concealment.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  Other courts have already recognized the distinction between the fraudulent concealment tolling doctrine, which was incorporated into the one-year/three-year structure of the statute of limitations, and *American Pipe* tolling, which is sometimes referred to as "legal tolling".  *See Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir.

-10-

2000); *Arivella v. Lucent Technologies., Inc.*, 623 F. Supp. 2d 164, 177-78 (D. Mass. 2009) (collecting cases).

### 2. *Tolling Depends on Standing*

Second, the Court does agree with Defendants that the tolling applies only to securities where the named plaintiffs had actual standing to bring the lawsuit. Although Plaintiffs object that such a rule would place an onerous and impossible burden on a putative class member to determine whether the named plaintiffs upon which they are relying to protect their rights have standing to do so, the Court follows multiple other courts that have held in federal cases that the statute is tolled only as to claims where the named plaintiffs had standing. *E.g.*, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-01376-LHK, 2010 WL 4117477, at *7-8 (N.D. Cal. Oct. 19, 2010); *Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates*, No. 09-cv-00037, slip op. at 15-16 (W.D. Wash. Sept. 28, 2010); *Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006); *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). This Court shares the concern of other district courts that extending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will encourage filings made merely to extend the period in which to find a class representative. *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 4117477, at *8.

That the preceding litigation occurred in state court, where the state court has in some cases ignored standing issues until the class certification stage, makes no difference to this Court's analysis. *See* Plaintiffs' Opposition Brief at 36 n.21. This case is distinguishable from the California case law on which Plaintiffs rely because both this case and the litigation which preceded it contain only federal claims under the Securities Act of 1933. *Luther* and *Washington State*, the state court cases upon which Plaintiffs rely for tolling of the statute of limitations, always contained only three federal claims. *See* CW RJN Exs. 25-28. This is a federal lawsuit and was a lawsuit over federal claims even when litigated in state court. The three Securities Act statutes at issue contain their

own standing requirements which the state court could not and would not have ignored. Any putative class member relying on *Luther* and/or *Washington State* can fairly be expected to understand that such a lawsuit would require a named plaintiff with standing to protect their claims.

### 3. *Adequacy of Pleading*

Third, the Court agrees with Defendants that Plaintiffs have not adequately pleaded their reliance on *American Pipe* tolling to preserve their claims. Defendants have been very specific in their arguments about why the statute of limitations bars many of Plaintiffs' claims, even if *American Pipe* applies to permit tolling during the pendency of the state law claims.[9] In fact, some individual defendants have made a persuasive case for why they should be eliminated from the lawsuit even if *American Pipe* applies. Plaintiffs, however, failed to state in the AC that the statute of limitations is tolled and have only generally stated in their opposition brief and at oral argument that *Luther* and/or *Washington State* toll the statute of limitations on Plaintiffs' claims.[10] The Court requires the Plaintiffs to explain in the AC on what basis Plaintiffs believe their claims have been tolled, and the effect of this tolling on individual claims and individual defendants.

Plaintiffs argue that the law does not require them to plead compliance with the statute of limitations because the statute of limitations is an affirmative defense. However, the Court finds the AC will not suffice as it is. The Court has before it numerous parties and numerous securities. Because of the complicated procedural history of the *Luther* case—and in particular the timing of the addition and subtraction of

---

[9] Plaintiffs ask the Court to disregard the contents of Tabs 1-10 of the Countrywide Defendants' Appendix in Support of Their Motion to Dismiss because, they argue, "the Court is capable of synthesizing information." Docket No. 183 at 3 n.1. The Court is, indeed, capable of synthesizing information if Plaintiffs had provided any. As explained herein, Plaintiffs have provided no information for the Court to synthesize with respect to the timeliness of their claims, which on their face appear barred by the statute of limitations.

[10] Plaintiffs refer to the timeliness of their claims in paragraphs 220 and 230 of the AC. Plaintiffs do not mention that they rely on tolling to preserve the claims.

various parties and claims—Plaintiffs must point to what lawsuit they rely upon to toll the claims of each named investor and at what point each claim accrued against each defendant in order to show the Court that their claims are plausible. *See Iqbal*, 129 S.Ct. 1937, 1949 (2009).

**D. JPMORGAN IS DISMISSED**

The Court GRANTS JPMorgan's motion to dismiss. Docket No. 159. Plaintiffs name JPMorgan Chase & Co. ("JPMorgan") in its purported capacity as "successor-in-interest" to Bear, Stearns & Co. Inc. ("Bear Stearns"), which allegedly underwrote a portion of certain of the Trusts. AC ¶¶ 42, 55. However, Plaintiffs allege that Bear Stearns merged with J.P. Morgan Securities, Inc. ("JPMSI"), a wholly-owned subsidiary of JPMorgan, not with JPMorgan itself. AC ¶ 42. Thus, JPMorgan cannot be the successor-in-interest to Bear Stearns, if Plaintiffs allege JPMSI is the successor-in-interest. Plaintiffs allege JPMorgan is the corporate parent of JPMSI, AC ¶ 42, however corporate parents are not vicariously liable for the acts of their subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (internal quotation marks and citation omitted)). The Court therefore DISMISSES JPMorgan.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED with leave to amend. Plaintiffs may file an amended complaint curing the deficiencies no later than thirty (30) days from the date of this Order. Plaintiffs may *not* add parties or claims to the complaint at this stage, but may ask for such leave at a later time. After Plaintiffs file the Second Amended Consolidated Class Action Complaint, the Court will consider further the other grounds for Defendants' motion to dismiss. No additional briefing by Defendants will be necessary, unless specifically ordered by the Court.

**IT IS SO ORDERED.**

DATED: November 4, 2010

Hon. Mariana R. Pfaelzer

United States District Judge

-14-

# Exhibit F

# quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

November 9, 2010

**VIA FACSIMILE**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
        the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

On behalf of Plaintiffs Footbridge Limited Trust ("Footbridge") and OHP Opportunity Limited Trust ("Opportunity"), we write in response to the Countrywide Defendants' letter of November 8, 2010, attaching the non-binding decision of a California district court judge in *Maine State Retirement System v. Countrywide Financial Corp.*, No. 2:10-cv-00302-MRP-MANx (C.D. Cal. Nov. 4, 2010). *Maine State* is a federal class action that was brought against Countrywide on January 6, 2010, one week after a state court class action asserting identical claims[1] was dismissed on jurisdictional grounds. *Maine State* asserts 1933 Act claims on behalf of a class of Countrywide RMBS purchasers, including Plaintiffs Footbridge and Opportunity.

---

[1]  *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct.).

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 500 West Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL 312-705-7400 FAX 312-705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7 Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 (0) 3 5510-1711 FAX +81 (0) 3 5510-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

Hon. P. Kevin Castel
November 9, 2010

We offer the following points about this decision, as it relates to the Countrywide Defendants' pending motion for summary judgment in the above-captioned case:

As Countrywide acknowledges, Judge Pfaelzer held that the *American Pipe*[2] class action tolling doctrine does indeed apply to the *Maine State* action. Op. at 9-10. She rejected the Countrywide Defendants' argument that *American Pipe* did not apply because the original *Luther* class action was filed in state court, rather than federal court, or because it was ultimately determined (after years of litigation) that the California state court lacked subject matter jurisdiction. *Id.* The Court also held that tolling applies to the three-year statute of repose for 1933 Act claims, rejecting another argument advanced by the Countrywide Defendants in their pending motion for summary judgment. *Id.* at 10-11.[3]

However, Judge Pfaelzer went on to rule that *American Pipe* tolling "applies only to securities where the named plaintiffs had actual standing to bring the lawsuit." *Id.* at 11. In doing so, the court advanced the novel proposition that putative class members must investigate the standing allegations of the named plaintiff to determine whether the class members' individual claims are tolled, and cannot rely on pleadings in the class action that expressly name them as part of the putative class. This ruling, if followed, would place a burden on class members that is wholly at odds with the purposes and plain language of *American Pipe*. More basically, Judge Pfaelzer's ruling is contrary to the controlling law in this Circuit.

In *In re WorldCom Securities Litigation*, 496 F.3d 245 (2d Cir. 2007), the Second Circuit examined the underpinnings of the *American Pipe* doctrine and noted that the purposes of statutes of limitations—"to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights"—are fulfilled "when a class action is commenced." *Id.* at 254 (citing *American Pipe*, 414 U.S. at 352). Thus, the Court held that "[i]t would not undermine the purposes of statutes of limitations to give the benefit of tolling to *all those who are asserted to be members of the class* for as long as the class action *purports to assert their claims*." 496 F.3d at 255 (emphasis added). Indeed, *American Pipe* treats all putative class members as if they filed

---

[2]   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

[3]   The court noted that "[o]ther courts have already recognized the distinction between the fraudulent concealment tolling doctrine, which was incorporated into the one-year/three-year structure of the statute of limitations, and *American Pipe* tolling, which is sometimes referred to as 'legal tolling.'" *Id.* at 10 (citing *Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir. 2000); *Arivella v. Lucent Technologies, Inc.*, 623 F. Supp. 2d 164, 177-78 (D. Mass. 2009) (collecting cases)).

Hon. P. Kevin Castel
November 9, 2010

their own individual actions until they either opt out or until a certification decision excludes them. *Id.* at 255. As the Second Circuit stated in *WorldCom*:

> *[B]ecause Appellants were members of a class **asserted** in a class action complaint, their limitations period was tolled under the doctrine of American Pipe **until such time as they ceased to be members of the asserted class**,* notwithstanding that they also filed individual actions prior to the class certification decision.

*WorldCom*, 496 F.3d at 256 (emphasis added). Neither the Supreme Court in *American Pipe* nor the Second Circuit in *WorldCom* held that tolling is unavailable in cases where a court ultimately decides that the original lead plaintiff did not have standing to bring certain claims.

Plaintiffs in this case were members of the putative class "asserted" in *Luther* until they opted out by filing an individual action in this Court in January 2010. Pursuant to *American Pipe* and *WorldCom*, Plaintiffs justifiably relied upon *Luther* to preserve their claims "until such time as they ceased to be members of the asserted class[.]" It would be manifestly unfair to retroactively strip Plaintiffs of tolling based on a standing determination made by a judge several years after the original class action was filed. As *WorldCom* noted, "*class members are permitted—even encouraged—to rely on the class plaintiffs to advance their claims,* and the initiation of a class suit gives defendants all the information they need to prepare their defense." *Id.* at 254 (emphasis added). Whereas Plaintiffs would be prejudiced by a finding that tolling did not retroactively apply, tolling does not prejudice the Countrywide Defendants in this action, as they have been on notice of these claims since the filing of the state court class action in November 2007. *See id.* at 255 ("As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them.").

Contrary to Judge Pfaelzer's ruling, there is no principled distinction between a class action that is terminated on standing grounds and one that is terminated because the named representative is deemed inadequate under Rule 23. And making such distinctions undermines the purpose of *American Pipe*, namely "to protect class members from being forced to file individual suits in order to preserve their claims." *Id.* at 256 (emphasis added). If putative class members bear the risk that a subsequent standing determination will strip them of tolling, they will no longer be able to rely on the class action to protect their rights. Instead, they will be forced to file "placeholder" suits, which is precisely the outcome that *American Pipe* was designed to prevent. The Eleventh Circuit explained why a determination that a named plaintiff lacked standing should not eliminate tolling for individual class members:

> If we were to hold otherwise, class members uncertain of the district court's standing analysis—and there is much uncertainty in this area of the law—"would

3

Hon. P. Kevin Castel
November 9, 2010

> have every incentive to file a separate action prior to the expiration of his own
> period of limitations.  The result would be a needless multiplicity of actions—
> precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule
> of *American Pipe* were designed to avoid."

*Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir. 1994) (quoting *Crown, Cork & Seal*, 462 U.S. 345,  351 (1983)).[4]

Denial of tolling would be particularly unfair in this case because, until recently, there was no majority view regarding the standing requirements for class actions involving residential mortgage-backed securities.  *See, e.g., In re Am. Intern. Group, Inc. Secs. Litig.*, 265 F.R.D. 157, 165 (S.D.N.Y. 2010) ("There is conflicting case law in the Second Circuit on whether a court may certify a class of purchasers of a security or fund that was not also purchased by the Lead Plaintiffs."); *Rose v. Arkansas Valley Envtl.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983) ("Standing questions are ones[s] with which both skilled counsel and skilled courts sometimes experience considerable difficulty . . . . I can see no more reason, as a general matter, to require a passive class member to anticipate the existence of and ultimate ruling upon that question than to require him to do so with respect to questions of 'numerosity,' 'commonality,' or 'typicality.'").

Thus, when the underlying Countrywide class actions were filed in November 2007 and June 2008, respectively,[5] Plaintiffs had no reason to know that the lead plaintiffs in the class actions might lack standing to pursue their claims.  Indeed, one cannot even tell from the face of the *Luther* or *Washington State Plumbing* complaints whether Plaintiffs' purchases of Countrywide certificates overlap with the purchases of the named plaintiffs.  In these circumstances, it would be completely antithetical to the purposes of *American Pipe* to require class members to conduct a legal and factual analysis of the standing of the putative class representative and to file an action to protect against the risk of a later ruling that the named representative was not adequate.

---

[4]   *See also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1994) ("The American Pipe tolling rule allows putative class members to wait on the sidelines, rather than forcing them to congest the courts with defensively filed suits designed solely to guarantee that such plaintiff's claims are not arbitrarily precluded by the running of a statute of limitations.").

[5]   *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial Corp.,* No. BC 392571 (Cal. Super. Ct.), was filed on June 12, 2008.  The *Luther* complaint was amended on September 9, 2008 to add the additional offerings sued upon in *Washington State Plumbing*, and both actions were consolidated on October 16, 2008.

Hon. P. Kevin Castel
November 9, 2010


Judge Pfaelzer's tolling decision is not only contrary to decisions by courts in this Circuit, but also the weight of authority elsewhere. *See, e.g., McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) (tolling applied even though named plaintiff lacked standing); *Griffin*, 17 F.3d at 360-61(same); *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230 F.R.D. 424, 430 (D. Md. 2005) (same); *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F. Supp. 2d 429, 456 (S.D.N.Y. 2005), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009) ("[A class member] should not be punished simply because he failed to anticipate that [the original] plaintiff's § 12(a)(2) claims would be dismissed because none of the named plaintiffs in the action had standing to sue on those claims."); *In re Initial Pub. Offering Secs. Litig.*, No. 01 Civ. 9741, 2004 WL 3015304, at *5 (S.D.N.Y. Dec. 27, 2004) (rejecting "the general, but incorrect, proposition that *American Pipe* tolling can never be applied to cases where the original lead plaintiff lacks standing"); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. 00-cv-4285(GEB), 2002 WL 33934282, at *29-30 (D.N.J. June 26, 2002) (identifying the prejudice if tolling did not apply to unnamed class members who believed they were included in the putative class); *Rose*, 562 F. Supp. at 1180 ("[I]t can hardly be said that a suit commenced by one who lacks standing is in any literal sense a 'nonexistent' suit.").


Judge Pfaelzer's ruling has far-reaching implications beyond the plaintiffs in this case. If other courts were to adopt this holding, it would mean that hundreds of institutional investors holding billions of dollars of Countrywide residential mortgage-backed securities who relied on *Luther* and *Maine State* to protect their rights could find their claims time-barred. At the least, if this Court were to hold that lack of standing precludes tolling, it should do so prospectively only; it should not retroactively bar the claims of Plaintiffs and other investors who justifiably relied on the putative class actions to toll their claims.


Respectfully submitted,

*Dan Brockett*

Daniel L. Brockett


cc:   Defendants' counsel (via e-mail)

Exhibit G

C LEARY  G OTTLIEB  S TEEN  &  H AMILTON  LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial (212) 225-2760
E-Mail: mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
    RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
    RESIDENT COUNSEL.

November 12, 2010

**BY HAND**

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

> Re: Footbridge Limited Trust v. Countrywide Financial Corp.,
> 10 CIV 367 (PKC)

Dear Judge Castel:

We represent the Countrywide Defendants in the above-referenced matter and write in response to the Funds' five-page letter to the Court dated November 9, 2010. Once again, we note that the Funds have seized upon a short letter enclosing a recent decision to submit a lengthy exposition on the merits of Defendants' pending motion. We continue to believe that such a sur-reply brief masquerading as a discussion of recent authority is inappropriate. As such, we will not respond to every point raised in the Funds' letter unless requested to do so by the Court. Nonetheless, we wish to correct a few misstatements and respond to a new request contained in the Funds' letter.

*Subject Matter Jurisdiction.* The Funds mischaracterize Maine State by stating (p. 2) that Judge Pfaelzer "rejected the Countrywide Defendants' argument that American Pipe did not apply . . . because it was ultimately determined (after years of litigation) that the California state court lacked subject matter jurisdiction." Judge Pfaelzer's opinion did not address this argument, much less reject it.

*Alleged Uncertainty Regarding Standing*.  The Funds misleadingly claim (p. 4) that "until recently, there was no majority view regarding the standing requirements for class actions involving [MBS]."  As an initial matter, the Funds' characterization of Judge Pfaelzer's standing decision as reflecting the "majority view" in MBS cases wrongly implies that there is contrary caselaw reflecting a "minority view."  As Judge Pfaelzer recognized, there is not.  See Slip Op. at 5 ("[e]very court to address the issue in a MBS class action" has reached the same result).  In any event, the uniformity of these decisions is strong evidence that the standing question in MBS cases was not as difficult to predict as the Funds now assert.[1]

Similarly, the Funds' statement (p. 4) that they "had no reason to know that the lead plaintiffs in the [underlying California] class actions might lack standing to pursue their claims" begs credulity.  As the Funds admit, the original <u>Luther</u> complaint, which was filed in November 2007, did not involve the two securities they purchased.  See Pl. Br. at 2.  Thus, there was absolutely no basis for the Funds to rely on that complaint to toll their claims.  And critically, the Funds—self-described sophisticated investors—retained litigation counsel with respect to their investments no later than April 2007.  See Def. Br. at 4-5.  As a result, they cannot (and do not) plead ignorance of the general standing principles applied in the MBS decisions, which were well established by the date <u>Luther</u> was filed.[2]

Moreover, the Funds' claims were not asserted by any class action until the filing of <u>Washington</u> in June 2008, see Pl. Br. at 2, and by then more than a year had elapsed from the date the Funds affirmatively plead that Countrywide "admitted in conference calls with Plaintiffs" that the offering documents "were false and misleading."  Compl. ¶ 88.  Thus, the Court can dismiss this suit as time-barred without reaching the tolling issue that served as the basis for dismissal in <u>WaMu MBS</u> and <u>Maine State</u>.

*WorldCom Decision*.  The Funds fundamentally misrepresent (pp. 2-3) the Second Circuit's decision in <u>In re WorldCom Securities Litigation</u>, 496 F.3d 245 (2d Cir. 2007).  In that case, the Second Circuit held only that <u>American Pipe</u> tolling applies to plaintiffs who file

---

[1]    Importantly, MBS purchasers are overwhelmingly "institutional investors," as the Funds concede (p. 5), who are regularly advised by experienced legal counsel.

[2]    The MBS standing decisions largely rest on the basic principle that a plaintiff must possess a personal stake in the outcome of a claim to have standing to assert that claim—an uncontroversial point of law that pre-dates the filing of the underlying class actions here.  For example, in Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 658 F. Supp. 2d 299, 304 (D. Mass. 2009), Judge Stearns surveyed then-existing caselaw and concluded "the overwhelming weight of authority" supported his standing decision.  In addition to decades-old Supreme Court precedent and Moore's Federal Practice, in his September 30, 2009 Nomura opinion, Judge Stearns cited the following securities cases—all pre-dating the underlying class actions here—as support for his holding, <u>see</u> id. at 303-04:  In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006) ("With regard to the sixty-eight funds of which Plaintiffs own no shares, Plaintiffs do not have standing to assert any claims because Plaintiffs cannot satisfy the standing requirements."); Forsythe v. Sun Life Fin., Inc., 417 F.Supp.2d 100, 119 (D. Mass. 2006) (plaintiffs had no standing to sue on behalf of funds they did not own); Stegall v. Ladner, 394 F. Supp. 2d 358, 363 (D. Mass. 2005) (plaintiff cannot claim "injury suffered by funds in which he had no ownership interest. [He is not permitted] to bootstrap claims arising out of investment decisions made in relation to other funds in which he was not a participant."); Nenni v. Dean Witter Reynolds, Inc., 1999 WL 34801540, at *2 (D. Mass. Sept. 29, 1999) ("[A] named plaintiff cannot acquire standing in an action by bringing a cause of action on behalf of others who would have had standing had they been named plaintiffs.").

individual actions prior to class certification. Id. at 255. The Second Circuit did not decide (or even consider) the issue raised here—whether absent class members can benefit from American Pipe tolling even though no named plaintiff had standing to assert claims on their behalf. This is not surprising considering that the Supreme Court explicitly limited its holding in American Pipe to situations where class action status was denied "not for lack of standing of the representative." Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 553 (1974). Thus, American Pipe itself indicates that the doctrine of class action tolling is premised on having a plaintiff identified in the complaint with standing.

Moreover, the Funds' new argument (p. 3) that "there is no principled distinction" between a class action terminated on standing grounds and one terminated under Rule 23 is simply wrong. As we have pointed out before, "standing is a constitutional limitation on the power of courts," and thus "it would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed" for lack of standing. Def. Reply Br. at 9. The same cannot be said for Rule 23.[3]

*Request for a Prospective Ruling.* The Funds close their letter (p. 5) with a remarkable request that if the Court decides to adopt the tolling rule applied in WaMu MBS, Maine State and the "multiple other" cases cited therein, it "do so prospectively only." Notably, the Funds do not cite any authority supporting their request that the Court issue an advisory opinion not applicable to the parties before it, nor do they offer any rationale for doing so other than their purportedly justifiable reliance on a standing principle that no court has recognized. At bottom, the Funds ask this Court to place them in a better position than the absent class members who remained in the class action presided over by Judge Pfaelzer. The Court should reject this forum-shopping gambit.

Respectfully submitted,

Mitchell A. Lowenthal

cc: Daniel L. Brockett, Esq.
    Jonathan Rosenberg, Esq.
    Christopher Caldwell, Esq.
    Theresa Trzaskoma, Esq.
    Boyd Cloern, Esq.
    Keara Gordon, Esq.

---

[3]    The Funds cite a number of additional cases at page 5 of their letter. A number of these cases—all of which were decided long before briefing on the instant summary judgment motion—are being raised by the Funds for the first time now. In any event, even assuming the Funds accurately describe them, these cases necessarily ignore the constitutional limitation (and the express language regarding standing in American Pipe). We also note that the "weight of authority" identified by the Funds ignores contrary authority including WaMu MBS, Maine State, the "multiple other courts" cited by Judge Pfaelzer, and at least two other decisions by courts in this Circuit. See Def. Br. at 18-19 & n.44; Def. Reply Br. at 9 n.25.

# Exhibit H

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: (212) 225-2760
E-Mail. mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
ALLAN G. SPERLING
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER

DAVID L. SUGERMAN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER

KRISTOFER W. HESS
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
RESIDENT PARTNERS

SANDRA M. ROCKS
ELLEN M. CREEDE
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
RESIDENT COUNSEL

December 16, 2010

**BY HAND**

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: Footbridge Limited Trust v. Countrywide Financial Corp.,
10 CIV 367 (PKC)

Dear Judge Castel:

This firm is counsel to the Countrywide Defendants in the above-referenced matter. We write to direct the Court's attention to a decision issued yesterday by Judge Crotty, New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., 08 Civ. 5653 (PAC) (S.D.N.Y. Dec. 15, 2010), which directly addresses two core issues regarding class action tolling and the relation back doctrine that are raised by Defendants' pending motion for summary judgment on the statutes of limitations and repose. A copy of the DLJ Mortgage decision is attached for the Court's convenience.

Respectfully submitted,

Mitchell A. Lowenthal

Enclosure

Hon. P. Kevin Castel, p. 2


cc:  Daniel L. Brockett, Esq.
     Jonathan Rosenberg, Esq.
     Christopher Caldwell, Esq.
     Theresa Trzaskoma, Esq.
     Leiv Blad, Esq.
     Keara Gordon, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NEW JERSEY CARPENTERS HEALTH FUND,   :

                Plaintiff,          :

     - against -             :

DLJ MORTGAGE CAPITAL, INC., et al.,     :

            Defendants.       :
-------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 15, 2010
```

08 Civ. 5653 (PAC)

<u>ORDER</u>

      Lead Plaintiff the New Jersey Carpenters' Health Fund ("Plaintiff") and proposed intervenor the Public Employees' Retirement System of Mississippi ("Miss. PERS") (collectively, "Movants") request that the Court allow Miss. PERS to intervene as a named plaintiff in this action so that other securities may be added to the action. For the reasons that follow, the motion is DENIED.

## <u>BACKGROUND</u>

      The court assumes familiarity with the facts and allegations stated in full in its Order of March 29, 2010. <u>See</u> <u>New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc., et al.</u>, No. 08 Civ. 5633 (S.D.N.Y. Mar. 29, 2010). Nonetheless, a brief recitation of the case's procedural history is helpful.

      On June 3, 2008, Plaintiff filed a Verified Complaint alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933 ("Initial Complaint") on behalf of all persons or entities who purchased or acquired Home Equity Mortgage Trust ("HEMT") Series 2006-5 certificates. On December 5, 2008, Plaintiff filed a Lead Plaintiff motion, describing the putative class as consisting solely of purchasers of HEMT 2006-5 certificates. The Lead Plaintiff motion was

granted on January 22, 2009.  On March 23, 2009, Plaintiff filed an Amended Securities Class

Action Complaint ("Amended Complaint") on behalf of all persons or entities who purchased or

acquired mortgage pass-through certificates issued by four trusts: HEMT Series 2006-4, HEMT

Series 2006-5, HEMT Series 2006-6, and HEMT Series 2007-2.   On March 29, 2010, the Court

granted Defendants' motion to dismiss because Plaintiff lacked standing for the three securities

offerings which Plaintiff had not purchased (HEMT 2006-4, HEMT 2006-6, and HEMT 2007-2).

The Court, however, denied Defendants' motion to dismiss regarding Plaintiff's claims relating

to the HEMT 2006-5 offering, because Plaintiff purchased those securities.

Miss. PERS is not a purchaser of HEMT 2006-5 certificates, which is the only security in

the case, at present. Miss. PERS, however, purchased securities from the HEMT 2006-4 and

HEMT 2006-6 (collectively, the "Two Trusts") offerings, and now seeks to intervene as an

additional named plaintiff in order to bring in the two securities claims which were previously

dismissed.  No mention is made of the fourth offering, HEMT 2007-2.  On May 20, 2010, Miss.

PERS submitted a letter to the Court requesting a pre-motion conference with respect the instant

Motion, which was filed on June 18, 2010.


## ANALYSIS

"A motion to intervene must be filed timely. A motion to intervene filed after the statute

of limitations had run for the movant would not be timely." Ceribelli v. Elghanayan, 91 Civ.

3337, 1994 WL 529853, *3 (S.D.N.Y. Sept. 28, 1994).  Section 13 of the 1933 Act provides that,

"[n]o action shall be maintained to enforce any liability created under [the relevant sections]

unless brought within one year after the discovery of the untrue statement or the omission, or

after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C.

§ 77m.

According to Movants, "the earliest possible date that Movants should be charged with this inquiry notice is when the Certificates issued by the Two Trusts were first downgraded to "junk" status on December 20, 2007." (Movant Repl. Mem. 8 n. 13.)  As a result, for the purposes of this discussion, the Court will assume that Miss. PERS was charged with inquiry notice as of this date.  Thus, under normal circumstances, the statute of limitations on Miss. PERS's claims expired on December 20, 2008.  Miss. PERS, however, claims that the statute of limitations was tolled under the doctrine of American Pipe and Construction Co. v. Utah, 414 U.S. 538 (1974), and that, under Fed. R. Civ. P. 15, the Amended Complaint related back to the date of the Initial Complaint.

In American Pipe, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  American Pipe & Const. Co., 414 U.S. at 553.  According to the Supreme Court:

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable.

Id.  Under Fed. R. Civ. P. 15(c)(1)(B), an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense and arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in  the original pleading."  As a result, contend Movants, the allegations made in the Amended Complaint relating to the Two Trusts relate back to the date of the Initial Complaint and, thus, the statute of limitations was tolled as of June 3, 2008, the day the Initial Complaint was filed.

The purpose of the American Pipe rule is to protect nonparties who are members of a class for which a class action has been filed and, in the process, prevent a multitude of duplicative suits from bombarding the courts. See Arniel v. Ramsey, 550 F.2d 774, 783 (2d Cir. 1977) (superseded on other grounds). The logic of the American Pipe case is best employed when a class collapses. In that situation, other potential members of a class should not be excluded from bringing their bona fide claims. But the American Pipe rule should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing. See Korwek v. Hunt, 827 F.2d 874, 879 (2d Cir. 1987); In re Elscint, Ltd. Sec. Litig., 674 F. Supp. 374, 376 (D. Mass. 1987). In short, where a Plaintiff lacks standing — there is no case. See In re Citigroup Auction Rate Sec. Litig., 700 F.Supp.2d 294, 308-09 (S.D.N.Y. 2009). And if there is no case, there can be no tolling. See Kruse v. Wells Fargo Home Mortgage, Inc., No. 02-cv-3089, 2006 WL 1212512, *5-6, 9 (E.D.N.Y. May 3, 2006).[1]

In addition, it is clear that this motion does not involve an amendment (which would be analyzed under Rule 15), but rather intervention (which is analyzed under Rule 24). Rule 24 itself "does not authorize relation back. Yet, the explicit provisions for relation back of amendments under Rule 15(c) and of substitutions of real parties in interest under Rule 17(a), demonstrate that Congress knew how to create such a mechanism when it so chose." Ceribelli v. Elghanayan, No. 91 Civ. 3337, 1994 WL 529853, *2 (S.D.N.Y. Sept. 28, 1994). Further, given that Miss. PERS is not currently a party to Plaintiff's action, it strains logic to suggest that Miss. PERS could avail itself of the benefits of the relation back doctrine. In other words, a party may not take advantage of relation back it if it is not actually a party to the action in the first instance.

---

[1] If American Pipe applied in situations where the dismissed plaintiff was found by the court to lack standing, this would clearly "encourage attempts to circumvent the statute of limitation by filing a lawsuit without an appropriate plaintiff and then searching for one who can later intervene with the benefit of the tolling rule." Kruse, 2006 WL 1212512 at *6. This is an untenable result.

Lastly, "[r]elation back, at least on the facts of this case, would not accord with one of the rationales of American Pipe, that commencement of the class action adequately notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." Arniel, 550 F.2d at 782. The relation back rule cannot assist Miss. PERS because Miss. PERS was not a member of the class as described in the Initial Complaint — neither the Initial Complaint, nor even the Lead Plaintiff Motion, mentioned the Two Trusts in any way, shape, or form.

Applying Movants' suggested inquiry notice date of December 20, 2007, Miss. PERS had one year, until December 20, 2008, to intervene or join Plaintiff's class action, or file its own complaint. Accordingly, Miss. PERS's claims are time barred, and it may not now intervene.

## CONCLUSION

For the foregoing reasons, Movants' joint motion to intervene is DENIED. The Clerk of Court is directed to close the pending motion at docket number 104.

Dated: New York, New York
December 15, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge

5

# Exhibit I

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL: (212) 849-7000 FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

December 17, 2010

<u>VIA HAND DELIVERY</u>

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
        the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

        On behalf of Plaintiffs Footbridge Limited Trust ("Footbridge") and OHP Opportunity
Limited Trust ("Opportunity"), we write in response to the Countrywide Defendants' letter of
December 16, 2010, attaching the decision of Judge Crotty in *New Jersey Carpenters Health
Fund v. DLJ Mortgage Capital, Inc.*, 08 Civ. 5653 (PAC) (S.D.N.Y. Dec. 15, 2010).  We offer
the following comments about this decision, as it relates to the Countrywide Defendants'
pending motion for summary judgment:

        *First*, the court's holding that "where a Plaintiff lacks standing . . . there can be no
[*American Pipe*] tolling" (Op. at 4) is inconsistent with controlling authority in this Circuit, *In re
WorldCom Securities Litigation*, 496 F.3d 245 (2d Cir. 2007).  It also conflicts with numerous
other courts that have reached the opposite conclusion.  We discussed these cases in some detail
in our letter of November 9, 2010 (attached hereto as Exhibit A).  Suffice it to say that Judge
Crotty's decision provides no analysis or reasons for his holding and fails even to cite, let alone
consider, the Second Circuit's decision in *WorldCom*.

        Instead of discussing *WorldCom*, the court instead relies upon inapposite cases that do

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111-4788 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois 60661-2510 | TEL (312) 705-7400 FAX (312) 705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711 FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000 FAX +49(0) 621 43298 6100

Hon. P. Kevin Castel
December 17, 2010

not stand, in principle or result, for the propositions for which the court cites them.  *Korwek v. Hunt*, 827 F.2d 874 (2d Cir. 1987), for example, dealt only with the narrow question of whether *American Pipe* applies to permit the filing by putative class members of a subsequent class action nearly identical in scope to the original class action after denial of certification.  The Second Circuit in *Korwek* did not address the entirely separate question of whether *American Pipe* tolling applies when it is ultimately determined that the named representative had standing to assert some claims but not others.  Similarly, in *In re Elscint, Ltd. Securities Litigation*, 674 F. Supp. 374 (D. Mass. 1987), the court expressed concern about the possible abuses of *American Pipe* in the context of intervention, but suggested that *American Pipe* tolling might indeed be appropriate where the named plaintiff had standing to assert certain claims but not others.  *See* 674 F. Supp at 379.  *Kruse v. Wells Fargo Home Mortgage, Inc.*, No. 02-cv-3089, 2006 WL 1212512 (E.D.N.Y. May 3, 2006), which bases its reasoning on *In re Elscint* and which states that it "is no different" from *In re Elscint, id.* at *6, is likewise inapposite.[1]

One last point on this standing debate:  No one has ever suggested, nor could they, that the various Countrywide class actions on which Plaintiffs rely for class action tolling—*Luther v. Countrywide Home Loans Servicing LP*, No. BC 380698 (Cal. Super. Ct. 2007); W*ashington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial Corp.*, No. BC 392571 (Cal. Super. Ct. 2008); and *Maine State Retirement System v. Countrywide Financial Corp.*, No. 2:10-cv-00302-MRP (MAN) (C.D. Cal. 2010)—were abuses of *American Pipe*.  The named plaintiffs in these actions made substantial investments in Countrywide's mortgage-backed securities and had bona fide claims as to many of the Countrywide offerings.  These were not cases in which a plaintiff with no standing whatsoever filed a class action in order to toll the running of the statute of limitations until other, legitimate plaintiffs could be found.  In these circumstances, denial of tolling would be inconsistent with the rule of *American Pipe* that "commencement of a class action suspends the applicable statute of limitations as to ***all asserted members of the class who would have been parties had the suit been permitted to continue as a class action*.**"  *American Pipe & Construction Co v. Utah*, 414 U.S. 538, 554 (emphasis added).  It would also be manifestly unfair to absent class members, such as the Plaintiffs in this case, who legitimately and justifiably believed that their 1933 Act claims were tolled under *American Pipe* and *WorldCom*.

---

[1]  The *Kruse* court found that the intervenors' claims were "utterly baseless" in light of both the Second Circuit's affirmation, in part, of the dismissal of certain of plaintiffs' claims and the intervenors' knowledge that the named plaintiffs' claims lacked merit.  *Id.* at *6-7.  Those elements are not present in this case.

2

Hon. P. Kevin Castel
December 17, 2010

Respectfully submitted,

Daniel L. Brockett

cc:   Defendants' counsel (via e-mail)

# EXHIBIT A

# quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

November 9, 2010

**VIA FACSIMILE**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

On behalf of Plaintiffs Footbridge Limited Trust ("Footbridge") and OHP Opportunity
Limited Trust ("Opportunity"), we write in response to the Countrywide Defendants' letter of
November 8, 2010, attaching the non-binding decision of a California district court judge in
*Maine State Retirement System v. Countrywide Financial Corp.*, No. 2:10-cv-00302-MRP-
MANx (C.D. Cal. Nov. 4, 2010). *Maine State* is a federal class action that was brought against
Countrywide on January 6, 2010, one week after a state court class action asserting identical
claims[1] was dismissed on jurisdictional grounds. *Maine State* asserts 1933 Act claims on behalf
of a class of Countrywide RMBS purchasers, including Plaintiffs Footbridge and Opportunity.

---

[1]   *Luther v. Countrywide Home Loans Servicing LP*, No. BC380698 (Cal. Super. Ct.).

## quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 500 West Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL 312-705-7400 FAX 312-705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7 Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 (0) 3 5510-1711 FAX +81 (0) 3 5510-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

Hon. P. Kevin Castel
November 9, 2010

We offer the following points about this decision, as it relates to the Countrywide Defendants' pending motion for summary judgment in the above-captioned case:

As Countrywide acknowledges, Judge Pfaelzer held that the *American Pipe*[2] class action tolling doctrine does indeed apply to the *Maine State* action. Op. at 9-10. She rejected the Countrywide Defendants' argument that *American Pipe* did not apply because the original *Luther* class action was filed in state court, rather than federal court, or because it was ultimately determined (after years of litigation) that the California state court lacked subject matter jurisdiction. *Id.* The Court also held that tolling applies to the three-year statute of repose for 1933 Act claims, rejecting another argument advanced by the Countrywide Defendants in their pending motion for summary judgment. *Id.* at 10-11.[3]

However, Judge Pfaelzer went on to rule that *American Pipe* tolling "applies only to securities where the named plaintiffs had actual standing to bring the lawsuit." *Id.* at 11. In doing so, the court advanced the novel proposition that putative class members must investigate the standing allegations of the named plaintiff to determine whether the class members' individual claims are tolled, and cannot rely on pleadings in the class action that expressly name them as part of the putative class. This ruling, if followed, would place a burden on class members that is wholly at odds with the purposes and plain language of *American Pipe.* More basically, Judge Pfaelzer's ruling is contrary to the controlling law in this Circuit.

In *In re WorldCom Securities Litigation*, 496 F.3d 245 (2d Cir. 2007), the Second Circuit examined the underpinnings of the *American Pipe* doctrine and noted that the purposes of statutes of limitations—"to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights"—are fulfilled "when a class action is commenced." *Id.* at 254 (citing *American Pipe*, 414 U.S. at 352). Thus, the Court held that "[i]t would not undermine the purposes of statutes of limitations to give the benefit of tolling to *all those who are asserted to be members of the class* for as long as the class action *purports to assert their claims.*" 496 F.3d at 255 (emphasis added). Indeed, *American Pipe* treats all putative class members as if they filed

---

[2]   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

[3]   The court noted that "[o]ther courts have already recognized the distinction between the fraudulent concealment tolling doctrine, which was incorporated into the one-year/three-year structure of the statute of limitations, and *American Pipe* tolling, which is sometimes referred to as 'legal tolling.'" *Id.* at 10 (citing *Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir. 2000); *Arivella v. Lucent Technologies, Inc.*, 623 F. Supp. 2d 164, 177-78 (D. Mass. 2009) (collecting cases)).

Hon. P. Kevin Castel
November 9, 2010

their own individual actions until they either opt out or until a certification decision excludes them. *Id.* at 255. As the Second Circuit stated in *WorldCom*:

> [B]ecause Appellants were members of a class **asserted** in a class action complaint, their limitations period was tolled under the doctrine of American Pipe **until such time as they ceased to be members of the asserted class,** notwithstanding that they also filed individual actions prior to the class certification decision.

*WorldCom*, 496 F.3d at 256 (emphasis added). Neither the Supreme Court in *American Pipe* nor the Second Circuit in *WorldCom* held that tolling is unavailable in cases where a court ultimately decides that the original lead plaintiff did not have standing to bring certain claims.

Plaintiffs in this case were members of the putative class "asserted" in *Luther* until they opted out by filing an individual action in this Court in January 2010. Pursuant to *American Pipe* and *WorldCom*, Plaintiffs justifiably relied upon *Luther* to preserve their claims "until such time as they ceased to be members of the asserted class[.]" It would be manifestly unfair to retroactively strip Plaintiffs of tolling based on a standing determination made by a judge several years after the original class action was filed. As *WorldCom* noted, "*class members are permitted—even encouraged—to rely on the class plaintiffs to advance their claims,* and the initiation of a class suit gives defendants all the information they need to prepare their defense." *Id.* at 254 (emphasis added). Whereas Plaintiffs would be prejudiced by a finding that tolling did not retroactively apply, tolling does not prejudice the Countrywide Defendants in this action, as they have been on notice of these claims since the filing of the state court class action in November 2007. *See id.* at 255 ("As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them.").

Contrary to Judge Pfaelzer's ruling, there is no principled distinction between a class action that is terminated on standing grounds and one that is terminated because the named representative is deemed inadequate under Rule 23. And making such distinctions undermines the purpose of *American Pipe,* namely "to protect class members from being forced to file individual suits in order to preserve their claims." *Id.* at 256 (emphasis added). If putative class members bear the risk that a subsequent standing determination will strip them of tolling, they will no longer be able to rely on the class action to protect their rights. Instead, they will be forced to file "placeholder" suits, which is precisely the outcome that *American Pipe* was designed to prevent. The Eleventh Circuit explained why a determination that a named plaintiff lacked standing should not eliminate tolling for individual class members:

> If we were to hold otherwise, class members uncertain of the district court's standing analysis—and there is much uncertainty in this area of the law—"would

Hon. P. Kevin Castel
November 9, 2010

> have every incentive to file a separate action prior to the expiration of his own
> period of limitations.  The result would be a needless multiplicity of actions—
> precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule
> of *American Pipe* were designed to avoid."

*Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir. 1994) (quoting *Crown, Cork & Seal*, 462 U.S.
345,  351 (1983)).[4]

Denial of tolling would be particularly unfair in this case because, until recently, there
was no majority view regarding the standing requirements for class actions involving residential
mortgage-backed securities.  *See, e.g., In re Am. Intern. Group, Inc. Secs. Litig.*, 265 F.R.D. 157,
165 (S.D.N.Y. 2010) ("There is conflicting case law in the Second Circuit on whether a court
may certify a class of purchasers of a security or fund that was not also purchased by the Lead
Plaintiffs."); *Rose v. Arkansas Valley Envtl.*, 562 F. Supp. 1180, 1193 (W.D. Mo. 1983)
("Standing questions are ones[s] with which both skilled counsel and skilled courts sometimes
experience considerable difficulty . . . .  I can see no more reason, as a general matter, to require
a passive class member to anticipate the existence of and ultimate ruling upon that question than
to require him to do so with respect to questions of 'numerosity,' 'commonality,' or
'typicality.'").

Thus, when the underlying Countrywide class actions were filed in November 2007 and
June 2008, respectively,[5] Plaintiffs had no reason to know that the lead plaintiffs in the class
actions might lack standing to pursue their claims.  Indeed, one cannot even tell from the face of
the *Luther* or *Washington State Plumbing* complaints whether Plaintiffs' purchases of
Countrywide certificates overlap with the purchases of the named plaintiffs.  In these
circumstances, it would be completely antithetical to the purposes of *American Pipe* to require
class members to conduct a legal and factual analysis of the standing of the putative class
representative and to file an action to protect against the risk of a later ruling that the named
representative was not adequate.

---

[4]    *See also Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 203 (S.D.N.Y. 1994) ("The
American Pipe tolling rule allows putative class members to wait on the sidelines, rather than
forcing them to congest the courts with defensively filed suits designed solely to guarantee that
such plaintiff's claims are not arbitrarily precluded by the running of a statute of limitations.").

[5]    *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial
Corp.,* No. BC 392571 (Cal. Super. Ct.), was filed on June 12, 2008.  The *Luther* complaint was
amended on September 9, 2008 to add the additional offerings sued upon in *Washington State
Plumbing*, and both actions were consolidated on October 16, 2008.

Hon. P. Kevin Castel
November 9, 2010

        Judge Pfaelzer's tolling decision is not only contrary to decisions by courts in this
Circuit, but also the weight of authority elsewhere. *See, e.g., McKowan Lowe & Co. v. Jasmine,
Ltd.*, 295 F.3d 380, 389 (3d Cir. 2002) (tolling applied even though named plaintiff lacked
standing); *Griffin*, 17 F.3d at 360-61(same); *Popoola v. Md-Individual Practice Ass'n, Inc.*, 230
F.R.D. 424, 430 (D. Md. 2005) (same); *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 352 F.
Supp. 2d 429, 456 (S.D.N.Y. 2005), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009)
("[A class member] should not be punished simply because he failed to anticipate that [the
original] plaintiff's § 12(a)(2) claims would be dismissed because none of the named plaintiffs in
the action had standing to sue on those claims."); *In re Initial Pub. Offering Secs. Litig.*, No. 01
Civ. 9741, 2004 WL 3015304, at *5 (S.D.N.Y. Dec. 27, 2004) (rejecting "the general, but
incorrect, proposition that *American Pipe* tolling can never be applied to cases where the original
lead plaintiff lacks standing"); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, No. 00-cv-
4285(GEB), 2002 WL 33934282, at *29-30 (D.N.J. June 26, 2002) (identifying the prejudice if
tolling did not apply to unnamed class members who believed they were included in the putative
class); *Rose*, 562 F. Supp. at 1180 ("[I]t can hardly be said that a suit commenced by one who
lacks standing is in any literal sense a 'nonexistent' suit.").

        Judge Pfaelzer's ruling has far-reaching implications beyond the plaintiffs in this case.  If
other courts were to adopt this holding, it would mean that hundreds of institutional investors
holding billions of dollars of Countrywide residential mortgage-backed securities who relied on
*Luther* and *Maine State* to protect their rights could find their claims time-barred.  At the least, if
this Court were to hold that lack of standing precludes tolling, it should do so prospectively only;
it should not retroactively bar the claims of Plaintiffs and other investors who justifiably relied
on the putative class actions to toll their claims.

        Respectfully submitted,

        *Dan Brockett*

        Daniel L. Brockett


cc:     Defendants' counsel (via e-mail)

5

# Exhibit J

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA

NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS

LONDON · MOSCOW · FRANKFURT · COLOGNE

ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial. +1 212 225 2760
E-Mail: mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO

DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN

BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. ONEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN N. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
ANDREW WEAVER
RESIDENT COUNSEL

January 31, 2011

BY HAND

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  Footbridge Limited Trust v. Countrywide Financial Corp.,
10 CIV 367 (PKC)

Dear Judge Castel:

This firm is counsel to the Countrywide Defendants in the above-referenced matter.  In their opening brief in support of their motion for summary judgment on the statutes of limitations and repose, as well as in subsequent letters to the Court, defendants cited Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 658 F. Supp. 299 (D. Mass. 2009), for the proposition that "[c]lass action plaintiffs do not have standing to challenge a particular [mortgage-backed securities] offering unless at least one named plaintiff purchased from that offering." Defs.' Br. at 18 & n.43. Attached is the January 21, 2011 opinion of the First Circuit affirming the District Court's ruling on this point. See Slip Op. at 9-16. In reaching this result, the First Circuit recognized that "every court to address the issue in a mortgage-backed security class action has concluded that a plaintiff lacks standing under Article III to represent the interests of investors in mortgage-backed securities offerings in which the named plaintiffs did not themselves buy." See Slip Op. at 14 (quoting Maine State Ret. Sys. v. Countrywide Fin. Corp., 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010)). The First Circuit also found that this holding was supported—and "perhaps required"—by a decision it issued three

Hon. P. Kevin Castel, p. 2

decades earlier.  See Slip Op. at 13 (citing Barry v. St. Paul Fire & Marine Ins. Co., 555 F.2d 3 (1st Cir. 1977), aff'd, 438 U.S. 531 (1978)).

Respectfully submitted,

Mitchell A. Lowenthal

Mitchell A. Lowenthal

Enclosure

cc:  Daniel L. Brockett, Esq.
     Jonathan Rosenberg, Esq.
     Christopher Caldwell, Esq.
     Theresa Trzaskoma, Esq.
     Leiv Blad, Esq.
     Keara Gordon, Esq.

# United States Court of Appeals
## For the First Circuit

---

No. 09-2596

PLUMBERS' UNION LOCAL NO. 12 PENSION FUND, Individually and on
behalf of all others similarly situated; PLUMBERS' & PIPEFITTERS'
WELFARE EDUCATIONAL FUND; NECA-IBEW HEALTH & WELFARE FUND,

Plaintiffs, Appellants,

v.

NOMURA ASSET ACCEPTANCE CORPORATION; JOHN P. GRAHAM; NATHAN
GORIN; JOHN McCARTHY; DAVID FINDLAY; ALTERNATIVE LOAN TRUST 2006-
AF1; ALTERNATIVE LOAN TRUST 2006-AF2; ALTERNATIVE LOAN TRUST
2006-AP1; ALTERNATIVE LOAN TRUST AR2; ALTERNATIVE LOAN TRUST AR3;
ALTERNATIVE LOAN TRUST 2006-AR4; ALTERNATIVE LOAN TRUST 2006-WF1;
NOMURA SECURITIES INTERNATIONAL, INC.; GREENWICH CAPITAL MARKETS,
INC.; UBS SECURITIES, LLC; CITIGROUP GLOBAL MARKETS, INC.;
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; GOLDMAN, SACHS &
CO.; ALTERNATIVE LOAN TRUST 2006-AR1,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before
Boudin and Howard, Circuit Judges,
and Barbadoro,* District Judge.

---

Eric Alan Isaacson with whom Arthur C. Leahy, Joseph D. Daley,
Thomas E. Egler, Susan G. Taylor, Nathan R. Lindell, Amanda M.
Frame, Coughlin Stoia Geller Rudman & Robbins LLP, Thomas G.
Shapiro, Adam M. Stewart, Robert E. Ditzion and Shapiro Haber &
Urmy LLP were on brief for appellants.

---

*Of the District of New Hampshire, sitting by designation.

      <u>Stephen D. Poss</u> with whom <u>Sarah Heaton Concannon</u> and <u>Goodwin Procter LLP</u> were on brief for the issuer defendants, appellees Nomura Asset Acceptance Corporation, John P. Graham, Nathan Gorin, John McCarthy, David Findlay, Alternative Loan Trust 2006-AF1, Alternative Loan Trust 2006-AF2, Alternative Loan Trust 2006-AP1, Alternative Loan Trust 2006-AR1, Alternative Loan Trust 2006-AR2, Alternative Loan Trust 2006-AR3, Alternative Loan Trust 2006-AR4, Alternative Loan Trust 2006-WF1.

      <u>William H. Pane</u> with whom <u>Mark C. Fleming</u>, <u>Timothy J. Perla</u> and <u>Wilmer Cutler Pickering Hale and Dorr LLP</u> were on brief for the underwriter defendants, appellees Nomura Securities International, Inc., Greenwich Capital Markets, Inc., UBS Securities LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Inc., and Goldman, Sachs & Co.

———————————————

January 20, 2011

———————————————

BOUDIN, **Circuit Judge**.  Three union pension and welfare funds[1] appeal from a district court order dismissing at the complaint stage their putative class action against eight trusts, the "depositor" that organized them, the trusts' underwriters and five officers of the depositor.  The lawsuit sought redress for losses suffered when plaintiffs acquired trust certificates representing mortgage-backed securities.  The background facts are largely undisputed.

The lead defendant, Nomura Asset Acceptance Corporation ("Nomura Asset"), played the organizing role in the creation of the securities at issue in this case.  As depositor, it acquired mortgages from various banks and transferred them to the eight trusts, all of which are separate legal entities.  Each trust pooled the mortgages acquired by it and, with Nomura Asset, issued trust certificates representing interests in that trust.  Then Nomura Asset and the trusts worked with underwriters to sell the certificates to investors.

The certificates constitute securities under the federal securities laws, and to permit their initial sale, a registration statement was required, disclosing information about the securities being offered.  One registration statement, filed on July 22, 2005,

---

[1]Plumbers' Union Local No. 12 Pension Fund ("Plumbers' Fund"), Plumbers' & Pipefitters' Welfare Educational Fund ("Plumbers' & Pipefitters' Fund") and the NECA-IBEW Health & Welfare Fund ("NECA-IBEW Fund").

covered three trusts (2006-AP1, 2006-AR1, 2006-AR2); the other, filed on April 16, 2006, covered the remaining five (2006-AF1, 2006-AF2, 2006-AR3, 2006-AR4, 2006-WF1). These were "shelf registrations," see 17 C.F.R. § 230.415(a) (2010), signaling an intent to offer securities in the future and containing certain information about Nomura Asset, the trusts and the securities.

  The registration statements were not themselves offerings and did not become effective until Nomura Asset and the trusts updated them by filing prospectus supplements that described the details of the offering for each trust. The registration statements and prospectus supplements (collectively, "offering documents") explain in detail the characteristics of the mortgages that Nomura Asset acquired and transferred to each trust. The federal securities laws, yet to be discussed, impose liability for false or misleading statements causing harm to purchasers.

  In this case, plaintiffs bought trust certificates representing interests in two of the eight trusts; one trust (AP1 trust) was covered by the earlier registration statement and a September 27, 2005, prospectus supplement; the other (AF1 trust), by the later of the two registration statements and a May 25, 2006, prospectus supplement. One of the three plaintiffs bought certificates in the AF1 trust, a second in the AP1 trust and the third in both trusts. Thereafter, on November 13, 2007, Moody's downgraded the rating of all of the certificates for all eight

-4-

trusts and the certificates are now worth much less than what plaintiffs originally paid for them. This lawsuit followed shortly thereafter.

On January 31, 2008, one of the three union funds filed suit in state court, asserting violations of sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k(a), 77l(a)(2), 77o (2006). Section 11 imposes liability for false or misleading statements contained in a registration statement, id. § 77k(a); section 12(a)(2) imposes similar liability on sellers who make such statements in a prospectus or oral communication, id. § 77l(a)(2). Section 15 imposes liability on one who "controls any person liable" under sections 11 or 12. Id. § 77o.

The case was removed to federal district court, the other funds entered as plaintiffs and ultimately a joint amended complaint was filed listing as defendants Nomura Asset, the eight trusts, the trusts' underwriters and five officers and directors of Nomura Asset.[2] The gravamen of the complaint is that the offering

---

[2]Nomura Securities International, Inc. ("Nomura Securities") was the sole underwriter for the AF1, AP1, AR1 and AR2 trusts; the AF2 trust was underwritten by Nomura Securities, Greenwich Capital Markets, Inc. ("GCM") and Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"); the AR3 trust was underwritten by Nomura Securities and Goldman, Sachs & Co. ("Goldman"); the AR4 trust was underwritten by UBS Securities LLC ("UBS") and GCM; and the WF1 trust was underwritten by Nomura Securities and Citigroup Global Markets, Inc. ("CGMI"). The officers and directors are John P. Graham, Chief Executive Officer and President of Nomura Asset; Nathan Gorin, Chief Financial Officer of Nomura Asset; and John McCarthy and David Findlay, directors of Nomura Asset. (Another defendant named in the complaint, Shunichi Ito, has apparently

-5-

documents contained false or misleading statements, and as a result plaintiffs purchased securities whose true value when purchased was less than what was paid for them.  The suit was cast as a class action comprised of purchasers of the certificates of the eight trusts covered by the two registration statements.

Defendants filed motions to dismiss for lack of standing, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6).  On September 30, 2009, the district court granted defendants' motions to dismiss and entered judgment. Claims related to the trusts whose certificates had been purchased by none of the named plaintiffs were dismissed for lack of Article III standing; claims relating to the other two trusts were dismissed on statutory grounds; and no class was ever certified. The present appeal followed.

Jurisdiction.  At the outset, plaintiffs say that the original action brought in state court may have been improperly removed and that the district court may thus have lacked subject matter jurisdiction; although plaintiffs did not contest jurisdiction until they lost the case in the district court, lack of subject matter jurisdiction can be noticed at any time and cannot be waived.  United States v. Cotton, 535 U.S. 625, 630 (2002); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93-94 (1998).  But we conclude that any flaw in the removal was not

_____

never been served with process.)

-6-

one of subject matter jurisdiction and therefore has been waived or forfeited for lack of a timely objection. 28 U.S.C. § 1447(c) (2006) (requiring objection within 30 days of removal).

Removal is ordinarily permitted in civil actions where the same case could originally have been brought in federal court "[e]xcept as otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441(a). One exception--section 22 of the Securities Act, 15 U.S.C. § 77v(a)--is that "no case arising under [the Securities Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States." However, assuming that this limitation applied,[3] we conclude that section 22's limitation would not be one of subject matter jurisdiction but merely an advantage that a plaintiff could forfeit by failure to make timely objection.

There are some casual references in reported circuit-court decisions to section 22 as a limitation on subject matter jurisdiction, e.g., Emrich v. Touche Ross & Co., 846 F.2d 1190, 1197-98 (9th Cir. 1988) (but the objection was made within 30 days, so that conclusion was dictum); Westinghouse Credit Corp. v. Thompson, 987 F.2d 682, 683 (10th Cir. 1993) (but the remand order

---

[3]Whether it applied depends on how one resolves a potential conflict between section 22 and language in a later statute, namely, the Class Action Fairness Act's ("CAFA") removal provision. Compare Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008), with Katz v. Gerardi, 552 F.3d 558, 562 (7th Cir. 2009)--a dispute we need not address.

was unreviewable whatever the defect); yet a larger number of circuits have held that similarly phrased anti-removal provisions do not implicate subject matter jurisdiction.[4]

Civil suits asserting claims under the Securities Act are within the "arising under" clause of Article III and can easily be brought as original actions in federal court. 15 U.S.C. § 77v(a). Although expressed as a bar on removal of such cases from state court, section 22(a)'s aim is not to preclude hearing such cases in federal court but instead to "favor[] plaintiffs' choice of forum." Pinto v. Maremont Corp., 326 F. Supp. 165, 167 n.2 (S.D.N.Y. 1971); see Cook, Recrafting the Jurisdictional Framework for Private Rights of Action Under the Federal Securities Laws, 55 Am. U. L. Rev. 621, 632-34 (2006).

Given that federal courts are otherwise competent to address federal securities claims and do so all the time, it makes far more sense to view section 22 as creating a waivable right to insist on non-removal. That course achieves the statute's aim to protect the plaintiff's preference for a state forum, but it prevents the mischief of allowing a party to sit on an objection, raising it only if and when the objector is dissatisfied with the

---

[4]See, e.g., In re Norfolk S. Ry. Co., 592 F.3d 907, 912 (8th Cir. 2010); Vasquez v. N. Cnty. Transit Dist., 292 F.3d 1049, 1062 (9th Cir. 2002); Feichko v. Denver & Rio Grande W. R.R. Co., 213 F.3d 586, 591 (10th Cir. 2000), cert. denied 531 U.S. 1074 (2001); Belcufine v. Aloe, 112 F.3d 633, 638 (3d Cir. 1997); Williams v. AC Spark Plugs, 985 F.2d 783, 787 (5th Cir. 1993).

result.  Cf. 14C C. Wright et al., Federal Practice & Procedure § 3739, at 817-18 (4th ed. 2009) (limiting removal objections to thirty-day period prevents use of a defect as insurance against unfavorable developments).

Standing.  The more difficult threshold question presented by the appeal is whether plaintiffs can pursue claims, to the extent claims may be stated, based on offerings in which they did not participate and against trusts whose certificates they did not purchase.  This issue, styled by defendants primarily as one of Article III standing and secondarily as a standing issue under the Securities Act, was resolved in defendants' favor by the district court.  The issue looks straightforward and one would expect it to be well settled; neither assumption is entirely true.

It is clear that the named plaintiffs have no claim on their own behalf based on trust certificates that they did not buy;[5] and they bought no certificates issued by six of the defendant trusts.  To the extent claims exist based on such purchases, they belong to the actual purchasers.  Since a requisite of an ordinary case or controversy is an injury to the plaintiff

───────────

[5]For section 11, see Barnes v. Osofsky, 373 F.2d 269, 273 (2d Cir. 1967) (Friendly, J.) (an action under section 11 may be maintained only by "those who purchase securities that are the direct subject of the prospectus and registration statement") (internal quotation marks omitted); for section 12(a)(2), see Pinter v. Dahl, 486 U.S. 622, 644 (1988) (claims under section 12(a)(2) are available only against person who offers or sells the security to the plaintiff).

-9-

traceable to the defendant, <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992), it might follow that there is also no case or controversy between the named plaintiffs and the trusts from which they made no purchases. Alas, the matter is not so simple.

In a properly certified class action, the named plaintiffs regularly litigate not only their own claims but also claims of other class members based on transactions in which the named plaintiffs played no part. Yet, here certain defendants, including six of the eight trusts named as defendants, are not liable to the named plaintiffs on <u>any</u> claims. In these circumstances older cases, including a decision of this court, have refused to allow the case to proceed--whether as a class action or not--against defendants not implicated in any of the wrongs done to the named plaintiffs.

Thus, in <u>Barry</u> v. <u>St. Paul Fire & Marine Insurance Co.</u>, 555 F.2d 3 (1st Cir. 1977), <u>aff'd</u>, 438 U.S. 531 (1978), Rhode Island physicians and patients sought to bring a class action fraud claim on behalf of all physicians and patients in the state against four insurance companies for the sale of certain insurance policies. <u>Id.</u> at 5, 13. Each of the insurance companies had almost certainly sold such policies to <u>some</u> members of the class, but none of the <u>named plaintiffs</u> ever bought that type of policy from two of the companies. The district court declined to allow claims against the latter two companies for the sale of those

-10-

policies and we held there was "no error in the district court's decision to adhere strictly to the traditional [standing] rules." Id. at 13; see also Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1095-96 & n.18 (3d Cir. 1975).

How far Barry extends today may be debatable. Although its discussion of the issue was terse and not the main focus of the decision, its approach had support not only from sister circuit cases but from statements from the Supreme Court. See Barry, 555 F.2d at 13. And several times since Barry the Supreme Court used Article III concepts in refusing to permit class claims to extend to those suffering injuries materially different than those suffered by the named plaintiffs. Lewis v. Casey, 518 U.S. 343, 346-49, 358 & n.6 (1996); Blum v. Yaretsky, 457 U.S. 991, 999-1002 (1982).[6] For example, Blum stated:

> It is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows "that he personally has suffered some actual or threatened injury as a result of some putatively illegal conduct of the defendant." . . . It is not enough that the conduct of which the plaintiff complains will injure someone.

---

[6]See also 1 J. McLaughlin, Class Actions § 4:28, at 659-60 (6th ed. 2010) ("In a multi-defendant case, a putative class representative must allege that he or she has been injured by the conduct of each defendant to establish standing."); 5 J. Moore et al., Moore's Federal Practice § 26.63[1][b], at 23-304 (3d ed. 2010) ("If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.").

-11-

457 U.S. at 999 (quoting <u>Gladstone, Realtors</u> v. <u>Vill. of Bellwood</u>, 441 U.S. 91, 99 (1979)).

But the Supreme Court has not been consistent. In <u>Ortiz</u> v. <u>Fibreboard Corp.</u>, 527 U.S. 815 (1999), and <u>Amchem Products, Inc.</u> v. <u>Windsor</u>, 521 U.S. 591 (1997), the Supreme Court ruled that no class should be certified, but in doing so, it bypassed objections that some settling parties lacked standing, saying that the class certification issues were "'logically antecedent' to Article III concerns," <u>Ortiz</u>, 527 U.S. at 831 (quoting <u>Amchem</u>, 521 U.S. at 612). And in <u>Gratz</u> v. <u>Bollinger</u>, 539 U.S. 244 (2003), the Court allowed the named class plaintiff to challenge admissions practices as to college freshman even though his status would have been that of a transfer student subject to different rules. <u>Id.</u> 263-65.

Further, several circuits have cut themselves loose from a strict requirement that, in a plaintiff class action, no defendant may be sued unless a named plaintiff has a counterpart claim against that defendant. Arguing that the class action should be a flexible instrument, these courts conclude that the class action should embrace defendants against whom no named plaintiff has a claim so long as the claims are essentially of the same character as the claim against a properly named defendant, and that the sorting out of this issue should be left to Rule 23 criteria

-12-

rather than by use of standing concepts focusing on named
plaintiffs.[7]

There is no reason to inventory stray Supreme Court
quotations that can be found on both sides; nor is there a single
recent holding by the Court that with perfect clarity resolves the
issue directly before us. Indeed, Rule 23 criteria can still be
used as a required tool for shaping the scope of a class action
without abandoning the notion that Article III creates some outer
limit based on the incentives of the named plaintiffs to adequately
litigate issues of importance to them. See Baker v. Carr, 369 U.S.
186, 204 (1962) (plaintiffs need "such a personal stake in the
outcome of the controversy as to assure . . . concrete
adverseness").

For the present, Barry--however terse its treatment--is
on our books; and we are inclined (and perhaps required) to follow
its lead--with a qualification that does not affect the outcome in
this case. The qualification, on which we reserve judgment, is one
where the claims of the named plaintiffs necessarily give them--not

---

[7]Payton v. Cnty. of Kane, 308 F.3d 673, 680-81 (7th Cir.
2002), cert. denied, 540 U.S. 812 (2003) (named plaintiffs were
only injured by two counties but may be entitled maintain class
action against seventeen other counties that implemented the same
state statute in a materially identical fashion); Fallick v.
Nationwide Mut. Ins. Co., 162 F.3d 410, 421-24 (6th Cir. 1998)
(although named plaintiff was only a participant in one ERISA plan,
he could represent a class against all of defendant's ERISA plans
where the gravamen of the challenge was a general practice that
affected all plans).

just their lawyers--essentially the same incentive to litigate the counterpart claims of the class members because the establishment of the named plaintiffs' claims necessarily establishes those of other class members.  The matter is one of identity of issues not in the abstract but at a ground floor level.  In such a case, which might include the kind of claims that were present in <u>Payton</u>, 308 F.3d at 680, and <u>Fallick</u>, 162 F.3d at 423, the substance of the Article III concern may vanish even if in form it might seem to persist.

Turning back to our own situation--claims based on mortgage-backed securities--most district courts have continued to hold that named plaintiffs must themselves possess claims against each defendant.  <u>E.g.</u>, <u>In re Salomon Smith Barney Mut. Fund Fees Litig.</u>, 441 F. Supp. 2d 579, 604-08 (S.D.N.Y. 2006); <u>In re Eaton Vance Corp. Sec. Litig.</u>, 220 F.R.D. 162, 166-69 (D. Mass. 2004).  Indeed, one court recently found that

> [e]very court to address the issue in a [mortgage-backed security] class action has concluded that a plaintiff lacks standing under . . . Article III . . . to represent the interests of investors in [mortgage-backed securities] offerings in which the [named] plaintiffs did not themselves buy.

<u>Me. State Ret. Sys.</u> v. <u>Countrywide Fin. Corp.</u>, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010).  Interestingly, a handful of district court cases have allowed securities claims to proceed in situations that may fit the possible exception we have outlined above.  <u>E.g.</u>,

-14-

In re Am. Int'l Grp., Inc. 2008 Sec. Litig., No. 08 Civ. 4772 (LTS),
2010 WL 3768146, at *22 (S.D.N.Y. Sept. 27, 2010).

In our case, as in others involving mortgage-backed
securities, the necessary identity of issues and alignment of
incentives is not present so far as the claims involve sales of
certificates in the six trusts. Each trust is backed by loans from
a different mix of banks; no named plaintiff has a significant
interest in establishing wrongdoing by the particular group of
banks that financed a trust from which the named plaintiffs made no
purchases. Thus, the claims related to the six trusts from which
the named plaintiffs never purchased securities were properly
dismissed, as were the six trusts and defendants connected to only
those six trusts.

Although Nomura Asset is a common defendant with respect
to all eight of the trusts, claims against it as well fail so far
as they are based on the six trusts whose certificates were
purchased by no named plaintiff. Although Nomura Asset is a
properly named defendant, the named plaintiffs have no stake in
establishing liability as to misconduct involving the sales of
those certificates. In the Supreme Court's words: "Nor does a
plaintiff who has been subject to injurious conduct of one kind
possess by virtue of that injury the necessary stake in litigating
conduct of another kind, although similar, to which he has not been

-15-

subject." <u>Blum</u>, 457 U.S. at 999; <u>see also</u> <u>Lewis</u>, 518 U.S. at 358 n.6.

      <u>Adequacy of claims</u>. The district court held that on the face of the complaint, <u>no</u> claims were sufficiently stated. We review that ruling <u>de novo</u>, accepting as true all well-pled facts in the complaint and drawing all reasonable inferences in favor of plaintiffs. <u>SEC</u> v. <u>Tambone</u>, 597 F.3d 436, 441 (1st Cir. 2010) (en banc). But, while this much is clear, the usual difficulty of parsing and evaluating misrepresentation claims at the complaint stage in securities cases is further complicated by recent case law tightening the sieve through which a well-pled complaint must pass.

      To state a claim, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)); "'naked assertions devoid of further factual enhancement'" need not be accepted, <u>Maldonado</u> v. <u>Fontanes</u>, 568 F.3d 263, 266 (1st Cir. 2009) (quoting <u>Iqbal</u>, 129 S. Ct. at 1949); and "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal," <u>Tambone</u>, 597 F.3d at 442.

      The district court found that of plaintiffs' main efforts to assert adequate claims, all three failed. The statute provides

-16-

the blueprint against which a claim must be measured and we start by outlining the requirements of section 11, which reads in relevant part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . may . . . sue [enumerated defendants].

15 U.S.C. § 77k(a).

Here, plaintiffs properly alleged that they acquired securities pursuant to a registration statement, and defendants--which include the issuer and underwriters, as well as the directors of Nomura Asset and signers of the offering documents--are those enumerated in section 11.[8]  Plaintiffs also alleged that misstatements or misleading statements were made and that they were "material," that is, that "'there is a substantial likelihood that a reasonable shareholder would consider it important' to the investment decision." Milton v. Van Dorn Co., 961 F.2d 965, 969 (1st Cir. 1992) (emphasis omitted) (quoting Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988)).

---

[8]Although the issuer is not explicitly mentioned in the list of enumerated defendants, because the issuer must always sign registration statements, 15 U.S.C. § 77f(a), issuers are permissible defendants under section 11(a)(1), which includes as defendants "every person who signed the registration statement," id. § 77k(a)(1).  See 2 T. Hazen, The Law of Securities Regulation § 7.3[3], at 218 & n.49 (6th ed. 2009).

-17-

One qualification is important to understanding the district court's rulings. Cautionary statements may "negate any reasonable reliance," 2 Hazen, supra, § 7.3[1][B], at 216; but this exception, known as the "bespeaks caution" doctrine, normally applies only to "forward-looking" statements such as projections or forecasts and not to "representation[s] of present fact." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1213 (1st Cir. 1996) (emphasis omitted), abrogated on other grounds by 15 U.S.C. § 78u-4(b)(2); 2 Hazen, supra, § 7.3[1][B], at 215 (citing cases).

This brings us to the individual charges of false or misleading statements and to the specific allegations of the complaint. On this appeal, plaintiffs claim that three sets of allegations were adequately alleged: one relates to the lending guidelines, another to appraisal standards and a third to credit ratings. The district court disagreed in each case, and we consider the adequacy of the allegations charge by charge.

The underwriting guidelines. Plaintiffs first point to a set of statements in the offering documents implying that the banks that originated the mortgages used lending guidelines to determine borrowers' creditworthiness and ability to repay the loans. For example, the prospectus supplements for the two trusts at issue stated that First National Bank of Nevada ("FNBN"), one of the "key" loan originators for those trusts, used "underwriting guidelines [that] are primarily intended to evaluate the

-18-

prospective borrower's credit standing and ability to repay the loan, as well as the value and adequacy of the proposed mortgaged property as collateral."[9]

In fact, plaintiffs allege, FNBN "routinely violated" its lending guidelines and instead approved as many loans as possible, even "scrub[bing]" loan applications of potentially disqualifying material.  Indeed, plaintiffs allege that this was FNBN's "business model," aimed at milling applications at high speed to generate profits from the sale of such risky loans to others.  Thus, plaintiffs say, contrary to the registration statement, borrowers did not "demonstrate[] an established ability to repay indebtedness in a timely fashion" and employment history was not "verified."[10]

Admittedly, warnings in the offering documents state, for example, that the "underwriting standards . . . typically differ from, and are . . . generally less stringent than, the underwriting standards established by Fannie Mae or Freddie Mac"; that "certain

_____

[9]The prospectus supplements also stated that "FNBN employs or contracts with underwriters to scrutinize the prospective borrower's credit profile"; its guidelines "are applied in a standard procedure that is intended to comply with applicable federal and state laws and regulations"; "the prospective borrower must have a credit history that demonstrates an established ability to repay indebtedness in a timely fashion"; and "employment history is verified through written or telephonic communication."

[10]Similar claims were made for another "principal originator" for one of the two trusts, Metrocities Mortgage, LLC, but the basis for such claims appears to be only that such claims were made against that company in other litigation.  As we are here concerned only with whether the claim is adequately supported as to some of the mortgages, we need not pursue this issue further.

-19-

exceptions to the underwriting standards . . . are made in the event that compensating factors are demonstrated by a prospective borrower"; and that FNBN "originates or purchases loans that have been originated under certain limited documentation programs" that "may not require income, employment or asset verification."

The district court ruled that, read together with such warnings, the complained-of assurances were not materially false or misleading, but we cannot agree. Neither being "less stringent" than Fannie Mae nor saying that exceptions occur when borrowers demonstrate other "compensating factors" reveals what plaintiffs allege, namely, a wholesale abandonment of underwriting standards.[11] That is true too of the warning that less verification may be employed for "certain limited documentation programs designed to streamline the loan underwriting process." Plaintiffs' allegation of wholesale abandonment may not be proved, but--if accepted at this stage--it is enough to defeat dismissal.

Defendants say that no detailed factual support is provided for the allegation and that it is implausible. Despite the familiar generalization that evidence need not be pled at the complaint stage, see Twombly, 550 U.S. at 555, courts increasingly

---

[11]The same can be said about the warning that "[c]ertain [m]ortgage [l]oans were underwritten to nonconforming underwriting standards, which may result in losses or shortfalls to be incurred on the [o]ffered [c]ertificates." Using "nonconforming" standards is different than having no standards; and this statement makes it seem as though only some ("certain") loans were underwritten under these standards, leaving the impression that most other loans used "conforming" standards.

insist that more specific facts be alleged where an allegation is conclusory, see Maldonado, 568 F.3d at 266, 274; and the same is true for implausibility, at least where the claim is considered as a whole, Twombly, 550 U.S. at 570; see Arista Records LLC v. Doe 3, 604 F.3d 110, 119-21 (2d Cir. 2010).

"Conclusory" and "implausible" are matters of degree rather than sharp-edged categories. Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 555. However, the practices alleged in this case are fairly specific and a number of lenders in the industry are widely understood to have engaged in such practices. The harder problem is whether enough has been said in the complaint-- beyond conclusory assertions--to link such practices with specific lending banks that supplied the mortgages that underpinned the trusts. Similar complaints in other cases have cited to more substantial sources, including statements from confidential witnesses, former employees and internal e-mails.

This is a familiar problem: plaintiffs want discovery to develop such evidence, while courts are loath to license fishing expeditions. While this case presents a judgment call, the sharp drop in the credit ratings after the sales and the specific allegations as to FNBN offer enough basis to warrant some initial discovery aimed at these precise allegations. The district court is free to limit discovery stringently and to revisit the adequacy of the allegations thereafter and even before possible motions for

-21-

summary judgment.  <u>See, e.g.</u>, <u>Miss. Pub. Emps.' Ret. Sys.</u> v. <u>Bos. Sci. Corp.</u>, 523 F.3d 75, 79 (1st Cir. 2008).

        <u>Appraisal practices</u>.  The complaint also alleges that the offering documents contained false statements relating to the methods used to appraise the property values of potential borrowers--the ratio of property value to loan being a key indicator of risk.  For example, the April 19, 2006, registration statement and the prospectus supplements stated that "[a]ll appraisals" were conducted in accordance with the "Uniform Standards of Professional Appraisal Practice" ("USPAP").  These in turn require that appraisers "perform assignments with impartiality, objectivity, and independence" and make it unethical for appraisers, among other things, to accept an assignment contingent on reporting a predetermined result.

        The complaint alleges in a single general statement that the appraisals underlying the loans at issue here failed to comply with USPAP requirements; but there is no allegation that any specific bank that supplied mortgages to the trusts did exert undue pressure, let alone that the pressure succeeded.  The complaint fairly read is that many appraisers in the banking industry were subject to such pressure.[12]  So, unlike the lending standard

        [12]The complaint cites the testimony of Alan Hummel, the Chair of the Appraisal Institute, before the Senate Committee on Banking that appraisers "experience[d] systemic problems with coercion" and a 2007 survey showing that such pressure was widespread.  How many succumbed and altered appraisals is not specified.

-22-

allegation, the complaint is essentially a claim that other banks engaged in such practices, some of which probably distorted loans, and therefore this may have happened in this case.

On this basis, virtually <u>every</u> investor in mortgage-backed securities could subject a multiplicity of defendants "to the most unrestrained of fishing expeditions." <u>Gooley</u> v. <u>Mobil Oil Corp.</u>, 851 F.3d 513, 515 (1st Cir. 1988); <u>see also</u> <u>DM Research, Inc.</u> v. <u>Coll. of Am. Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999). Accordingly, we agree with the district court that such an allegation--amounting to the statement that others in the industry engaged in wrongful pressure--is not enough. Several other district courts have reached precisely this conclusion.[13]

<u>Investment ratings</u>. The prospectus supplements set forth ratings that Standard & Poor's Rating Services, Inc. ("S&P") or Moody's Investor Services, Inc. ("Moody's") had assigned to the certificates or stated that the certificates would not be offered unless they received an "investment grade" rating from S&P (AAA through BBB) or Moody's (Aaa through Baa3). There is no claim that

---

[13]<u>See</u> <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, 718 F. Supp. 2d 495, 510 (S.D.N.Y. 2010) (based on plaintiffs' complaint, there was no reason to infer "that the appraisers of the properties underlying the [c]ertificates . . . succumbed to [pressure] in any way that violated USPAP"); <u>accord</u> <u>Boilermakers Nat'l Annuity Trust Fund</u> v. <u>WaMu Mortg. Pass Through Certificates, Series AR1</u>, No. C09-00037MJP, 2010 WL 3815796, at *7 (W.D. Wash. Sept. 28, 2010); <u>Tsereteli</u> v. <u>Residential Asset Securitization Trust 2006-A8</u>, 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010). <u>But cf.</u> <u>In re Wells Fargo Mortg.-Backed Certificates Litig.</u>, 712 F. Supp. 2d 958, 972 (N.D. Cal. 2010).

the ratings given were misreported or that the "unless" condition
was not met.   Rather, plaintiffs say that these ratings were
misleading, primarily because they were based on "outdated models,
lowered ratings criteria, and inaccurate loan information."

The ratings are opinions purportedly expressing the
agencies' professional judgment about the value and prospects of
the certificates.  See In re Credit Suisse First Bos. Corp., 431
F.3d 36, 46-47 (1st Cir. 2005), overruled on other grounds by
Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).
An opinion may still be misleading if it does not represent the
actual belief of the person expressing the opinion, lacks any basis
or knowingly omits undisclosed facts tending seriously to undermine
the accuracy of the statement.   Id. at 47; accord In re Apple
Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir. 1989), cert.
denied, 496 U.S. 943 (1990).   Liability may on this theory also
extend to one who accurately described the opinion.[14]

The complaint includes acknowledgments from S&P and
Moody's executives conceding, in hindsight, that the models and
data that the rating agencies were using were deficient.  But the
ratings were not false or misleading because rating agencies should

---

[14]See Lucia v. Prospect St. High Income Portfolio, Inc., 36
F.3d 170, 175-76 (1st Cir. 1994) (underwriters, directors and
advisors can be held liable for accurately reporting study by an
underwriter not party to the suit that, although literally true,
could nevertheless be misleading); cf. 2 A.A. Sommer, Federal
Securities Act of 1933 § 9.02[12][d], at 9-24 (rev. ed. 2010)
(underwriters, directors, officers and issuers can be held liable
for statements of experts included in registration statements).

-24-

have been using better methods and data. Defendants are not liable under the securities laws when their opinions, or those they reported, were honestly held when formed but simply turn out later to be inaccurate; nor are they liable only because they could have formed "better" opinions. See Boilermakers, 2010 WL 3815796, at *7. A majority of district courts that have considered the issue have dismissed similar claims, and the Sixth Circuit affirmed one such dismissal.[15]

In addition to claiming that the ratings were faulty, the complaint also alleges that the ratings agencies produced high ratings aimed at keeping business, and it quotes individuals at the rating companies to support that proposition and to suggest that some inside the company thought that ratings were skewed.[16] But, tellingly, the complaint stops short of alleging expressly that the leadership of S&P or Moody's believed that their companies' ratings were false or were unsupported by models that generally captured the quality of the securities being rated.

---

[15]E.g., J & R Mktg., SEP v. Gen. Motors Corp., 549 F.3d 384, 392-93 (6th Cir. 2008); Boilermakers, 2010 WL 3815796, at *7 ("The mere fact that the ratings would have been different under a different methodology is insufficient to state a claim."); IndyMac, 718 F. Supp. 2d at 511-12; Tsereteli, 692 F. Supp. 2d at 395. But see Wells Fargo, 712 F. Supp. 2d at 973.

[16]The strongest examples are from an S&P managing director now admitting that S&P intentionally inflated ratings and that he "knew it was wrong at the time" but did it because "[i]t was either that or skip the business" and from a CEO of Moody's reportedly saying to his board in 2007 that Moody's was pressured to rate higher and that sometimes they "drink the kool-aid."

-25-

The line is admittedly a fine one, but the ratings-- inherently opinions and not warranties against error, J & R Mktg., 549 F.3d at 392-93--were accurately reported by defendants and nothing more is required so long as the ratings were honestly made, had some basis, and did not omit critical information.  That a high rating may be mistaken, a rater negligent in the model employed or the rating company interested in securing more business may be true, but it does not make the report of the rating false or misleading.  If the purchaser wants absolute protection against errors of opinion, the answer is insurance rather than lawsuits.

As sections 11 and 12 are structured, there is liability without fault even for those who merely report the statements or opinions of others; under section 11 this liability for the issuer is absolute; for other defendants (including the issuer under section 12), a defense is available for reporting statements of others if due diligence was exercised.  See 15 U.S.C §§ 77k(a)-(b), 77l(a)(2).[17]  Either way, the absence of a scienter element may suggest special caution before classifying an accurate report of a third-party opinion as "misleading" based on implied representations about subjective intent or qualifications known only to the third party.

---

[17]See 2 Sommer, supra, § 9.02[12][d], at 9-24; see also In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628, 660-61 (S.D.N.Y. 2004) (underwriters can be liable for false and misleading public filings made by issuer and accountants that were incorporated into registration statement).

Seller or solicitor allegations. Section 12(a)(2) permits a plaintiff to sue only a defendant who either sold its own security to the plaintiff or (for financial gain) successfully solicited the sale of that security to the plaintiff. Pinter, 486 U.S. at 642-47, 650 & n.21. The district court dismissed plaintiffs' section 12(a)(2) claims, concluding that they did not adequately allege that defendants sold the certificates to the plaintiffs or solicited the sales. This was apparently because the complaint used a more ambiguous phrase--that plaintiffs "acquired the [c]ertificates pursuant and/or traceable to" the offering documents--found insufficient by a number of courts. E.g., Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010); Wells Fargo, 712 F. Supp. 2d at 966.

But the complaint also alleged that plaintiffs "acquired . . . [c]ertificates from defendant Nomura Securities" and that the "[d]efendants promoted and sold the [c]ertificates to [the p]laintiffs and other members of the [c]lass" (emphasis added); these allegations are sufficient to state a claim under section 12(a)(2) so long as material misstatements or misleading omissions are alleged. The district court's dismissal of plaintiffs' section 12(a)(2) claims for failure to allege defendants' requisite connections with the sale was in error.

Control person liability. Finally, the district court dismissed plaintiffs' section 15 "control person" liability claims

-27-

because it held that plaintiffs failed to state a violation of the securities laws to begin with. Section 15 creates liability for any individual or entity that "controls any person liable" under sections 11 or 12. 15 U.S.C. § 77<u>o</u>; <u>see</u> <u>Shaw</u>, 82 F.3d at 1201 n.2. Because we hold that plaintiffs adequately stated some claims under sections 11 and 12(a)(2), we also hold that the district court's dismissal of plaintiffs' section 15 claim was in error. Given the "highly factual nature" of the control person inquiry, resolving that issue on a motion to dismiss is often inappropriate. 2 Hazen, <u>supra</u>, § 7.12[2], at 343 n.38.

      We <u>affirm</u> the dismissal of all claims based upon purchases of the AR1, AR2, AF2, AR3, AR4 and WF1 trusts and all defendants including those six trusts implicated only as to their certificates. As to claims against the AF1 and AP1 trusts and other remaining defendants, we <u>affirm</u> the dismissal of all claims save those relating to the statements regarding the lending banks' underwriting practices but <u>vacate</u> the dismissal of the latter claims and remand for further proceedings consistent with this decision. Each party will bear its own costs on this appeal.

      <u>It is so ordered.</u>

# Exhibit K

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL: (212) 849-7000  FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

February 1, 2011

<u>VIA HAND DELIVERY</u>

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

On behalf of Plaintiffs Footbridge Limited Trust ("Footbridge") and OHP Opportunity Limited Trust ("Opportunity"), we write in response to the Countrywide Defendants' letter of January 31, 2011, which attaches the January 21, 2011 opinion of the United States Court of Appeals for the First Circuit in *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*  The Countrywide Defendants bring this decision to the Court's attention in support of the proposition that a plaintiff in a mortgage-backed securities class action lacks standing to represent the interest of investors with respect to offerings in which the named plaintiffs themselves did not invest.  We acknowledge the Court so held.

But the issue on the pending summary judgment motion before this Court is ***not*** whether the named plaintiffs in the *Luther* and *Washington State Plumbing* class actions had standing to represent all class members.  The issue is whether Plaintiffs' 1933 Act claims were tolled by the commencement of those class actions.  Under *American Pipe* and *WorldCom,* when an action is

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111-4788 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California  94065-2139 | TEL (650) 801-5000  FAX (650) 801-5100
CHICAGO | 500 W. Madison Street, Suite 2450, Chicago, Illinois  60661-2510 | TEL (312) 705-7400  FAX (312) 705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7, Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 3 5510 1711  FAX +81 3 5510 1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49(0) 621 43298 6000  FAX +49(0) 621 43298 6100

filed on behalf of a purported class, it is as though it is filed by the members of the purported class and the statute of limitations is tolled for all class members until the class certification ruling.  Contrary to Defendants' arguments, there is no exception in the Second Circuit to the tolling principle of *American Pipe* when a class is denied because the named plaintiff is found to lack standing to bring certain claims.

Interestingly, the case Defendants send to the Court, *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, itself makes clear the unfairness of the rule that Defendants urge—that *American Pipe* tolling doesn't apply where the named plaintiff is found to lack standing.  In *Nomura*, the First Circuit acknowledged that the standing rules in class actions are neither "straightforward" nor "well settled."  (slip op. at 9).  Indeed, according to the Court, the named plaintiffs in a class action regularly litigate not only their own claims but also the claims of other class members based on transactions in which the named plaintiffs played no part.  *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *13-14 (S.D.N.Y. Sept. 19, 2000) ("Courts have repeatedly certified classes where the class representatives had not invested in all of the subject securities.").  The Court thus refused to endorse a hard-and-fast rule that a named plaintiff who bought in one offering could never represent a class of investors who bought in other RMBS offerings.  Instead, the First Circuit expressly left open that such a case could go forward as a class action where, as in *Luther* and *Washington State Plumbing,* each trust is backed by loans from the same originator, and the named plaintiffs' interests are aligned with absent class members in establishing wrongdoing with respect to each offering.  (slip op. at 15).

At the time the *Luther* and *Washington State Plumbing* class actions were filed, there was no clear standing rule prohibiting an investor in RMBS deal from representing other class members who invested in other offerings—particularly if both offerings emanated from a common registration statement.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008) (suggesting that the plaintiffs would have standing to assert claims in connection with all securities offered under a common registration statement); *see also In re Citigroup Inc. Bond Litig.*, 08 Civ. 9522 (SHS), 723 F. Supp. 2d 568, 584 (S.D.N.Y. 2010) (adopting the *In re Countrywide* position). In these circumstances, it would be manifestly unfair to require a class member to investigate the standing of the name plaintiff and make a guess as to whether it needed to file a protective action to toll the running of the statute of limitations on its individual claims.  As Judge Baer recently wrote in *New Jersey Carpenters Health Fund v. Residential Capital, LLC* and *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC*, Nos. 08 Civ. 8781 and 08 Civ. 5093, 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010), attached:

> [T]his court has cast doubt on the proposition that unnamed class members have a responsibility to ensure that the original plaintiff is an adequate class representative or that it must investigate a plaintiff's trading records independently to determine whether the plaintiff has standing.

*Id.* at *2 (quotation omitted).

2

Respectfully submitted,

/s/ Daniel L. Brockett

Daniel L. Brockett


cc:     Defendants' counsel (via e-mail)

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
**(Cite as: 2010 WL 5222127 (S.D.N.Y.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
NEW JERSEY CARPENTERS HEALTH FUND,
New Jersey Carpenters Vacation Fund and Boiler-
maker Blacksmith National Pension Trust, on Be-
half of Themselves and All Others Similarly Situ-
ated, Plaintiffs,
v.
RESIDENTIAL CAPITAL, LLC, et al., Defend-
ants.
New Jersey Carpenters Vacation Fund and Boiler-
maker Blacksmith National Pension Trust, on Be-
half of Themselves and All Others Similarly Situ-
ated, Plaintiffs,
v.
The Royal Bank of Scotland Group, PLC, Green-
wich Capital Holdings, Inc., Greenwich Capital Ac-
ceptance, Inc., Greenwich Capital Financial
Products, Inc., Robert J. McGinnis, Carol P. Math-
is, Joseph N. Walsh, III, John C. Anderson, James
M. Esposito, RBS Securities, Inc., f/k/a Greenwich
Capital Markets, Inc., d/b/a RBS Greenwich Capit-
al, Defendants.

Nos. 08 CV 8781(HB), 08 CV 5093(HB).
Dec. 22, 2010.

**OPINION AND ORDER**

Hon. HAROLD BAER, JR., District Judge.

*\*1* Plaintiffs in these purported class action
cases allege violations of sections 11, 12(a)(2) and
15 of the Securities Act of 1933, 15 U.S.C. §§
77k(a), 77l (a)(2) (2010). The violations arise from
alleged misstatements and omissions contained in
the offering documents for certain mortgage-backed
securities that Plaintiffs purchased, known as the
"RALI Certificates" and the "Harborview Certific-
ates." Plaintiffs, together with certain non-party
purchasers of RALI Certificates and Harborview
Certificates, now move pursuant to Fed.R.Civ.P. 24
for an order permitting the non-parties to intervene

as additional named plaintiffs. Many briefs were
submitted on these motions. However, the argu-
ments made with respect to each proposed interven-
or in each case are sufficiently similar that I have
addressed them collectively, and for the reasons de-
scribed below, each motion is GRANTED.

**I. FACTUAL AND PROCEDURAL BACK-
GROUND**

Familiarity with the facts underlying the cre-
ation and sale of the securities at issue is assumed,
and can be obtained by referring to my previous
Opinions on the parties' respective motions to dis-
miss, *New Jersey Carpenters Vacation Fund v.
Royal Bank of Scotland Group, PLC,* No. 08 Civ.
5093(HB), 2010 WL 1172694 (S.D.N.Y. Mar.26,
2010) and *New Jersey Carpenters Health Fund v.
Residential Capital, LLC,* No. 08 Civ. 8781(HB),
2010 WL 1257528 (S.D.N.Y. Mar.31, 2010).

The proposed intervenors in 08 Civ. 5093 (the
"Harborview case") include (1) Laborers' Pension
Fund and Health and Welfare Department of the
Construction and General Laborers' District Coun-
sel of Chicago and Vicinity ("Chicago Laborers");
(2) Midwest Operating Engineers Pention Trust
Fund ("Midwest OE"); and (3) Iowa Public Em-
ployees' Retirement System ("IPERS")
(collectively, the "Harborview Intervenors"). The
proposed intervenors in 08 Civ. 8781 (the "RALI
case") include (1) Midwest OE; (2) IPERS;
(3)Police and Fire Retirement System of the City of
Detroit ("Detroit PFERS"); (4) Orange county Em-
ployees Retirement System ("OCERS"); and (5)
Mississippi Public Employees' Retirement System
("MissPERS") (collectively, the "RALI Interven-
ors", and, together with the Harborview Interven-
ors, the "Proposed Intervenors").

The RALI Certificates were issued in a series
of fifty-nine different offerings from March 2006 to
October 2007, and the Harborview Certificates
were sold in a series of fifteen different offerings
between April 26, 2006 and October 1, 2007. The

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
**(Cite as: 2010 WL 5222127 (S.D.N.Y.))**

named plaintiffs did not purchase securities in every single offering, and following the parties' respective motions to dismiss I found that the Plaintiffs had standing to assert only those claims based on the specific offerings in which they had actually purchased securities. As a result, plaintiffs had standing to bring claims arising from two of the fifteen offerings in which Harborview Certificates were sold, and four of the fifty-nine offerings in which RALI Certificates were sold.

**\*2** Plaintiffs and the Proposed Intervenors (collectively the "Movants") now seek to cure some of the standing problems identified at the motion to dismiss stage by adding plaintiffs who purchased securities in some of the offerings in which the current Plaintiffs purchased none. This would revive a number of the claims that were dismissed for lack of standing. In particular, the RALI Intervenors would represent purchasers on seven currently unrepresented public offerings totaling $7 billion of securities issued by defendant RALI. The Harborview Intervenors would represent purchasers on six currently unrepresented public offerings totaling $14.3 billion of securities issued by defendant Greenwich Capital Acceptance, Inc.

## II. DISCUSSION

### A. *Intervention as of right is appropriate.*

In order to intervene as of right under Rule 24(a)(2), an applicant must (1) file timely, (2) demonstrate an interest relating to the property or transaction which is the subject of the action, (3) show an impairment of that interest arising from an unfavorable disposition, and (4) have an interest not otherwise protected. *U.S. v. Pitney Bowes, Inc.,* 25 F.3d 66, 69 (2d Cir.1994). *See also Brennan v. New York City Bd. of Educ.,* 260 F.3d 123, 128-129 (2d. Cir.2001). The interest must be "direct, substantial, and legally protectable." *Brennan,* 260 F.3d at 129. The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria. *See Tachiona v. Mugabe,* 186 F.Supp.2d 383, 394 (S.D.N.Y.2002). However, fail-

ure to satisfy any one of these requirements is sufficient grounds to deny the application. *See In re Bank of New York Derivative Litig.,* 320 F.3d 291, 300 (2d Cir.2003); *Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 176 (2d Cir.2001). Defendants' principle points of opposition are that the motion was untimely filed and that the Intervenors have no interest relating to the transaction which is the subject of the action.

### 1. Timeliness

Whether an application is timely is a matter left to the district court's discretion. *In re Bank of New York Derivative Litigation,* 320 F.3d 291, 300 (2d Cir.2003). In making its determination, a district court should consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Id.*

*How long the applicants had notice.* The proposed Intervenors here have ostensibly known of their interest since long before they moved to intervene. At a minimum, they should have known of the interest at the time the amended class action complaints were filed in May 2008, because their alleged damages existed then. At oral argument and in their papers Intervenors argued that they were justified in relying on the plaintiffs to represent their interests, since plaintiffs had initially asserted the claims on which they hope to recover, and precedent, *see In re Countrywide Fin. Corp. Sec. Litig.,* 588 F.Supp.2d 1132, 1164-65 (C.D.Cal.2008), suggested that the plaintiffs would have standing to assert claims in connection with all securities offered under a common registration statement. The reasonableness of this belief is supported by Judge Stein's opinion this summer in *In re Citigroup Inc. Bond Litig.,* 08 Civ. 9522(SHS), 723 F.Supp.2d 568, 2010 WL 2772439, at \*13-14 (S.D.N.Y. July 12, 2010), which adopted the *Countrywide* position. Indeed, this Court has cast doubt on the proposition

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
**(Cite as: 2010 WL 5222127 (S.D.N.Y.))**

that "unnamed class members have a responsibility to ensure that the original plaintiff is an adequate class representative" or that it must investigate a plaintiff's trading records independently to determine whether the plaintiff has standing. *See In re Initial Public Offering Sec. Litig.,* Nos. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899, 2004 WL 3015304, at *5 (S.D.N.Y. Dec.27, 2005).

**\*3** *Prejudice to the existing parties.* The fact that intervention will not cause great prejudice to existing parties supports a conclusion that the motions were timely. Defendants pointed out at oral argument that if the motion is granted it will "turn the schedule on its head", bumping the number of offerings in the Harborview case from two to eight, and in the RALI case adding six new offerings. Intervention would also entail further motion practice and expanded discovery, according to Defendants.

After a fairly detailed analysis I conclude that the proposed claims add no new legal theories and share a strong factual nexus with the existing claims, and their addition will not delay the proceedings. Discovery is ongoing and can certainly absorb the extra burden. Since the claims that would be added are essentially more of the same, they do not present much in the way of new material to consider in connection with the class certification motions. Finally, with respect to the motion to dismiss, according to Defendants' papers and oral argument, the Defendants' theory is that plaintiffs who purchased securities on the aftermarket, as opposed to at an initial public offering, have no standing to bring section 12 claims. This appears to be the law, but Plaintiffs argue that this does not prevent their bringing section 11 claims, nor does it undermine their case for intervention nor even class certification. In any case the issue does not appear to be complex and could be briefed on an expedited basis.

Finally, and most importantly, Defendants have been on notice of the claims that would be added since the beginning of the action, and could no more have anticipated that they would have been dismissed on standing grounds than the plaintiffs or Intervenors. Given this notice and the factors above that mitigate the potential delay, the addition of the claims would not greatly prejudice Defendants. Litigation in the Federal Court is not a game of "gotcha" but rather its goal is to try cases on their merits.

*Prejudice to the applicant.* In contrast, failure to add the claims will work significant prejudice to the Intervenors. As they noted at oral argument, it is likely that a new action would be barred by applicable statutes of limitation and repose, and even if that procedural hurdle was met, prosecuting the action independently would cause significant duplicative work that could be saved by adding them to the current action.

**2. The Intervenors' interest**

The Intervenors have demonstrated an interest relating to transactions that are the subject of this action, that interest would be impaired by an unfavorable disposition, and it is not otherwise protected. Defendants' central thesis in opposition to intervention is that the intervenors have no interest relating to the claims in this action. They base this argument on the fact that, with one exception, Intervenors purchased securities in offerings that were excised by the Court's March 2010 Orders on Defendants' motions to dismiss. Thus, the offerings in which Intervenors have an interest are no longer the subject of this litigation.

**\*4** This argument is problematic because it would read the rule to require an interest *in* the property or transaction that is the subject of the action. Indeed, at oral argument counsel for the Harborview defendants confirmed their position that "[ Rule 24(a) ] speaks in terms of interests in property or transactions that are currently the subject of the action," Tr. at 22:17-19. In fact the language requires a movant merely to claim "an interest *relating to* the property or transaction that is the subject of the action." Fed.R.Civ.P. 24(a)(2) (emphasis added). The interest asserted need not even be a property interest. *See Brennan,* 260 F.3d at 130 ("Rule

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
**(Cite as: 2010 WL 5222127 (S.D.N.Y.))**

24(a)(2) requires not a property interest but, rather, an interest relating to the property or transaction which is the subject of the action."). Moreover, courts have made clear that "to satisfy Rule 24(a)(2), the interest ... must be based on a right which belongs to the proposed intervenor rather than an existing party to the suit." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 58 (S.D.N.Y.1993); *In re Penn Central Commercial Paper Litigation,* 62 F.R.D. 341, 346 (S.D.N.Y.1974). This precludes an interpretation as narrow as Defendants would have it.

Here, the Intervenors have a direct interest in the action because their claims "arise out of the same transaction and occurrence that is the subject of the instant case." *See Mortgage Lenders Network, Inc. v. Rosenblum,* 218 F.R.D. 381, 384 (E.D.N.Y.2003). Harborview Intervenors collectively purchased a total of $47 million of Harborview securities in six currently unrepresented Harborview offerings. The RALI Intervenors collectively purchased $31.1 million of RALI securities in seven currently unrepresented offerings. The offerings were made pursuant to offering documents that were common to the offerings in which existing plaintiffs purchased the securities that give rise to their existing claims. While Intervenors may not have an interest in the property that is the subject of the action as it now stands, they certainly have a 'direct, substantial and legally protectable" interest "relating to the ... transaction that is the subject of the instant action." *See Brennan,* 260 F.3d at 130.

The Intervenors' interest will be impaired by any disposition of this action that includes findings that affect their claims. Any disposition on the merits would inevitably affect their claims since they arise from the same course of conduct and assert the same legal theories as the current plaintiffs. Since this Court dismissed from the action claims based on the offerings in which the Intervenors purchased securities, the Intervenors' interests will go unprotected if they are not allowed to intervene. No party has the same interest in prosecuting violations

with respect to the particular offerings in which Intervenors purchased securities, and ruling that they could not intervene would in all likelihood preclude any other entity from later asserting the same claims on statutory time-limits grounds.

**B. *The underlying claims are not time-barred.***

**\*5** While intervention is appropriate under the Federal Rules, Defendants have pointed out that the claims sought to be revived are now time-barred by the applicable statute of limitations, 15 U.S.C. § 77m. Movants respond that the statutory period was either tolled under principles of *American Pipe* or is made timely under the relation back doctrine of Fed.R.Civ.P. 15(c).

Under *American Pipe,* "commencement of a class action tolls the applicable statute of limitations as to all members of the class ." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176 n. 13, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (*quoting American Pipe & Constr. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). "Several courts have held that *American Pipe* is appropriately applied to motions to intervene or amended complaints filed to substitute a proper class representative with standing prior to a [final] decision on class certification." *CalPERS v. Chubb,* No. 00 Civ. 632(GEB), 2002 WL 33934282, at *29 (D.N.J. June 26, 2002) *aff'd,* 394 F.3d 126 (3d Cir.2004) (allowing plaintiffs to cure standing problems for one set of securities giving rise to the claims). This Court has held that "tolling the applicable statute of limitations ... where class counsel mistakenly believed that [lead plaintiff] had standing to assert his claims, and no prejudice to the defendants will result from allowing the substitution of qualified lead plaintiffs, best satisfies the goals of *American Piper.*" *In re Initial Public Offering Sec. Litig.,* No. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899(SAS), 2004 WL 3015304, at *4-6 (S.D.N.Y. Dec. 27, 2004). *See also In re National Australia Bank,* No. 03 Civ. 6537, 2006 WL 3844463, at *5 (S.D.N.Y. Nov. 8, 2006) (noting that whether a motion for class certification has been denied based on the lead

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
(Cite as: 2010 WL 5222127 (S.D.N.Y.))

plaintiff's lack of standing, or lead plaintiff is other-wise deemed inadequate on a motion to dismiss, the "statute of limitations remains tolled for an inter-vening potential class member to continue the class action."). While these cases can be procedurally distinguished from the present motion to intervene, they both suggest that a plaintiff may be added to cure standing defects in certain situations.

On the other hand, a number of district court opinions within the Second Circuit support the pro-position that a limitations period is not tolled where the original plaintiff lacked standing. *See, e.g .,* *Kruse v. Wells Fargo Home Mortg., Inc.,* No. 02 Civ. 3089(ILG) 2006 WL 1212512 (E.D.N.Y. May 3, 2006) (intervention is not "the proper mechanism by which plaintiffs can resuscitate a suit in which the original named plaintiffs never had standing to sue."); *In re Colonial Ltd. P'ship Litig.,* 854 F.Supp. 64, 82 (D.Conn.1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members for the purported class."); *In re Crazy Ed-die Sec. Litiig.,* 747 F.Supp. 850, 856 (E.D.N.Y.1990) (class action complaint did not toll statute of limitations on claims for which the ori-ginal putative class representatives lacked standing to sue.").

**\*6** While these opinions too can be procedur-ally distinguished, a number of relevant opinions have been issued since completion of the briefing in this case. Those opinions provide further support for the conclusion that principles of *American Pipe* tolling do not apply to Securities Act claims that were otherwise untimely because the original class action plaintiff lacked standing to assert claims re-lating to the securities at issue. In particular, this Court recently concluded that "the *American Pipe* rule should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing ... In short, where a Plaintiff lacks standing-there is no case ... And if there is no case, there can be no tolling." *New Jersey Carpenters*

*Health Fund v. DLJ Mortgage Capital, Inc. et al.,* No. 08 Civ. 5653(PAC), *slip op.* at 4 (S.D.N.Y. Dec. 15, 2010) (internal citations omitted). *See also* *In re Wells Fargo Mortgage-Backed Certificates Litig.,* No. 09 Civ. 1376, 2010 WL 4117477 (N.D.Cal. Oct. 19, 2010)* (ruling against application of *American Pipe* principles because the proposed plaintiffs had no reason to rely on the earlier filing of claims which were later dismissed); *Boiler-makers National Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates Series Ari,* No. 09 Civ. 37 (W.D.Wash. Sep. 28, 2010). *DLJ Mort-gage Capital* is distinguishable from the present case on the grounds that the claims sought to be ad-ded were *not* alleged in the initial complaint, whereas here Defendants were on notice of the claims since the beginning. I find this a key factor mitigating any unfair prejudice Defendants here would suffer by addition of the Intervenors' claims.

As with the *American Pipe* issue, arguments for and against application of the relation back doc-trine are equally difficult. That doctrine is appeal-ing in the present case because the result of the pro-posed intervention is easily analogized to an amendment for which relation back would be ap-propriate. At the same time, relation back typically applies in the Rule 15 amendment context, and its benefits inure to parties, not non-party proposed in-tervenors. *See DLJ Mortgage Capital,* No. 08 Civ. 5653(PAC), *slip op.* at 4-5. Neither principles of *American Pipe* tolling nor the relation back doctrine offer well-trod ground for a decision either way.

I find the better basis for decision suggested by the growing consensus among district courts in this circuit that, where the answer to standing chal-lenges could depend upon the outcome of a class certification motion, such challenges may be de-ferred until after a decision on class certification. *See Blessing v. Sirius XM Radio Inc.,* No. 09 Civ. 10035(HB), 2010 WL 4642607, *3 (S.D.N.Y. Nov.17, 2010) (collecting cases); *Pietra v. RREEF Am., L.L.C.,* No. 09 Civ. 7439(JGK), --- F.Supp.2d ----, 2010 WL 3629597, at *n. 1 (S.D.N.Y. Sep.16,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 5222127 (S.D.N.Y.)
**(Cite as: 2010 WL 5222127 (S.D.N.Y.))**

2010) (same). That principle is generally applied on a motion to dismiss for lack of standing and has not been argued previously in this case. Nonetheless it is applicable here because the result that it calls for is equally achievable by allowing intervention. Defendants here will retain their rights to bring standing challenges upon resolution of the class certification process, and those challenges are more properly resolved at that point when the full scope of parties can be ascertained. *See Pietra,* No. 09 Civ. 7439(JGK), 2010 WL 3629597, at *n. 1 (allowing claims to continue in anticipation of class certification decision despite fact that original plaintiffs allegedly had not purchased them and therefore lacked standing to sue on them). My conclusion is in large part supported by the fact that, as noted above, the Defendants will not suffer the unfair prejudice that the statute of limitations endeavors to avoid because, once again, they have been on notice of the claims Intervenors will bring since the filing of the Amended Complaint.

## III. CONCLUSION

**\*7** For the foregoing reasons, the motions to intervene are GRANTED. In view of the reintroduction to the lawsuit of those offerings in which the Intervenors' purchased certificates, the parties are directed to submit a joint proposed order setting a new deadline for the completion of discovery as well as a deadline for briefing any motion to dismiss the Intervenors' claims that Defendants may wish to bring. Any such motion may be supported by memoranda submitted on a joint basis by all parties in each case not to exceed five pages for the collective moving parties, five pages for the collective opposing parties, and three pages for any reply, and fully briefed and in Chambers no or before February 14, 2010. Further briefing on the issue of class certification is unnecessary because the Intervenors' claims merely relate to more offerings of the same certificates currently in the lawsuit, and further argumentation on whether class certification would be appropriate as to those specific offerings would be redundant.

The Clerk of the Court is instructed close the relevant motions (08cv8781 Docket Entry Nos. 74; 84; 91; and 98) (08cv5093 Docket Entry Nos. 102 and 116).

**SO ORDERED**

S.D.N.Y.,2010.
New Jersey Carpenters Health Fund v. Residential Capital, LLC
Slip Copy, 2010 WL 5222127 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit L

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: +1 212 225 2760
E-Mail: mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCHHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO

DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND B. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN

BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
ANDREW WEAVER
RESIDENT COUNSEL

February 7, 2011

BY HAND

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re: Footbridge Limited Trust v. Countrywide Financial Corp.,
10 CIV 367 (PKC)

Dear Judge Castel:

I informed the Court that in Nomura the First Circuit had affirmed (in relevant part) a decision regarding standing not to reargue positions already presented to the Court, but because Defendants had cited the Nomura District Court opinion in their summary judgment submissions. The Funds used this "opening" to reprise their assertion, made repeatedly already,[1] that applying the law to them would be "manifestly unfair." This "unfairness" argument is wrong, and also irrelevant: a court is without power to toll where no plaintiff has standing to

---

[1] See, e.g., Dec. 17, 2010 Letter from Daniel L. Brockett (criticizing DLJ Mortgage holding that "where a Plaintiff lacks standing there can be no American Pipe tolling" as "manifestly unfair" and assailing Judge Crotty for allegedly "provid[ing] no analysis or reasons for his holding"); Nov. 9, 2010 Letter from Daniel L. Brockett (describing holding in Maine State, which was consistent with DLJ Mortgage, as a "novel proposition" and "manifestly unfair"); Oct. 8, 2010 Letter from Daniel L. Brockett (characterizing identical holding of WaMu MBS as "manifestly unfair" and "an outlier").

Hon. P. Kevin Castel, p. 2

assert a claim.[2] The Funds are also incorrect that the uniform standing rule adopted by every MBS court was entirely unpredictable.[3]

      None of the decisions cited in the Funds' most recent letter counsel otherwise. Contrary to the Funds' assertion, the underlying class actions here would not fall under the "qualification" identified in Nomura (slip op. at 13-14) because the named plaintiffs in Luther and Washington State did not possess any incentive to establish wrongdoing with respect to the tens of thousands of loans contained in trusts whose certificates they did not purchase. Nor does the Funds' position find support in Hevesi v. Citigroup, 366 F.3d 70, 82-83 (2d Cir. 2004), which, by several years, predated the filing of this case; it only stated that lead plaintiffs do not need "standing to sue on every claim" where other named plaintiffs with such standing join in the action "to aid the lead plaintiff in representing a class." In the underlying class actions here neither the lead plaintiffs nor any named plaintiffs invested in the offerings purchased by the Funds. Similarly, the Funds' reliance on Judge Pfaelzer's decision in In re Countrywide Fin. Corp. Sec. Litig., 588 F. Supp. 2d 1132 (C.D. Cal. 2008), was rejected as "wrong" in the MBS context by Judge Pfaelzer herself, who recognized that "[e]ach MBS is backed by a pool of unique loans" and accompanied by "unique" disclosures "focused on the specific loans underlying each offering and the specific underwriting standards and origination practices in effect at the time those specific loans were originated." Maine State, slip op. at 7 (enclosed with my Nov. 8, 2010 letter). Finally, the recent N.J. Carpenters opinion submitted by the Funds also undercuts their argument by: (1) acknowledging that "a number of district court opinions within the Second Circuit support the proposition that a limitations period is not tolled where the original plaintiff lacked standing"; and (2) stating "this Court recently concluded that the American Pipe rule should not apply where the plaintiff that brought the dismissed claim was found by the court to lack standing." 2010 WL 5222127, at **5-6.

      Respectfully submitted,

Mitchell A. Lowenthal

---

[2]    See, e.g., Dec. 16, 2010 Letter from Mitchell A. Lowenthal (enclosing Judge Crotty's DLJ Mortgage decision, which held "where a Plaintiff lacks standing — there is no case. And if there is no case, there can be no tolling."); Nov. 12, 2010 Letter from Mitchell A. Lowenthal (noting American Pipe tolling is "premised on having a plaintiff identified in the complaint with standing"); Oct. 5, 2010 Letter from Mitchell A. Lowenthal (enclosing WaMu MBS, which rejected class action tolling as beyond the power of the court where named plaintiffs lacked standing to challenge particular offerings).

[3]    See, e.g., Jan. 31, 2011 Letter from Mitchell A. Lowenthal (enclosing Nomura, which "follow[ed]" a standing decision issued in 1977); Nov. 12, 2010 Letter from Mitchell A. Lowenthal (stating "the uniformity of [MBS standing] decisions is strong evidence that the standing question in MBS cases was not as difficult to predict as the Funds now assert" and collecting consistent authority pre-dating the underlying class actions here); Nov. 8, 2010 Letter from Mitchell A. Lowenthal (quoting Maine State for proposition that class members "can fairly be expected to understand that [a class action] would require a named plaintiff with standing to protect their claims").

Hon. P. Kevin Castel, p. 3

cc: Daniel L. Brockett, Esq.
    Jonathan Rosenberg, Esq.
    Christopher Caldwell, Esq.
    Theresa Trzaskoma, Esq.
    Leiv Blad, Esq.
    Keara Gordon, Esq.

# Exhibit M

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
danbrockett@quinnemanuel.com

March 3, 2011

**VIA HAND DELIVERY**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:     *Footbridge Ltd. Trust v. Countrywide Financial Corp.*, United States District Court for
         the Southern District of New York, 10 Civ. 367 (PKC)

Dear Judge Castel:

On behalf of Plaintiffs, we write to direct the Court's attention to an important new
decision issued this week by the United States Court of Appeals for the Second Circuit
concerning when the statute of limitations begins to run in a securities fraud case.

In *City of Pontiac General Employees' Retirement System v. MBIA, Inc.*, No. 09-4609-
CV, --- F.3d ----, 2011 WL 677404, at *3 (2d Cir. Feb. 28, 2011), the Court held that the
Supreme Court's recent decision in *Merck v. Reynolds*, 130 S.Ct. 1784 (2010), overruled the
inquiry notice analysis previously applied in the Second Circuit. The Court noted that under
*Merck*, the limitations period begins to run only after "a reasonably diligent plaintiff would have
discovered the facts constituting the violation, including scienter – irrespective of whether the
actual plaintiff undertook a reasonably diligent investigation." *Id.* (quoting *Merck*, 130 S.Ct. at
1798). The Court held that "a fact is not deemed 'discovered' until a reasonably diligent plaintiff
would have sufficient information about that fact to adequately plead it in a complaint." *Id.* at

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
CHICAGO | 500 West Madison Street, Suite 2450, Chicago, Illinois 60661 | TEL 312-705-7400 FAX 312-705-7401
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44 (0) 20 7653-2000 FAX +44 (0) 20 7653-2100
TOKYO | NBF Hibiya Bldg., 25F, 1-1-7 Uchisaiwai-cho, Chiyoda-ku, Tokyo 100-0011, Japan | TEL +81 (0) 3 5510-1711 FAX +81 (0) 3 5510-1712
MANNHEIM | Erzbergerstraße 5, 68165 Mannheim, Germany | TEL +49 (0) 621 43298-6000 FAX +49 (0) 621 43298-6100

*4.  In other words, the statute of limitations does not begin to run until a plaintiff has enough information to survive a motion to dismiss, including enough information to satisfy the heightened pleading standard under Rule 9(b) and the PSLRA for securities fraud.  The Court pointed out in particular that the statute of limitations cannot commence until a plaintiff has uncovered – or a reasonably diligent plaintiff would have uncovered – enough information about the defendant's knowledge or intent to satisfy the Second Circuit's "strong inference standard."  *Id.*

The Second Circuit's analysis rejects one of the central arguments made by the Countrywide Defendants on their pending motion for summary judgment – namely, the notion that a statute of limitations can be triggered based on a plaintiff's subjective belief it has a claim.  Defs' Br. 1 ("[T]he issue here . . . is whether, based on the Funds' own perceptions of the facts, they believed or had reason to believe that they had a Securities Act claim to pursue more than a year before they commenced this action.").  Following *Merck*, the Second Circuit in *MBIA* held squarely that it is the relevant *pleading standard*, and not merely the plaintiff's *subjective belief*, that defines the quantum of evidence needed to trigger a statute of limitations.

The Second Circuit decided *MBIA* in the context of 1934 Act claims.  However, the Court did not limit its comments to claims brought under Rule 10b-5, and much of what the Court said applies with equal force to claims under the 1933 Act.  Indeed, the Second Circuit grounded its decision in part on the general purpose of statutes of limitations:

> Since the purpose is to prevent stale claims, it would make no sense for a statute of limitations to begin to run before the plaintiff even has a claim:  A claim that has not yet accrued could never be considered stale.  Thus, in the limitations context, it makes sense to link the standard for "discovering" the facts of a violation to the plaintiff's ability to make out or plead that violation.  Only after a plaintiff can adequately plead his claim can that claim be said to have accrued, and only after a claim has accrued can the statute of limitations on that claim begin to run.

*MBIA*, 2011 WL 677404, at *4.

Even before *MBIA* was decided, district courts in the Southern District of New York had suggested that *Merck* might call for a re-examination of how courts should interpret the "inquiry notice" standard used for 1933 Act claims, but wanted to wait for guidance from the Second Circuit.  *See In re Barclays Bank PLC Secs. Litig.*, No. 09-CV-1989 (PAC), 2011 WL 31548, at *6 (S.D.N.Y. Jan. 5, 2011);  *Pub. Emp. Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc*, 714 F.Supp.2d 475, 480 (S.D.N.Y. 2010).  That guidance has now been given.

A copy of the *MBIA* decision is attached for the Court's convenience.

2

Respectfully submitted,

Daniel L. Brockett

Enclosure

cc:     Defendants' counsel (via e-mail)

Westlaw.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

H

Only the Westlaw citation is currently available.

United States Court of Appeals,
Second Circuit.
CITY OF PONTIAC GENERAL EMPLOYEES'
RETIREMENT SYSTEM and Southwest Car-
penters Pension Trust, on behalf of themselves and
all others similarly situated, Plaintiffs-Appellants,
Anthony Capone, individually and on behalf of all
others similarly situated, Todd Simon, individually
and on behalf of all others similarly situated,
Mariss Partners, LLP, individually and on behalf of
all others similarly situated, Thomas Cassady, indi-
vidually and on behalf of all others similarly situ-
ated, Alan D. Sadowsky, individually and on behalf
of all others similarly situated, and Barbara S.
Katzin, individually and on behalf of all others sim-
ilarly situated, Consolidated-Plaintiffs,
v.
MBIA, INC., Joseph W. Brown, Gary C. Dunton,
Nicholas Ferreri, Neil G. Budnick, Douglas C.
Hamilton, and Richard Weill, Defendants-Ap-
pellees.FN*

Docket No. 09-4609-cv.
Argued: Nov. 1, 2010.
Decided: Feb. 28, 2011.

**Background:** Shareholders brought proposed class
action against corporation, alleging that corporation
committed securities fraud when it accounted for
transaction as income rather than a loan. Corpora-
tion moved to dismiss. The United States District
Court for the Southern District of New York, Stan-
ton, J., granted motion and dismissed action as
barred by the statute of limitations for security
fraud claims. The Court of Appeals, 300 Fed.Appx.
33, affirmed, but granted shareholders leave to
amend. The United States District Court for the
Southern District of New York, Stanton, J., again
dismissed action on limitations grounds. Sharehold-
ers appealed.

**Holdings:** The Court of Appeals, Dennis Jacobs,
Chief Judge, held that:
(1) law of the case doctrine did not preclude reliti-
gation of whether securities fraud claims were time-
barred by two-year statute of limitations;
(2) two-year limitations period did not begin to run
until shareholders discovered enough information
about corporation's scienter to plead it with suffi-
cient particularity to survive a motion to dismiss;
and
(3) two-year limitations period did not begin to run
prior to the beginning of class period.

Vacated and remanded.

West Headnotes

**[1] Federal Courts 170B ☞0**

170B Federal Courts
   The Court of Appeals reviews de novo a dis-
trict court's grant of a defendant's motion to dis-
miss, accepting all factual allegations in the com-
plaint as true, and drawing all reasonable inferences
in the plaintiff's favor.

**[2] Federal Courts 170B ☞0**

170B Federal Courts
   A district court's legal conclusions, including
its interpretation and application of a statute of lim-
itations, are reviewed de novo on appeal of the dis-
trict court's grant of a defendant's motion to dis-
miss.

**[3] Federal Courts 170B ☞0**

170B Federal Courts
   When a case has already been heard by the
Court of Appeals, its previous disposition ordinar-
ily becomes the law of the case, foreclosing reliti-
gation of issues expressly or impliedly decided pre-
viously by the Court.

**[4] Federal Courts 170B ☞0**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

170B Federal Courts

Court of Appeals' determination that trade press discussion put shareholders on inquiry notice of alleged security fraud did not preclude relitigation, under law of the case doctrine, of whether securities fraud claims against corporation were time-barred by two-year statute of limitations, where subsequent Supreme Court decision changed controlling law with respect to the onset of the statute of limitations. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b).

**[5] Federal Courts 170B** ☞0

170B Federal Courts

The law of the case does not withstand an intervening change of controlling law.

**[6] Limitation of Actions 241** ☞0

241 Limitation of Actions

The two-year limitations period for a securities fraud claim commences not when a reasonable investor would have begun investigating after being put on inquiry notice of the possibility of fraud, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting securities fraud. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b).

**[7] Limitation of Actions 241** ☞0

241 Limitation of Actions

The two-year securities fraud statute of limitations cannot begin to run until the plaintiff discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting "scienter," defined as a mental state embracing intent to deceive, manipulate, or defraud. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b).

**[8] Limitation of Actions 241** ☞0

241 Limitation of Actions

In contrast to a statute of repose, a statute of limitations is intended to prevent plaintiffs from unfairly surprising defendants by resurrecting stale claims, and statute of limitations does so by extinguishing a plaintiff's remedy after he has slept on his claim for a prolonged period of time, failing to bring suit within a specified period of time after his cause of action accrued.

**[9] Limitation of Actions 241** ☞0

241 Limitation of Actions

Only after a plaintiff can adequately plead his claim can that claim be said to have accrued, and only after a claim has accrued can the statute of limitations on that claim begin to run.

**[10] Limitation of Actions 241** ☞0

241 Limitation of Actions

The reasonably diligent plaintiff has not "discovered" one of the facts constituting a securities fraud violation, and the two-year statute of limitations does not begin to run, until the plaintiff can plead that fact with sufficient detail and particularity to survive a motion to dismiss for failure to state a claim upon which relief can be granted. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[11] Securities Regulation 349B** ☞0

349B Securities Regulation

A sufficient allegation of scienter for a securities fraud claim requires the pleader to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind such that it is at least as likely as not that the defendant acted with the relevant knowledge or intent. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

**[12]** Limitation of Actions 241 ⚖0

241 Limitation of Actions
　　Securities fraud claim did not accrue, and two-year limitations period for shareholders' proposed securities fraud class action did not begin to run, until shareholders discovered enough information about corporation's scienter to plead it with sufficient particularity to survive a motion to dismiss under the heightened pleading requirements for securities fraud claims. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; Securities Exchange Act of 1934, § 21D(b)(2), 15 U.S.C.A. § 78u-4(b)(2); 28 U.S.C.A. § 1658(b).

**[13]** Limitation of Actions 241 ⚖0

241 Limitation of Actions
　　Securities fraud claim did not accrue, and two-year limitations period for shareholders' proposed securities fraud class action did not begin to run, prior to the beginning of class period, which was defined by when the shareholders first transacted corporation's stock. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b).

**[14]** Limitation of Actions 241 ⚖0

241 Limitation of Actions
　　Because the two-year securities fraud statute of limitations cannot begin to run until a claim has accrued, and because a securities fraud claim does not accrue until the plaintiff has bought or sold the relevant security, the statute of limitations cannot begin to run until after the plaintiff's transaction. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5; 28 U.S.C.A. § 1658(b).

Appellants, a pair of retirement funds representing a proposed class of individuals who purchased stock in MBIA, Inc., appeal a decision by the United States District Court for the Southern District of New York (Stanton, J.) dismissing their pro-

posed class action as barred by the statute of limitations for security fraud claims. The district court concluded that the proposed class was on inquiry notice of the alleged fraud by December 2002, more than two years before suit was filed in April 2005. We vacate the district court's dismissal and remand for reconsideration of the statute of limitations analysis in light of the Supreme Court's decision in *Merck & Co. v. Reynolds,* --- U.S. ----, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010). We also instruct the district court to rule on Defendants-Appellees' arguments under the statute of repose and Rule 9(b).Sanford Svetcov, Susan K. Alexander, Robbins Geller Rudman & Dowd LLP, San Francisco, CA, Samuel H. Rudman, David A. Rosenfeld, Mario Alba, Jr., Robbins Geller Rudman & Dowd LLP, Melville, NY, for Appellants.

Steven Klugman, Christopher J. Hamilton, Emily J. Mathieu, David Gopstein, Debevoise & Plimpton LLP, Lance J. Gotko, John N. Orsini, Friedman Kaplan Seiler & Adelman LLP, New York, NY, for Appellees.

DENNIS JACOBS, Chief Judge:
　　**\*1** Appellants, a pair of retirement funds representing a proposed class of individuals who purchased stock in MBIA, Inc., appeal a decision by the United States District Court for the Southern District of New York (Stanton, J.) dismissing their proposed class action as barred by the statute of limitations for security fraud claims. The district court concluded that the proposed class was on inquiry notice of the alleged fraud by December 2002, more than two years before suit was filed in April 2005. We vacate the district court's dismissal and remand for reconsideration of the statute of limitations analysis in light of the Supreme Court's decision in *Merck & Co. v. Reynolds,* ---U.S. ----, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010). We also instruct the district court to rule on Defendants-Appellees' arguments under the statute of repose and Rule 9(b).

**BACKGROUND**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

The facts of this case have been set out in all relevant detail by the district court in its first decision in this case. *See In re MBIA Inc. Sec. Litig.,* 05 Civ. 03514, 2007 U.S. Dist. LEXIS 10416 (S.D.N.Y. Feb. 13, 2007). We recount only the brief summary needed to understand our decision.

MBIA sells insurance policies guaranteeing the principal and interest on bonds, thereby allowing its bond-issuing clients to pay lower interest rates. In 1998, one of MBIA's major policyholders defaulted on a bond-issue insured by MBIA, leaving MBIA with a $170 million debt that threatened its liquidity and credit rating. To avoid this impairment of its credit rating, MBIA made a deal with three European reinsurance companies whereby they reinsured MBIA on the defaulted bonds *nunc pro tunc,* which resulted in their paying the $170 million loss incurred by the bond default. In exchange, MBIA paid $3.85 million "upfront" as a premium and committed to purchasing additional reinsurance from the European companies over a six-year period at a premium of $297 million. The bonds that would be reinsured over the following six years were among MBIA's highest rated bonds. MBIA initially booked this odd transaction ("1998 transaction") as income, and it continued to do so in its SEC Form 10-Ks from 1998 through 2003.

Several times in later years, the 1998 transaction became the subject of comment in the financial trade press, most of it either positive or ambivalent; but some of it suggested that the transaction was more a loan than a reinsurance contract. In early 2005, after the SEC and the New York Attorney General both launched investigations into its accounting practices, MBIA publicly restated its financials for 1998-2003 to treat the 1998 transaction as a loan rather than as income.

The original class action complaint in this case, filed in April 2005, proposed a class of all individuals who purchased stock in MBIA between August 5, 2003 and March 30, 2005. The complaint alleged that MBIA committed securities fraud in violation of section 10b of the Securities and Exchange Act

of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, when it accounted for the 1998 transaction as income rather than as a loan in its 10-Ks from 1998 through 2003. The City of Pontiac General Employees' Retirement System and the Southwest Carpenters Pension Trust ("Pension Funds") were appointed to represent the proposed class.

**\*2** MBIA moved to dismiss the complaint for failure to adequately plead causation, material misrepresentation, and scienter under Federal Rule of Civil Procedure 9(b). MBIA also moved to dismiss the complaint as time-barred by the applicable two-year statute of limitations and five-year statute of repose under The Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"). Pub.L. No. 107-204, § 804, 116 Stat. 745, 802 (2002) (codified at 28 U.S.C. § 1658(b)). The district court ruled that the trade press discussions of the 1998 transaction put the proposed class on inquiry notice by December 2002. It accordingly granted MBIA's motion and dismissed the complaint on the statute of limitations ground, expressly declining to reach MBIA's alternative defenses involving Rule 9(b) and the statute of repose.

On a prior appeal, we concluded that the district court's dismissal had been without prejudice, and we granted leave for the Pension Funds to amend the record with additional trade press reports and refile the complaint. The Pension Funds refiled after amending the record with four additional trade press reports. After considering the four new documents, the district court again found that the class had been on inquiry notice by December 2002 and again dismissed the complaint as barred by the statute of limitations without reaching MBIA's statute of repose and Rule 9(b) defenses. The Pension Funds again appeal this dismissal.

## DISCUSSION

[1][2] We review *de novo* a district court's grant of a defendant's motion to dismiss, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

favor." *Shomo v. City of New York,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks omitted). A district court's legal conclusions, including its interpretation and application of a statute of limitations, are likewise reviewed *de novo. Somoza v. N.Y.C. Dep't of Educ.,* 538 F.3d 106, 112 (2d Cir.2008).

## I

[3][4] When a case has already been heard by this Court, our previous disposition ordinarily becomes "law of the case," foreclosing relitigation of issues expressly or impliedly decided previously by this Court. *United States v. Frias,* 521 F.3d 229, 234 (2d Cir.2008). When we last heard this case, we affirmed the district court's ruling that the original unamended record put the class on inquiry notice by December 2002, thereby rendering the fraud claim time-barred under the applicable two-year statute of limitations. *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.,* 300 F. App'x 33 (2008). This prior determination would ordinarily be binding as the "law of the case," so that the district court could not revisit whether the unamended record sufficed to put the class on inquiry notice.

[5] However, the law of the case does not withstand "an intervening change of controlling law." *Frias,* 521 F.3d at 235 n. 6. After the district court's latest decision in this case and prior to oral argument in this appeal, the Supreme Court decided *Merck & Co. v. Reynolds,* --- U.S. ----, 130 S.Ct. 1784, 176 L.Ed.2d 582 (2010), which changed the securities fraud law of this Circuit with respect to the onset of the applicable two-year statute of limitations. The law of the case is thus inapplicable here to the extent *Merck* changed the controlling law on securities fraud. As a result, when reconsidering whether the statute of limitations bars the class's securities fraud claim in light of *Merck,* the district court should consider the full record, not just the four documents added by the parties after our previous remand.

## II

**\*3** Prior to *Merck,* the law of our Circuit had provided that a plaintiff was on "inquiry notice" when public information would lead a reasonable investor to investigate the possibility of fraud. *Shah v. Meeker,* 435 F.3d 244, 249 (2d Cir.2006); *Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101 (2d Cir.2003). If at that point, the plaintiff fails to initiate such an investigation, our Circuit deemed the statute of limitations to start running on the day the plaintiff should have begun investigating. *Shah,* 435 F.3d at 249; *Levitt,* 340 F.3d at 101.

[6] *Merck* overruled this analysis: "[T]he discovery of facts that put a plaintiff on inquiry notice does not automatically begin the running of the limitations period." 130 S.Ct. at 1798 (internal quotation marks omitted). Instead, *Merck* held that the limitations period begins to run only after "a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter-irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.* (internal quotation marks omitted). In other words, the limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation.

In light of *Merck,* two questions remain unresolved.

A. What are the facts that together constitute a securities fraud violation for purposes of commencing the statute of limitations?

**B.** With regard to any particular one of these facts, how much information does the reasonable investor need to have about it before it is deemed "discovered" for purposes of commencing the statute of limitations?

## A.

[7] The *Merck* Court expressly declined to prescribe a full list of the facts needed to constitute a securities law violation for purposes of the statute of limitations. *Merck,* 130 S.Ct. at 1796 ("We con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

sequently hold that facts showing scienter are among those that 'constitut[e] the violation.' In so holding, we say nothing about other facts necessary to support a private § 10(b) action."). We need not attempt to prescribe such a list here. It is sufficient for our purposes to note only that the facts establishing "scienter" are among those "that constitute the violation" and may require inquiry. *Id.* It follows that a securities fraud statute of limitations cannot begin to run until the plaintiff discovers-or a reasonably diligent plaintiff would have discovered-the facts constituting scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Id.*

**B.**

To apply *Merck* with consistency, a standard is needed to assess how much information a reasonably diligent investor must have about the facts constituting a securities fraud violation before those facts are deemed "discovered" and the statute of limitations begins to run. Are the facts "discovered" when a reasonable investor would suspect a violation? When the reasonable investor would become absolutely convinced that the violation occurred? When the reasonable investor could prove in a courtroom that the violation occurred?

**\*4** The *Merck* decision provides some guidance. In discussing the limitations trigger, *Merck* specifically considered scienter, casting discovery of scienter in terms of what information and evidence a plaintiff would need to survive a motion to dismiss. *Merck,* 130 S.Ct. at 1796 ("As a result, unless a § 10(b) plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted with the relevant knowledge or intent, the claim will fail."). The fact that *Merck* specifically referenced pleading requirements when discussing the limitations trigger indicates to us that the *Merck* Court thought about the requirements for "discovering" a fact in terms of what was required to adequately plead that fact and survive a motion to dismiss. *Id.*

[8][9] Further guidance on this question can be

inferred from the basic purpose of a statute of limitations. In contrast to a statute of repose, a statute of limitations is intended to prevent plaintiffs from unfairly surprising defendants by resurrecting stale claims. *In re Worldcom Sec. Litig.,* 496 F.3d 245, 253 (2d Cir.2007). A statute of limitations prevents such surprises by extinguishing a plaintiff's remedy after he has slept on his claim for a prolonged period of time, failing "to bring suit within a specified period of time after his cause of action accrued." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 88 n. 4 (2d Cir.2010). Since the purpose is to prevent stale claims, it would make no sense for a statute of limitations to begin to run before the plaintiff even has a claim: A claim that has not yet accrued could never be considered stale. Thus, in the limitations context, it makes sense to link the standard for "discovering" the facts of a violation to the plaintiff's ability to make out or plead that violation. Only after a plaintiff can adequately plead his claim can that claim be said to have accrued, and only after a claim has accrued can the statute of limitations on that claim begin to run.

[10] Based on this analysis, we hold that a fact is not deemed "discovered" until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint. In other words, the reasonably diligent plaintiff has not "discovered" one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.

[11] Under this standard, the amount of particularity and detail a plaintiff must know before having "discovered" the fact will depend on the nature of the fact. For example, a sufficient allegation of scienter requires the pleader to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" such that "it is at least as likely as not that the defendant acted with the relevant knowledge or intent." *Merck,* 130 S.Ct. at 1796 (internal quotation marks omitted). Until the plaintiff has uncovered-or

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

a reasonably diligent plaintiff would have un-covered-enough information about the defendant's knowledge or intent to satisfy this pleading stand-ard, he has not "discovered" the fact of scienter, and the statute of limitations cannot begin to run.

**\*5** [12] For this reason, we remand to the dis-trict court to reconsider, based on the entire record and in light of *Merck* and this opinion, when the Pension Funds had enough information about MBIA's scienter to plead it with sufficient particu-larity to survive a motion to dismiss under the heightened pleading requirements for scienter under 15 U.S.C. § 78u-4(b)(2). The two-year statute of limitations cannot commence before that point.

### III

[13] The district court's initial decision and its decision on remand both concluded that the statute of limitations for the proposed class commenced in December 2002. *See In re MBIA Inc. Sec. Litig.,* 05 Civ. 03514, 2007 U.S. Dist. LEXIS 10416, at \*3, \*27 (S.D.N.Y. Feb. 13, 2007). However, the class period for the proposed class does not begin until August 2003, the date on which the first class mem-bers purchased their shares of MBIA stock. This means (under the district court's analysis) that the statute of limitations period began to run more than six months before the first stock purchase giving rise to the class's claims. That cannot be.

[14] As we have already pointed out, the stat-ute of limitations for securities fraud cannot begin to run before a reasonably diligent plaintiff would have uncovered enough information about the de-fendant's intent to satisfy the heightened pleading standard for fraud. That by itself is not enough to trigger the statute of limitations, however. Unlike a statute of repose, which begins to run from the de-fendant's violation, a statute of limitations cannot begin to run until the plaintiff's claim has accrued. *Ma,* 597 F.3d at 88 n. 4 (noting that statute of limit-ations begins when the cause of action accrues); *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 627 (2d Cir.1998) (same); *see also* P. *Stolz Family P'ship v. Daum,* 355 F.3d 92, 102-03 (2d Cir.2004)

(contrasting statute of limitations and statute of re-pose). A securities fraud claim does not accrue until after the plaintiff actually purchases (or sells) the relevant security. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734-35, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Thus, if the statute of limita-tions cannot begin to run until a claim has accrued, and a securities fraud claim does not accrue until the plaintiff has bought or sold the relevant secur-ity, then the statute of limitations cannot begin to run until after the plaintiff's transaction. The district court's conclusion that the statute of limitations began to run prior to the beginning of the class peri-od-which was defined by when the class members first transacted MBIA's stock-violates this prin-ciple.

However, when a class is composed of persons who purchased a security *after* facts came to light that exposed fraud related to that security, the case also lends itself to analysis in terms of whether there was reliance by the plaintiffs, or, similarly, whether there was transactional causation. *See Lat-tanzio v. Deloitte & Touche LLP,* 476 F.3d 147, 156-57 (2d Cir.2007) (discussing the concepts of reliance and transactional causation, *i.e.,* the notion that "but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction," in the con-text of securities fraud). Therefore, we also remand for the district court to reconsider whether MBIA's inquiry notice defense should be analyzed as, for example, an alleged defect in causation.

### IV

**\*6** On remand, the district court should rule on two other arguments MBIA made in its motion to dismiss: (1) that the class's claims are time-barred by the applicable statute of repose; and (2) that the class failed to plead its fraud claim with particular-ity sufficient to satisfy the heightened requirements of Federal Rule of Civil Procedure 9(b) and 15 U.S.C. § 78u-4(b)(2). Specifically, the district court should consider whether the applicable statute of repose commences at the time of the defendant's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))
**(Cite as: 2011 WL 677404 (C.A.2 (N.Y.)))**

misrepresentation or at the time the relevant securities were purchased. The district court should also consider whether the applicable statute of repose is reset each time the defendant repeats or incorporates its original fraudulent statement. The district court should, of course, also consider any other issues related to these two defenses that it thinks are relevant.

### CONCLUSION

We hereby **VACATE** the district court's decision and **REMAND** for reconsideration of the application of the statute of limitations in light of *Merck* and this opinion. We also instruct the district court to rule on Defendants-Appellees' statute of repose and Rule 9(b) arguments.

FN* The Clerk of Court is respectfully instructed to amend the official case caption as shown above.

C.A.2 (N.Y.),2011.
City of Pontiac General Employees' Retirement System v. MBIA, Inc.
--- F.3d ----, 2011 WL 677404 (C.A.2 (N.Y.))

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit N

CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: +1 212 225 2760
E-Mail: mlowenthal@cgsh.com

MARK A. WALKER
LESLIE B. SAMUELS
EDWARD F. GREENE
EVAN A. DAVIS
LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
A. RICHARD SUSKO
LEE C. BUCKHEIT
JAMES M. PEASLEE
ALAN L. BELLER
THOMAS J. MOLONEY
WILLIAM F. GORIN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
JAIME A. EL-KOURY
STEVEN G. HOROWITZ
ANDREA G. PODOLSKY
JAMES A. DUNCAN
STEVEN M. LOEB
DANIEL S. STERNBERG
DONALD A. STERN
CRAIG B. BROD
SHELDON H. ALSTER
WANDA J. OLSON
MITCHELL A. LOWENTHAL
DEBORAH M. BUELL
EDWARD J. ROSEN
JOHN PALENBERG
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
JANET L. FISHER
DAVID L. SUGERMAN
HOWARD S. ZELBO

DAVID E. BRODSKY
ARTHUR H. KOHN
RAYMOND D. CHECK
RICHARD J. COOPER
JEFFREY S. LEWIS
FILIP MOERMAN
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
PAUL E. GLOTZER
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
KRISTOFER W. HESS
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN

BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
CHRISTOPHER P. MOORE
JOON H. KIM
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
GABRIEL J. MESA
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
NANCY I. RUSKIN
WALLACE L. LARSON, JR
JAMES D. SMALL
AVRAM E. LUFT
ELIZABETH LENAS
DANIEL ILAN
CARLO DE VITO PISCICELLI
ANDREW WEAVER
RESIDENT COUNSEL

March 7, 2011

<u>BY HAND</u>

Honorable P. Kevin Castel
United States District Court for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

          Re:  Footbridge Limited Trust v. Countrywide Financial Corp.,
             <u>10 CIV 367 (PKC)</u>

Dear Judge Castel:

        We represent the Countrywide Defendants in the above-referenced matter and write in response to Plaintiffs' (the "Funds") letter to the Court dated March 3, 2011.[1]  The decision submitted by the Funds, which interpreted the statute of limitations applicable to "securities fraud" claims under the Securities Exchange Act of 1934 (the "34 Act"), is irrelevant to the pending summary judgment motion, which does not involve "securities fraud" claims.[2]

        In <u>City of Pontiac General Employees' Retirement System v. MBIA, Inc.</u>, --- F.3d ----, 2011 WL 677404 (2d Cir. Feb. 28, 2011) (Jacobs, C.J.), the Second Circuit considered the

---

[1]     Although the Funds' letter is dated March 3, it was first sent to Defendants by email during the afternoon of March 4.

[2]     <u>See, e.g.</u>, <u>Rombach v. Chang</u>, 355 F.3d 164, 170-71 (2d Cir. 2004) (Jacobs, C.J.) (distinguishing "securities fraud claims brought under Section 10(b) and Rule 10b-5" from "a claim under Section 11 or Section 12(a)(2)," for which "[f]raud is not an element or a requisite").

timeliness of 34 Act claims under <u>Merck & Co. v. Reynolds</u>, 130 S.Ct. 1784 (2010). As <u>MBIA</u> recognized, <u>Merck</u> "changed the securities fraud law of this Circuit with respect to the onset of the [] two-year statute of limitations" applicable to Section 10(b) and Rule 10b-5 claims. 2011 WL 677404, at *2. <u>Merck</u>, however, did not address the separate one-year statute of limitations applicable to claims under the Securities Act of 1933 (the "33 Act"), and for that reason courts in this District continue to apply pre-<u>Merck</u> law to determine the timeliness of such claims.[3] The <u>MBIA</u> decision, which never mentions the 33 Act, does not hold (or even imply) that <u>Merck</u> applies to the 33 Act's statute of limitations. Indeed, the Funds' description of <u>MBIA</u>'s holding—which focuses on scienter (an element not required under the 33 Act) and heightened pleading standards (that need not be satisfied to state a 33 Act claim)—only underscores the inapplicability of both <u>Merck</u> and <u>MBIA</u> to the claims at issue here.

          In arguing that <u>Merck</u> and <u>MBIA</u> apply to 33 Act claims, the Funds also ignore significant textual differences between the relevant statutes of limitations. Under 28 U.S.C. § 1658, the statute of limitations applicable to 34 Act fraud claims begins to run upon "discovery of *the facts constituting the violation*." Both <u>Merck</u> and <u>MBIA</u> explicitly interpret this language.[4] That analysis is simply irrelevant to the Funds' 33 Act claims, which are subject to a statute of limitations that begins to run not upon discovery of "facts," but rather, on "discovery of *the untrue statement or the omission*." 15 U.S.C. § 77m. Because scienter is a "fact constituting the violation" of the 34 Act, a securities fraud plaintiff must have knowledge of sufficient facts to plead scienter. A 33 Act claim, in contrast, has no scienter element, and mere discovery of the untrue statement or omission in the offering materials alone is sufficient.

          Finally, the Funds' letter does not explain how their 33 Act claims would be timely even under the <u>Merck</u> and <u>MBIA</u> standards. While the Funds argue that <u>Merck</u> requires courts to re-examine how they interpret the "inquiry notice standard" used for 33 Act claims, that issue is beside the point here, where the Funds pleaded that they had actual (rather than inquiry) notice of their claims. See Def. Br. at 11-12. With respect to <u>MBIA</u>, the Funds state that the "relevant pleading standard" should "define[] the quantum of evidence needed to trigger the statute of limitations." Here, however, the Funds expressly allege that they discovered crucial "facts"—which they assert establish a 33 Act claim—outside of the limitations period.

                             Respectfully submitted,

                             Mitchell A. Lowenthal

---

[3]    See, e.g., <u>In re Barclays Bank PLC Sec. Litig.</u>, No. 09 Civ 1989 (PAC), 2011 WL 31548, at *6 (S.D.N.Y. Jan. 5, 2011); <u>In re Morgan Stanley Mortg. Pass-Through Certificates Litig.</u>, No. 09 Civ. 2137 (LTS), 2010 WL 3239430, at *7 (S.D.N.Y. Aug. 17, 2010); <u>Freidus v. ING Groep N.V.</u>, 736 F. Supp. 2d 816, 827 (S.D.N.Y. 2010); <u>In re IndyMac Mortgage-Backed Sec. Litig.</u>, 718 F. Supp. 2d 495, 502-03 (S.D.N.Y. 2010).

[4]    See, e.g., <u>Merck</u>, 130 S.Ct. at 1796 ("[s]cienter is assuredly a 'fact'"; "facts showing scienter are among those that 'constitute the violation'"); <u>MBIA</u>, 2011 WL 677404, at *4 ("the reasonably diligent plaintiff has not 'discovered' one of the facts constituting a securities fraud violation until he can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss").

Hon. P. Kevin Castel, p. 3

cc: Daniel L. Brockett, Esq.
   Jonathan Rosenberg, Esq.
   Christopher Caldwell, Esq.
   Theresa Trzaskoma, Esq.
   Leiv Blad, Esq.
   Keara Gordon, Esq.